# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In re: | ) Case No. 24-01098 |
| | ) |
| **PURE PRAIRIE POULTRY, INC., fka** | ) Involuntary Chapter 7 |
| **PURE PRAIRIE FARMS, INC.,** | ) |
| | ) Hon. Thad J. Collins |
| Alleged Debtor, | ) |
| | ) **DECLARATION OF GEORGE** |
| 68808 Ford Road | ) **PEICHEL** |
| Fairfax, MN 55332 | ) |
| | ) |
| EIN: 84-2185133 | ) |
| | ) |
| | ) |

I, George Peichel, declare as follows:

1.      I am the former Chief Financial Officer and a current member of the Board of Directors of Pure Prairie Poultry, Inc. ("Pure Prairie" or the "Company"), formerly known as Pure Prairie Farms, Inc.  If called as a witness, I could and would be competent to testify to the following:

2.      I submit this Declaration (the "Declaration") in support of the Motion to Dismiss and the assertion that Pure Prairie is a "farmer" in the context of 11 U.S.C. § 303(a).

3.      Based on my position and experience with Pure Prairie, I am familiar with the day-to-day operations, business affairs, assets and liabilities, and books and records of Pure Prairie.   Except as otherwise indicated herein, all facts set forth in this Declaration are based on: (a) my personal knowledge of Pure Prairie's operations and finances; (b) my experience with Pure Prairie; (c) information supplied to me by other members of Pure Prairie's management or by Debtor's advisors; (d) information obtained from my review of the relevant

documents; and, (e) information obtained from other sources relating to Pure Prairie's operations and financial condition.

4.    The Company's farming operations are described as follows:

a.   At all times, the Company is the owner of the chickens and is directly responsible for raising the chickens.

b.   The Company purchases pullet chicks from a breeding stock company and contracts for the care and feeding of the chicks at one of four locations until they are 20 weeks old.  The Company pays for the use of the facilities, all labor, feed, vaccines, and utility costs related to the raising of the chicks.  A copy of the Company's standard Pullet/Cockerel Production Agreement is attached as Exhibit A.

c.   After 20 weeks, the pullet chicks are transferred to breeder barns where they become laying hens and lay eggs for hatching into broiler chicks.  The breeder barns are contracted by the Company to provide care of the birds and pick and box the eggs.  At all times, the Company owns the hens and pays for the use of the facilities, all labor, feed, vaccines, and utility costs related to the raising of the birds.  The birds lay eggs for about 45 weeks.  A copy of the Company's standard Breeder Production Agreement is attached as Exhibit B.

d.   The eggs supplied by the breeder barns are taken to a custom hatchery to be incubated and hatched.  At all times, the Company owns the eggs and pays a custom hatch charge.  A copy of the Company's Custom Hatch Agreement is attached as Exhibit C.

e.  Chicks from the broiler hatchery are taken to barns to be raised for six weeks.  At all times, the Company owns the birds and pays for the use of the facilities, all labor, feed, vaccines, and utility costs related to the raising of the birds.  A copy of the Company's standard Broiler Production Contract is attached as Exhibit D.

f.  After six weeks, the Company picks up the birds and delivers them to the processing plant.  The processed poultry products sold are whole chickens or chicken parts packaged in retail tray packs or in boxes for sale to food service.

5.  In 2023, approximately 100% of the Company's gross income was derived from poultry operations.  A copy of the Company's tax returns is attached as Exhibit E.

6.  In 2024, approximately 100% of the Debtor's gross revenue was derived from poultry operations until the Debtor ceased operations.  A copy of the Company's January – October income statement showing revenues is attached as Exhibit F.

I declare under penalty of perjury under the laws of Minnesota and the United States that the foregoing is true and accurate to the best of my knowledge, information, and belief.


December 2, 2024                    */s/     George Peichel*
                                    George Peichel

**EXHIBIT A**

**COVER SHEET TO PULLET/COCKEREL PRODUCTION AGREEMENT**

|  |  |  |  |
|---|---|---|---|
| Address: | Pure Prairie Poultry Inc.<br>68808 Fort Road<br>Fairfax, Minnesota 55332 | Grower:<br>Address: | David Kloss<br>22276 Nature Road<br>Royalton, MN 56373 |
| Telephone #: | 612-501-3766 | Telephone #: | 320-493-3451 |

---

**THIS DOCUMENT IS A BINDING AGREEMENT BETWEEN
PURE PRAIRIE POULTRY INC. ("Pure Prairie"), AND YOU.**

**READ THIS CONTRACT CAREFULLY.** This Cover Sheet provides only a brief summary of your contract. However, this Cover Sheet is not the entire Agreement. This Cover Sheet is not the contract and only the terms of the actual contract are legally binding. The contract itself sets forth, in detail, the rights and obligations of both you and Pure Prairie. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR CONTRACT CAREFULLY.**

---

**RIGHT TO CANCEL AND DEADLINE TO EXERCISE RIGHT**. FOR A TIME PERIOD NOT LATER THAN THE DATE THAT IS THE LONGER OF: (i) THREE BUSINESS DAYS AFTER YOU AND PURE PRAIRIE HAVE EXECUTED THE PULLET/COCKEREL PRODUCTION AGREEMENT; OR (ii) THREE BUSINESS DAYS AFTER YOU RECEIVE A COPY OF THE SIGNED PULLET/COCKEREL PRODUCTION AGREEMENT, YOU HAVE A RIGHT TO CANCEL THE PULLET/COCKEREL PRODUCTION AGREEMENT. THE PROCEDURE FOR CANCELLATION IS SET FORTH AT THE END OF THIS COVER SHEET. IF YOU CANCEL THE PULLET/COCKEREL PRODUCTION AGREEMENT, THEN THE AGREEMENT SHALL BE VOID AND OF NO EFFECT.

**CAPITAL INVESTMENTS DISCLOSURE STATEMENT**. DURING ITS TERM, THE PULLET/COCKEREL PRODUCTION AGREEMENT MAY REQUIRE ADDITIONAL LARGE CAPITAL INVESTMENTS.

**MATERIAL RISK DISCLOSURE STATEMENT**

Please consider carefully the following risk factors in addition to your personal animal husbandry skills, experience and knowledge before signing this Pullet/Cockerel Production Agreement.

**PULLET/COCKEREL PRODUCTION RISKS**
- Raising Pullet/Cockerel chickens for profit depends on many factors. Performance under the terms of this Pullet/Cockerel Production Agreement does not ensure that You will make a profit. Your profitability is affected by numerous factors. Such factors include, but are not limited to, your own husbandry and management skills, flock health, adverse weather conditions, or other catastrophic loss of the facilities or the chickens on account of factors beyond Pure Prairie or Your control.
- Pure Prairie may fail to deliver chickens, feed or veterinary services in the quantity or quality described in the Pullet/Cockerel Production Agreement due to act of God or other unforeseen circumstances.
- Pure Prairie's production and animal welfare standards are subject to change from time to time in Pure Prairie's discretion.
- The risk exists that sickness, disease, or epidemic may injure the Pure Prairie flock or flocks.
- You will be responsible for loss of or damage to the Pure Prairie flock or flocks to the extent such loss or damage resulted from your breach of this Pullet/Cockerel Production Agreement.

**FINANCIAL RISKS**
- Financing of construction or operation of Your facilities may exceed costs anticipated by You.
- Failure to make payments to repay a third-party lender which has financed construction or operation of your facilities may cause your third-party lender to foreclose on the facility or take other collection actions. Default under the terms of your financing with your third-party lender shall also constitute a default under this Pullet/Cockerel Production Agreement.

- You must pay taxes relating to your operation, carry insurance on your facility, and bear other costs in connection with your operation.

**REGULATORY RISKS**
- You are responsible for obtaining all necessary permits to legally construct and operate the facilities. Failure to obtain such permits may result in enforcement actions being taken against You by authorized regulatory agencies or personnel.
- You are responsible for properly storing, handling and disposing of manure from the facilities. You are exposed to liability for any manure spills or contamination caused by improper storage, handling or disposal.
- The chickens may be quarantined or destroyed by animal health or other regulatory agencies or personnel if the chickens are found to be diseased.
- You are responsible for disposal of all dead chickens. You could be exposed to liability if You fail to properly dispose of all dead chickens.

**PAYMENT RISKS**
- Pure Prairie has the right to delay, adjust or offset the amount You are paid under the Pullet/Cockerel Production Agreement for various reasons. Such reasons include, but are not limited to, performance adjustments, death loss, sort loss, delivery of non-standard, diseased or injured chickens, failure to order feed in a timely manner, failure to make required production reports, failure to provide adequate access to the facilities, failure to clean the facilities between production cycles, failure to maintain required manure storage levels or failure to follow procedures mandated by Pure Prairie.
- You are required to indemnify, defend and hold Pure Prairie harmless from all liabilities and causes of action arising from your failure to fulfil the Pullet/Cockerel Production Agreement.

**TERMINATION RISKS**
- Pure Prairie may terminate this Pullet/Cockerel Production Agreement prior to expiration of the term of this Pullet/Cockerel Production Agreement based on your default.
- The Pullet/Cockerel Production Agreement notes that Pure Prairie may develop and provide a production handbook which would contain additional duties and if You fail to perform those duties, Pure Prairie could declare a default of the Boiler Production Agreement.
- Upon default, Pure Prairie has the right to take possession of and to operate the facilities as well as any other property needed to operate the facilities for the duration of the Pullet/Cockerel Production Agreement.

IN WITNESS WHEREOF, Pure Prairie, Inc. has executed and mailed/delivered (circle one) this Cover Sheet with attachment on <u>April 12</u>, 2023.

Pure Prairie Poultry, Inc.

*George Peichel*
By George Peichel (Apr 14, 2023 10:08 CDT)
Its CFO

**PROCEDURE TO CANCEL THE PULLET/COCKEREL PRODUCTION AGREEMENT**
You may terminate the Pullet/Cockerel Production Agreement by mailing a written cancellation notice to PURE PRAIRIE at the address set forth above not later than the date that is the longer of: (i) three business days after the date on which the Pullet/Cockerel Production Agreement has been signed by both You and Pure Prairie; or (ii) three business days after You receive a copy of the signed Pullet/Cockerel Production Agreement. The written notice of cancellation will be deemed mailed on the date of the postmark on the envelope.

Received by Grower: _____Dere Klass_____ __D.K.__ 4/12/2023
                              Date                      Initials

Received by Grower: _____ _____
                              Date                      Initials

## KEY TERMS INDEX

| | |
|---|---:|
| **Parties: Pure Prairie and** David Kloss | **p. 1** |
| **Cancellation, Renewal, Amendment** | **pp. 1, 3, 6, 8** |
| **Duties and Obligations of each Party** | **Pp 1-6** |
| **Provisions Subject to Change** | **Section 4.G., Section 10** |
| **Poultry Management Program** | **Section 4** |
| **Member of Tri-State PPF Growers Association LLC** | **Section 16** |
| **Definitions** | **Section 17** |

# PURE PRAIRIE POULTRY, INC.
## PULLET/COCKEREL PRODUCTION AGREEMENT

On ~~April 1X~~ 25 , 2023 (the "Effective Date"). PURE PRAIRIE POULTRY. INC., a Minnesota Corporation with its principal place of business at 68808 Fort Road, Fairfax. Minnesota 55332, ("Pure Prairie") and David Kloss ("Grower") (Grower and Pure Prairie are jointly referred to as "Parties") agree that Pure Prairie will deliver Pullet/Cockerel chickens ("Pullet/Cockerel") to Grower, Grower will care for such Pullet/Cockerel until age of transfer and Pure Prairie will thereafter haul out the Pullet/Cockerel for processing under the following terms and conditions ("Agreement"):

1. **AVAILABILITY OF BUILDING AND FACILITIES.**

   A. **Building and Facilities**. Grower has designated 2 barn(s), (the "Facility") on Grower's property Site 2 located at ~~22270 Nature Road, Royalton, MN 56373~~ Site 2 22253 Nature Rd ("Property") which 22.418 Nature Rd Grower and Pure Prairie agree that as of the Effective Date includes adequate light, heat, square footage, feed and water space for the performance of Grower's obligations contained herein. Grower and Pure Prairie agree that Grower will have no obligation to make any capital investment in the Facility under this Agreement absent a written amendment to this Agreement executed by both parties. As a condition precedent to this Agreement becoming effective, Pure Prairie may require that Grower shall obtain such testing as Pure Prairie may reasonably require to verify that the ground under the facilities does not have any pesticide or other residues that would prevent the Pullet/Cockerel from meeting Pure Prairie's quality standards.

   B. **Access and Utilities**. Grower shall make provisions for utilities, water, permanent ingress and egress and manure storage and disposal for the duration of this Agreement consistent with industry standards. Grower will continuously ensure the availability of all fixtures and equipment reasonably necessary to raise the Pullet/Cockerel pursuant to the terms of this Agreement.

   C. **Regulatory Requirements**. Grower shall be responsible for any and all necessary environmental and/or regulatory approvals applicable to the Facility including any county zoning requirements, state requirements or permits, manure hauling permits including if necessary manure management plans and/or agreements and satisfaction of any and all other environmental, zoning or regulatory requirements and approvals necessary to operate the Facility. Grower shall be solely responsible for ensuring compliance with the foregoing requirements and any material failure to comply shall constitute a default of this Agreement.

2. **TERM OF AGREEMENT.**

   Unless earlier terminated in accordance with the terms of this Agreement, this Agreement shall run for a term of 5 years from the first placement of the Pullet/Cockerel in Grower's Facility. Such placement shall be documented with an addendum to this Agreement and signed by Pure Prairie and Grower.

   At the end of the term Pure Prairie and Grower shall both have the right to terminate this Agreement without any cause, provided that a written notice is given at least ninety (90) days prior to the end of the term as set forth above. If neither party provides written notice of termination, this Agreement shall be automatically extended for successive one-year periods unless sooner terminated in accordance with the terms of this Agreement.

If the contract is terminated by either party the parties agree that the term of the agreement shall be extended, and the agreement shall remain in full force and affect until the flock that is in process reaches a minimum age of 25 weeks.

3.   **OBLIGATIONS OF PURE PRAIRIE.**

A.   **Delivery of Pullet/Cockerel.** Pure Prairie agrees to deliver Pullet/Cockerel to Grower on a regular basis at no cost to Grower. Pure Prairie will arrange for the delivery of healthy Pullet/Cockerel to the facilities. Pure Prairie will use commercially reasonable efforts to provide Grower with a tentative schedule for Pullet/Cockerel delivery in advance. Pure Prairie will give Grower at least three (3) days advance notice of delivery dates of its Pullet/Cockerel to the Facility.

B.   **Feed.** Pure Prairie shall be exclusively responsible for delivering, provide and pay for feed to the Facility for all Pullet/Cockerel under this Agreement.

C.   **Health Interventions.** Pure Prairie will provide veterinary services to Pullet/Cockerel at no cost to Grower. The veterinarian shall be selected solely by Pure Prairie, provided that the selected veterinarian shall be qualified and experienced in the treatment of Pullet/Cockerel. Pure Prairie shall be responsible for obtaining and providing such medications, vaccinations and any other interventions as are recommended in the industry. Grower shall ensure that no interventions are provided to any of the Pullet/Cockerel apart from what has been provided by Pure Prairie. Grower shall be exclusively responsible for all losses arising from Grower's use of interventions unauthorized by Pure Prairie, including indemnifying and holding Pure Prairie harmless from any and all losses or liabilities directly resulting from such unauthorized use.

D.   **Ownership.** Pure Prairie shall remain the owner at all times of the Pullets/Cockerels. Grower shall not take any action inconsistent with Pure Prairie's ownership rights, including but not limited to using any of the Pullets/Cockerels as security for any loans or otherwise pledging or encumbering the Pullets/Cockerels in any fashion. Grower grants Pure Prairie the right to file a UCC-1 notification filing concerning its ownership rights as to the Pullets/Cockerels, but this grant of authority shall in no respect obligate Pure Prairie to do so. Grower agrees to indemnify and hold Pure Prairie harmless from any and all losses directly resulting from Grower's breach of this paragraph.

E.   **Catching & Hauling.** Pure Prairie will provide the labor and equipment necessary to catch and haul the Pullets/Cockerels from the Facility to a layer barn at no cost to Grower. In no event shall any Pullet/Cockerel be removed from Grower's Facility without the prior written consent of Pure Prairie. Pure Prairie will provide Grower at least three (3) days advance notice of catching and hauling dates of the Pullet/Cockerel from the Facility. Pure Prairie will be responsible for all damage to the Facility caused by the catch crew or any other representatives of Pure Prairie.

F.   **Payments.** Pure Prairie will pay Grower according to the terms specified in attached Exhibit A. A condition of payment is (1) timely performance by Grower of its obligations in this Agreement; and (2) completion of such reporting forms as requested by Pure Prairie in the manner and at the times as directed by Pure Prairie. Failure to regularly submit such reports to Pure Prairie in addition to being a condition of default, shall entitle Pure Prairie to delay payment until the report is provided.

G.   **Property Damage.** Pure Prairie shall be solely responsible for any damage or theft to Grower's property or equipment located on the Property that is caused by the acts or omissions of Pure Prairie

2

or its representatives, and Pure Prairie shall reimburse Grower for all costs incurred by Grower in repairing or replacing any such property or equipment.

4.     **OBLIGATIONS OF GROWER.**

A.   **General Duties.**  Grower agrees to provide the Facility and properly maintain the same at its sole expense. Other than as set forth in this Agreement, Grower shall provide all labor and supervision as may be necessary to properly raise the Pullets/Cockerels including but not limited to unloading the Pullets/Cockerels at the Facility, rodent control of premises, application of vaccinations (spray, water, feed) and Pullets/Cockerels security. Grower shall provide access to water, electricity and propane/natural gas needed for the proper care of the Pullet/Cockerel.

B.   **Manure Handling and Pullet/Cockerel Disposal.** Grower expressly agrees that manure storage, manure removal, field application of manure, dead Pullets/Cockerels handling and disposal, proper management and cleaning Grower's Facility and/or hiring qualified and insured persons to conduct such pumping or cleaning, and all rules, regulations and other public or private requirements or obligations with regard to the same or to operation of Grower's Facility are solely the responsibility of Grower.  Grower shall adhere to the Dead Bird and Poultry House Litter Best Management Practices attached as Exhibit B hereto.

C.   **Rejection.**    Grower shall have the right to reject responsibility for any non-conforming Pullets/Cockerels if it notifies Pure Prairie within 72 hours of delivery by Pure Prairie. Failure to reject shall cause the Pullets/Cockerels to be the full responsibility of Grower. Pure Prairie shall have the right to verify the appropriateness of Grower's rejection. Grower is responsible for all non-standard Pullets/Cockerels and death loss after acceptance under the terms of this agreement.

D.   **Exclusivity.**  Grower agrees to only raise chickens approved for purchase by Pure Prairie, and not to raise poultry or other fowl of any kind for any other entity whatsoever during the term of this Agreement at the Property or Facility.  Pure Prairie shall have the right to approve, such approval to not be unreasonably withheld, conditioned, or delayed, Grower raising chickens or other foul at another property or facility.

E.   **Notice of Condition.**  Grower is obligated to promptly notify Pure Prairie of any material abnormal conditions that may affect the Pullets/Cockerels, but in any event at least within twenty-four (24) hours of learning of said conditions.

F.   **Site Records.**  Grower shall keep accurate and up-to-date site records on barn cards approved by Pure Prairie.

G.   **Animal Welfare.**  Grower must comply with all industry standards for animal welfare.  Further, Grower shall abide by any production handbook generated by Pure Prairie to include such additional duties of Grower, including production standards, criteria and requirements relating to the care and feeding of the Pullets/Cockerels, as such terms and conditions may be amended by Pure Prairie from time to time, all of which terms and conditions are incorporated herein and made a part hereof. Pure Prairie agrees to provide Grower with any amendments to such production handbook within five (5) business days of such amendment.  In the event of any such amendment, Grower shall have a commercially reasonable period of time to modify its production practices to bring such practices into compliance with any amendments made to the production handbook. After such period of time, Grower's failure to follow duties as stated in any such production handbook, in addition to being an event of default under this Agreement, shall entitle Pure Prairie to deduct

3

losses incurred by Pure Prairie (to the extent such losses directly result from Grower's failure to follow such duties) from subsequent payments due and owing to Grower.

H. **Insurance.** Grower agrees to maintain such property and casualty insurance on Property, including the Facility, as it deems necessary or appropriate and acknowledges that Pure Prairie shall have no responsibility therefore. Grower shall maintain a standard farm liability insurance policy with coverage in the amount of no less than $1,000,000.00 per occurrence, and Pure Prairie shall be named as an additional insured on such liability policy. Grower agrees that it will indemnify and hold Pure Prairie and its employees and representatives harmless from any and all costs or liability caused by Grower's performance hereunder, including but not limited to any claims for personal injury, wrongful death, or property damage.

I. **Catching Preparation.** Grower will prepare the Facility for catching and follow Pure Prairie's recommended feed withdrawal plans as communicated to Grower. Grower or its agent must be present to walk the Facility(ies) with the crew foreman hired by Pure Prairie, prior to the beginning of catching and to determine the number of dead Pullets/Cockerels. If Grower or its agent is not present, Grower will accept the crew foreman's determination of the number of dead Pullets/Cockerels. Grower will allow Pure Prairie's catching crews to utilize any needed fans and utilities. Grower agrees to maintain a safe working environment for representatives of Pure Prairie who must enter the Facility to carry out their work assignments.

J. **Roads.** Grower will maintain all-weather roads to the Facility(ies) and provide adequate loading pads and space to turn loading vehicles. Failure to maintain roads, loading pads and turn-arounds will make Grower liable for wrecker services and damages sustained by Pure Prairie in accessing the Facility; provided that (1) Grower shall have a reasonable amount of time, but no less than 24 hours, to clear snow and ice from roads, loading pads, and turn-arounds prior to Pure Prairie accessing the Facility after inclement weather, (2) the damages sustained by Pure Prairie (including the need for wrecker services) arise directly from Grower's failure to maintain the roads, loading pads, or turn-arounds, and (3) Pure Prairie's negligence did not contribute to such damages.

K. **Right of Inspection.** Pure Prairie and its designated representatives shall have the right to enter Grower's Property and Facility to inspect the Pullets/Cockerels. In all other respects, Grower shall not permit visitor traffic or other inspection of the Property or Facility. Parties acknowledge that this requirement is intended to ensure disease control with regard to Grower's Facility.

L. **Reports.** Grower will regularly submit such reporting forms as reasonably requested by Pure Prairie in the manner and at the times as reasonably directed by Pure Prairie to Pure Prairie.

5. **INDEPENDENT CONTRACTOR STATUS**

It is understood and agreed that neither Grower nor its employees shall be deemed to be employees of Pure Prairie and that Grower and/or its employees are independent contractors engaged by Pure Prairie to perform services under this Agreement and Grower is not authorized to act as an agent of Pure Prairie for any purpose whatsoever.

6. **INDEMNIFICATION**

A. **Indemnification by Grower.** Grower agrees to defend, indemnify, and hold harmless Pure Prairie and its officers, directors, employees, affiliates, successors and assigns, from all claims, liabilities, actions, losses, damages and expenses (including any costs and counsel fees in defending any such claims) which may be caused by Grower's negligence or which arise from Grower's default of

4

this Agreement, including but not limited to claims of public or private nuisance. If any claim, cause of action, demand or regulatory proceeding is commenced or if there is any loss to Pure Prairie on account of Grower's negligent manure storage, manure application, dead Pullet/Cockerel disposal, public or private nuisance, pit pumping and/or cleaning of the Facility, operation of the Facility, or any other negligent acts or omissions related thereto, Grower agrees to defend, indemnify and hold harmless Pure Prairie from all such claims, actions, demands, proceedings or losses, including attorneys' fees and costs. In addition, Grower shall defend, indemnify and hold harmless Pure Prairie, and any and all of its employees and representatives, from any and all claims of regulatory violations and/or non-compliance including but not limited to any costs and reasonable attorneys' fees incurred by the indemnified parties on account of Grower's failure to comply with Section 1.C. above.

B. **Indemnification by Pure Prairie.** Pure Prairie agrees to defend, indemnify, and hold harmless Grower and its officers, directors, employees, affiliates, successors and assigns, from all claims, liabilities, actions, losses, damages and expenses (including any costs and counsel fees in defending any such claims) which may be caused by Pure Prairie's negligence or which arise from Pure Prairie's default of this Agreement. Additionally, Pure Prairie hereby agrees to defend, indemnify and hold harmless Grower, and its heirs, successors, and assigns, from and against all claims, causes of action, liabilities, losses, costs (including any costs and counsel fees in defending any such claims) and expenses arising from, or in connection with, any death, injury or damage to any person or property which occurs on Grower's Property in connection with the entry and use of the Property by Pure Prairie, its agents, contractors, employees, and invitees. This indemnification in this section shall survive the expiration of this Agreement.

7. **FORCE MAJEURE.**

Neither party shall be liable in any respect for failure, delay in fulfillment or performance of this Agreement if hindered or prevented, directly or indirectly, by fire, flood, storms or other acts of God, or circumstances or causes beyond the party's reasonable control.

8. **DEFAULT.**

An event of default shall be material breach of any term or condition of this Agreement by either party.

A. Unless otherwise provided in this Agreement, upon default, the non-defaulting party must provide written notice (or such other time as may be required by law) to the defaulting party. The notice of default shall include (1) a description of the act or omission believed to constitute a breach of contract, including identification of the section of this Agreement believed to have been breached; (2) the date(s) of the breach; (3) the means by which the defaulting party can satisfactorily remedy the breach, if possible, based on the nature of the breach; and (4) a date that provides a reasonable time, based on the nature of the breach, by which the breach must be remedied. With respect to a default by Grower, if the default does not relate to an animal or human health, welfare or disease issue, then Pure Prairie shall provide a performance improvement plan to Grower specifying (1) the factors considered when placing Grower on the performance improvement plan; (2) the guidance and support provided to Grower while on the performance improvement plan, if any; (3) the factors considered to determine if and when Grower is removed from the performance improvement plan and placed back in good standing; and (4) when Grower will be terminated, which shall be not less than 90 days from the date of notice, if Grower does not make satisfactory progress under the performance improvement plan.

5

B. If any default is not cured within the time set forth in the notice of default, to include the time for improvement under the performance improvement plan, if any, then in addition to the option of terminating this Agreement as provided below, Pure Prairie shall have all remedies that may exist at law or in equity including the remedy of specific performance. Specific performance may include, at Pure Prairie's option, the right to hire substitute labor to perform this Agreement (or the portion Grower has not performed) until the end of the term and to deduct the cost of such labor from Grower payments, and the right of Pure Prairie to pay any of Grower's vendors or creditors directly in lieu of payments to Grower. If Pure Prairie hires substitute labor the cost of such labor shall not exceed $3,500 per month per flock. Nothing herein shall be construed so as to prohibit Pure Prairie from seeking injunctive or other relief (to include the remedies set forth herein), to prevent the recurrence of material defaults during any time granted to the defaulting party for the opportunity to cure default    .

C. An event of default shall occur if the party  shall become bankrupt or insolvent or shall involuntarily be placed into the hands of a receiver, assignee or trustee in bankruptcy.

D. The Parties agree that Grower's failure to follow Pure Prairie's reasonable written instructions directed toward correction of performance regarding feed waste, mortality, bird comfort or delivery of Pullets/Cockerels shall constitute an event of default.

E. In the event of a dispute as to the meaning of Agreement terms, a party may request mediation. If requested, the Parties will confer within ten (10) days of written notice of the request for mediation and shall select a mutually agreeable mediator. If the Parties are unable to agree, then either party may petition the Court specified in Section 15 of this Agreement for appointment of a mediator. Each party shall bear their own expense in connection with any mediation.

F. If Pure Prairie elects to terminate this Agreement for default, the termination shall be effective no less than ninety (90) days after the expiration of the period set forth in Section 8(B) above, except in cases where the default arises due to Grower's failure to care for the health and welfare of the chickens, or a default which presents an imminent health, welfare, or disease issue, in which case Pure Prairie may terminate this Agreement immediately.

9.    **ASSIGNMENT.**

The Parties understand and acknowledge that any assignment of this Agreement shall require mutual consent of both Parties.

10.    **ENTIRE AGREEMENT.**

This Agreement, all related Exhibits, and any other documents incorporated herein by reference, constitutes the sole and entire agreement between the Parties with respect to the subject matter of this Agreement, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to the subject matter. Except as otherwise provided in Section 4.G., no modification of any of the terms or conditions contained herein may be made except by subsequent written documents signed by the Parties.

**11.** **SUCCESSORS BOUND.**

The provisions of this Agreement shall inure to the benefit of and be binding upon the heirs, successors and permitted assigns of the Parties.

**12.** **EXECUTION OF DOCUMENTS.**

The Parties agree to execute any and all documents necessary to implement the full terms and conditions of this Agreement.

**13.** **SEVERABILITY.**

If any one provision or clause of this Agreement, or the application thereof to any person or circumstances, is held invalid or unlawful, such invalidity or unlawfulness shall not affect any other provision or clause of this Agreement.

**14.** **WAIVER.**

Waiver by a party of a breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Agreement will operate or be construed as a waiver thereof; nor will any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

**15.** **GOVERNING LAW.**

The Parties agree that this Agreement is made in the State of Minnesota and shall be governed by and construed in accordance with the laws of the State of Minnesota. Any dispute arising here from shall be subject to the exclusive jurisdiction of and exclusive venue in the County in which the Property is located. To the extent required by law, Grower has the right to request mediation of any dispute arising from this Agreement provided that such mediation shall not delay or limit the right of any party to seek injunctive or other equitable relief for breaches of this Agreement.

**16.** **MEMBER OF TRI-STATE.**

No later than 90 days after the date hereof, Grower agrees that it will make a capital contribution to, and become a member of, Tri-State PPF Growers Association LLC, an Iowa limited liability company.

**17.** **COUNTERPARTS.**

This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (to which a signed PDF copy is attached) will be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

18.   **<u>DEFINITIONS</u>.**

The following is a cross-reference of the sections where terms are defined within the body of this Agreement or any exhibit hereto:

"Agreement" has the meaning set forth in the preamble.

"Pullet/Cockerel" has the meaning set forth in the preamble.

"Facility" has the meaning set forth in Section 1.A.

"Grower" has the meaning set forth in the preamble.

"Property" has the meaning set forth in Section 1.A.

"Pure Prairie" has the meaning set forth in the preamble.

**[Signature Page Follows]**

8

IN WITNESS WHEREOF, this Agreement has been executed on the day and year first above written.

PURE PRAIRIE POULTRY, INC.

By *George Peichel*
George Peichel (Apr 14, 2023 10:08 CDT)

Its **CFO**


GROWER

By *Dave Hose*

Its *D. K.*

9

# EXHIBIT A
## PULLET/COCKEREL PRODUCTION PAYMENT SCHEDULE

Pure Prairie shall pay Grower in accordance with the following schedule:

A.   Payments shall be in advance and begin on the 5th business day of the month following the initial stocking of the house and shall continue monthly thereafter, with the final payment on the 5th business day of the month following the later to occur of a) termination of the Agreement and b) removal of the final flock. The first and last payment shall be prorated for actual days of occupancy.

Payments shall be calculated based on the square footage of the Facility: ~~38808~~ *32,000* times · $.~~1865~~ per square foot. *$23*   *D.K.*   *and 37,600 times $1.1865 square-foot*

B.   Pure Prairie shall pay the costs for the following items:

- o   Electric
- o   Propane/Natural Gas
- o   Litter & delivery as needed
- o   Feed
- o   Incinerator fuel
- o   Fly bait
- o   Annual generator service
- o   Catch crew to move Pullets/Cockerels
- o   Existing cost share on equipment financing and new cost shares as mutually agreed by parties

C.   Bonus Payment:

a.   Following the Effective Date and for as long as Grower, as the Amended and Restated Promissory Note dated April 29, 2022 given by Tri-State PPF Growers Association LLC in favor of Michael Helgeson (the "PPF Note") or any debt obligation undertaken for the purpose of repaying the PPF Note is outstanding Pure Prairie shall increase the payment due under this Agreement by 2 cents per square foot of barn space and remit such payment on behalf of Grower to Tri-State PPF Growers Association LLC.

b.   Up to 10,000 dollars bonus per flock based on performance measures and management practices agreed upon between Pure Prairie and Tri-State PPF Growers Association LLC Board of Directors. Bonus structure to be reviewed annually. Details are still being determined.

D.   Pure Prairie is authorized to offset any amounts owed to it by Grower from any payments required to be made hereunder.

10

**EXHIBIT B**

**DEAD BIRD AND POULTRY HOUSE LITTER
BEST MANAGEMENT PRACTICES**

## DEAD BIRD BEST MANAGEMENT PRACTICES

1. All dead birds will be disposed of by one or more of the following approved methods:
   a. Composting
   b. Incineration
   c. Rendering
   d. Any other method approved by any applicable state regulatory agency

2. In the case of a major die-off that cannot be disposed of by the normal, approved means on that farm, Grower will contact Pure Prairie within 12 hours to report the loss and take such further actions as may be required by applicable Federal, State and/or local law for the proper disposal of such animals. Grower shall be responsible for all costs related to such animal disposal, provided that any such major die-off is not due to a negligent act or omission of Pure Prairie or third parties under its direction or control.

## POULTRY HOUSE LITTER BEST MANAGEMENT PRACTICES

Grower shall at all times comply with all requirements of Federal, State and local law regarding the handling and disposal of all manure and litter in the performance of Grower's obligations under this Agreement, including the adoption of appropriate industry best management practices for such activities.

11

## CERTIFICATE AND CONSENT

Pure Prairie Poultry, Inc., a Minnesota corporation ("Company") has requested an extension of credit from Bremer Bank, National Association, a national banking association ("Lender"). As a condition to such extension of credit, the Lender requires that Company grant to the Lender a security interest in certain poultry and livestock ("Property"). To induce the Lender to extend credit to Company, the undersigned:

1. Certifies that the undersigned is a "Grower" under that certain Pullet/Cockerel Production Agreement with the Company dated <u>April 12, 2023</u>; ("Agreement") pursuant to which Grower has or will obtain possession of some of the Property; and

2. Consents to the assignment of the Agreement by the Company to the Lender as collateral security; and

3. Disclaims any interest in the Property and agrees to assert no liens or claim to the Property while Company is indebted to the Lender; and

4. Agrees that the Lender or its representatives may enter upon the real estate owned by the undersigned where the Property is being kept at any reasonable time to inspect or remove the Property, and may advertise and conduct a public auction or private sale thereon provided that such access and sale do not result in any damage to the real estate or the improvements thereon owned by the undersigned; and

5. Agrees that at the option of the Lender said Property may remain upon (without the Lender being deemed to be taking possession of) the real estate of the undersigned for a period of 45 days after the receipt by the Lender of written notice by the undersigned directing removal at the same terms pursuant to the Agreement, without incurring any other obligations of the Company; and

6. Agrees that the undersigned will give the Lender at least ten (10) business days written notice prior to any cancellation or termination of the Agreement and will provide the Lender the opportunity to cure any default; and

7. Agrees that this Certificate and Consent shall be binding upon and inure to the benefit of the Lender's and the undersigned's successors and assigns.

Dated: <u>April 12, 2023</u>

By <u>*Dave Kloss (Apr 13, 2023 20:10 CDT)*</u>

Its <u>Owner</u>

12

# Pure Prairie - Pullet Production Agreement MN - David Kloss

Final Audit Report                                          2023-04-14

| | |
|---|---|
| Created: | 2023-04-13 |
| By: | Kari Witte (kwitte@pureprairiefarms.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAAPPHpORPjaFo0aJGkX11Hr7vqNc6qN3O_ |

## "Pure Prairie - Pullet Production Agreement MN - David Kloss" History

📄 Document created by Kari Witte (kwitte@pureprairiefarms.com)
  2023-04-13 - 6:55:42 PM GMT

📧 Document emailed to davedkloss@yahoo.com for signature
  2023-04-13 - 6:57:33 PM GMT

📧 Email viewed by davedkloss@yahoo.com
  2023-04-13 - 7:03:29 PM GMT

✍️ Signer davedkloss@yahoo.com entered name at signing as Dave Kloss
  2023-04-14 - 1:10:01 AM GMT

✍️ Document e-signed by Dave Kloss (davedkloss@yahoo.com)
  Signature Date: 2023-04-14 - 1:10:03 AM GMT - Time Source: server

📧 Document emailed to gpeichel@pureprairie.com for signature
  2023-04-14 - 1:10:04 AM GMT

📧 Email viewed by gpeichel@pureprairie.com
  2023-04-14 - 3:07:44 PM GMT

✍️ Signer gpeichel@pureprairie.com entered name at signing as George Peichel
  2023-04-14 - 3:08:24 PM GMT

✍️ Document e-signed by George Peichel (gpeichel@pureprairie.com)
  Signature Date: 2023-04-14 - 3:08:26 PM GMT - Time Source: server

✅ Agreement completed.
  2023-04-14 - 3:08:26 PM GMT

**Adobe Acrobat Sign**

Names and email addresses are entered into the Acrobat Sign service by Acrobat Sign users and are unverified unless otherwise noted.

Adobe Acrobat Sign

**EXHIBIT B**

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...   file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098   Doc 40   Filed 12/02/24   Entered 12/02/24 16:17:26   Desc Main
Document   Page 23 of 152

### COVER SHEET TO BREEDER PRODUCTION AGREEMENT

| | | | |
|---|---|---|---|
| | Pure Prairie Farms Inc. | Grower: | Stephanie & Aaron Suchla |
| Address: | 68808 Ford Road | Address: | W11023 County Road P |
| | Fairfax, Minnesota 55332 | | Blair, WI 54616 |
| Telephone #: | 612-760-5123 Anita Janssen | Telephone #: | 608-863-1446 |

---

### THIS DOCUMENT IS A BINDING AGREEMENT BETWEEN PURE PRAIRIE FARMS INC. ("Pure Prairie"), AND YOU.

**READ THIS CONTRACT CAREFULLY.** This Cover Sheet provides only a brief summary of your contract. However, this Cover Sheet is not the entire Agreement. This Cover Sheet is not the contract and only the terms of the actual contract are legally binding. The contract itself sets forth, in detail, the rights and obligations of both you and Pure Prairie. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR CONTRACT CAREFULLY.**

---

**RIGHT TO CANCEL AND DEADLINE TO EXERCISE RIGHT.** FOR A TIME PERIOD NOT LATER THAN THE DATE THAT IS THE LONGER OF: (i) THREE BUSINESS DAYS AFTER YOU AND PURE PRAIRIE HAVE EXECUTED THE BREEDER PRODUCTION AGREEMENT; OR (ii) THREE BUSINESS DAYS AFTER YOU RECEIVE A COPY OF THE SIGNED BREEDER PRODUCTION AGREEMENT, YOU HAVE A RIGHT TO CANCEL THE BREEDER PRODUCTION AGREEMENT. THE PROCEDURE FOR CANCELLATION IS SET FORTH AT THE END OF THIS COVER SHEET. IF YOU CANCEL THE BREEDER PRODUCTION AGREEMENT, THEN THE AGREEMENT SHALL BE VOID AND OF NO EFFECT.

---

**CAPITAL INVESTMENTS DISCLOSURE STATEMENT.** DURING ITS TERM, THE BREEDER PRODUCTION AGREEMENT MAY REQUIRE ADDITIONAL LARGE CAPITAL INVESTMENTS.

### MATERIAL RISK DISCLOSURE STATEMENT

Please consider carefully the following risk factors in addition to your personal animal husbandry skills, experience and knowledge before signing this Breeder Production Agreement.

**BREEDER PRODUCTION RISKS**

- Raising breeder chickens for profit depends on many factors. Performance under the terms of this Breeder Production Agreement does not ensure that You will make a profit. Your profitability is affected by numerous factors. Such factors include, but are not limited to, your own husbandry and management skills, flock health, adverse weather conditions, or other catastrophic loss of the facilities or the chickens on account of factors beyond Pure Prairie or Your control.
- Pure Prairie may fail to deliver chickens, feed or veterinary services in the quantity or quality described in the Breeder Production Agreement due to act of God or other unforeseen circumstances.
- Pure Prairie's production and animal welfare standards are subject to change from time to time in Pure Prairie's discretion.
- The risk exists that sickness, disease, or epidemic may injure the Pure Prairie flock or flocks.
- You will be responsible for loss of or damage to the Pure Prairie flock or flocks to the extent such loss or damage resulted from your breach of this Breeder Production Agreement.

**FINANCIAL RISKS**

- Financing of construction or operation of Your facilities may exceed costs anticipated by You.
- Failure to make payments to repay a third-party lender which has financed construction or operation of your facilities may cause your third-party lender to foreclose on the facility or take other collection actions. Default under the terms of your financing with your third-party lender shall also constitute a default under this Breeder Production Agreement.

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...     file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098   Doc 40   Filed 12/02/24   Entered 12/02/24 16:17:26   Desc Main
Document     Page 24 of 152

- You must pay taxes relating to your operation, carry insurance on your facility, and bear other costs in connection with your operation.

## REGULATORY RISKS

- You are responsible for obtaining all necessary permits to legally construct and operate the facilities. Failure to obtain such permits may result in enforcement actions being taken against You by authorized regulatory agencies or personnel.
- You are responsible for properly storing, handling and disposing of manure from the facilities. You are exposed to liability for any manure spills or contamination caused by improper storage, handling or disposal.
- The chickens may be quarantined or destroyed by animal health or other regulatory agencies or personnel if the chickens are found to be diseased.
- You are responsible for disposal of all dead chickens. You could be exposed to liability if You fail to properly dispose of all dead chickens.

## PAYMENT RISKS

- Pure Prairie has the right to delay, adjust or offset the amount You are paid under the Breeder Production Agreement for various reasons. Such reasons include, but are not limited to, performance adjustments, death loss, , delivery of non-standard, diseased or injured chickens, failure to order feed in a timely manner, failure to make required production reports, failure to provide adequate access to the facilities, failure to clean the facilities between production cycles, failure to maintain required manure storage levels or failure to follow procedures mandated by Pure Prairie.
- You are required to indemnify, defend and hold Pure Prairie harmless from all liabilities and causes of action arising from your failure to perform the Breeder Production Agreement.

## TERMINATION RISKS

- Pure Prairie may terminate this Breeder Production Agreement prior to expiration of the term of this Breeder Production Agreement based on your default.
- The Breeder Production Agreement notes that Pure Prairie may develop and provide a production handbook which would contain additional duties and if You fail to perform those duties, Pure Prairie could declare a default of the Boiler Production Agreement.
- Upon default, Pure Prairie has the right to take possession of and to operate the facilities as well as any other property needed to operate the facilities for the duration of the Breeder Production Agreement.

IN WITNESS WHEREOF, Pure Prairie, Inc. has executed and mailed/delivered (circle one) this Cover Sheet with attachment on ___9 / I 0___ , 2022.

Pure Prairie Farms, Inc.

By _____

Its _____

## PROCEDURE TO CANCEL THE BREEDER PRODUCTION AGREEMENT

You may terminate the Breeder Production Agreement by mailing a written cancellation notice to PURE PRAIRIE at the address set forth above not later than the date that is the longer of: (i) three business days after the date on which the Breeder Production Agreement has been signed by both You and Pure Prairie; or (ii) three business days after You receive a copy of the signed Breeder Production Agreement. The written notice of cancellation will be deemed mailed on the date of the postmark on the envelope.

Received by Grower: _____     _____
                       Date              Initials

Received by Grower: _____     _____
                       Date              Initials

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...    file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098   Doc 40   Filed 12/02/24   Entered 12/02/24 16:17:26   Desc Main
Document    Page 25 of 152

**KEY TERMS INDEX**

| | |
|---|---:|
| Parties: Pure Prairie and Stephanie & Aaron Suchla | p. 1 |
| Cancellation, Renewal, Amendment | pp. 1, 3, 6, 8 |
| Duties and Obligations of each Party | Pp 1-6 |
| Provisions Subject to Change | Section 4.G., Section 10 |
| Poultry Management Program | Section 4 |
| Member of Tri-State PPF Growers Association LLC | Section 16 |
| Definitions | Section 17 |

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...          file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098   Doc 40   Filed 12/02/24   Entered 12/02/24 16:17:26   Desc Main
                    Document       Page 26 of 152

**PURE PRAIRIE FARMS, INC.**
**BREEDER PRODUCTION AGREEMENT**

On September 11, 2022 (the "Effective Date"), PURE PRAIRIE FARMS, INC., a Minnesota Corporation with its principal place of business at 68808 Ford Road, Fairfax, Minnesota 55332, ("Pure Prairie") and Stephanie & Aaron Suchla("Grower") (Grower and Pure Prairie are jointly referred to as "Parties") agree that Pure Prairie will deliver breeder chickens ("Breeders") to Grower, Grower will care for such Breeders until of marketable age and Pure Prairie will thereafter haul out the Breeders for processing under the following terms and conditions ("Agreement"). **The actual effective date of this contract is the day following the final day of contract between Grower and Pilgrim's.**

## AVAILABILITY OF BUILDING AND FACILITIES.

A. **Building and Facilities**. W11023 County Road P, Blair WI ("Property") which Grower and Pure Prairie agree that as of the Effective Date includes adequate light, heat, square footage, feed and water space for the performance of Grower's obligations contained herein. Grower and Pure Prairie agree that Grower will have no obligation to make any capital investment in the Facility under this Agreement absent a written amendment to this Agreement executed by both parties. As a condition precedent to this Agreement becoming effective, Pure Prairie may require that Grower shall obtain such testing as Pure Prairie may reasonably require to verify that the ground under the facilities does not have any pesticide or other residues that would prevent the Breeders from meeting Pure Prairie's quality standards.

B. **Access and Utilities**. Grower shall make provisions for utilities, water, permanent ingress and egress and manure storage and disposal for the duration of this Agreement consistent with industry standards. Grower will continuously ensure the availability of all fixtures and equipment reasonably necessary to raise the Breeders pursuant to the terms of this Agreement.

C. **Regulatory Requirements**. Grower shall be responsible for any and all necessary environmental and/or regulatory approvals applicable to the Facility including any county zoning requirements, state requirements or permits, manure hauling permits including if necessary, manure management plans and/or agreements and satisfaction of any and all other environmental, zoning or regulatory requirements and approvals necessary to operate the Facility. Grower shall be solely responsible for ensuring compliance with the foregoing requirements and any material failure to comply shall constitute a default of this Agreement.

1.   **TERM OF AGREEMENT**.

Unless earlier terminated in accordance with the terms of this Agreement, this Agreement shall run for a term of 5 years from the first placement of the Breeders in Grower's Facility. Such placement shall be documented with an addendum to this Agreement and signed by Pure Prairie and Grower.

At the end of the term Pure Prairie and Grower shall both have the right to terminate this Agreement without any cause, provided that a written notice is given at least ninety (90) days prior to the end of the term as set forth above. If neither party provides written notice of termination, this Agreement shall be automatically extended for successive one year periods unless sooner terminated in accordance with the terms of this Agreement.

Grower shall have the right to terminate this Agreement for any reason at any time, provided that Pure Prairie is given written notice of termination at least ninety (90) days prior to the date of termination.

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...      file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098   Doc 40   Filed 12/02/24   Entered 12/02/24 16:17:26   Desc Main
Document    Page 27 of 152

If the contract is terminated by either party the parties agree that term of the agreement shall be extended and the agreement shall remain in full force and affect until the flock that is in process reaches a minimum age of 65 weeks.

2. **OBLIGATIONS OF PURE PRAIRIE.**

A. **Delivery of Breeders.** Pure Prairie agrees to deliver Breeders to Grower on a regular basis at no cost to Grower. Pure Prairie will arrange for the delivery of healthy Breeders to the facilities. Pure Prairie will use commercially reasonable efforts to provide Grower with a tentative schedule for Breeder delivery in advance. Pure Prairie will give Grower at least three (3) days advance notice of delivery dates of its Breeders to the Facility.

B. **Feed.** Pure Prairie shall be exclusively responsible to deliver, provide and pay for feed to the Facility for all Breeders under this Agreement.

C. **Medications.** Pure Prairie will provide veterinary services to Breeders at no cost to Grower. The veterinarian shall be selected solely by Pure Prairie, provided that the selected veterinarian shall be qualified and experienced in the treatment of Breeders. Pure Prairie shall be responsible for obtaining and providing such medications and vaccinations as are recommended in the industry. Grower shall ensure that no medications are provided to any of the Breeders apart from what has been provided by Pure Prairie. Grower shall be exclusively responsible for all losses arising from Grower's use of medications and antibiotics unauthorized by Pure Prairie, including indemnifying and holding Pure Prairie harmless from any and all losses or liabilities directly resulting from such unauthorized use.

D. **Ownership.** Pure Prairie shall remain the owner at all times of the Breeders. Grower shall not take any action inconsistent with Pure Prairie's ownership rights, including but not limited to using any of the Breeders as security for any loans or otherwise pledging or encumbering the Breeders in any fashion. Grower grants Pure Prairie the right to file a UCC-1 notification filing concerning its ownership rights as to the Breeders, but this grant of authority shall in no respect obligate Pure Prairie to do so. Grower agrees to indemnify and hold Pure Prairie harmless from any and all losses directly resulting from Grower's breach of this paragraph.

E. **Catching & Hauling.** Pure Prairie will provide the labor and equipment necessary to catch and haul the Breeders from the Facility to a processing plant at no cost to Grower. In no event shall any Breeders be removed from Grower's Facility without the prior written consent of Pure Prairie. Pure Prairie will provide Grower at least three (3) days advance notice of catching and hauling dates of the Breeders from the Facility. Pure Prairie will be responsible for all damage to the Facility caused by the catch crew or any other representatives of Pure Prairie.

F. **Payments.** Pure Prairie will pay Grower according to the terms specified in attached Exhibit A. A condition of payment is (1) timely performance by Grower of its obligations in this Agreement; and (2) completion of such reporting forms as requested by Pure Prairie in the manner and at the times as directed by Pure Prairie. Failure to regularly submit such reports to Pure Prairie in addition to being a condition of default, shall entitle Pure Prairie to delay payment until the report is provided.

G. **Property Damage.** Pure Prairie shall be solely responsible for any damage or theft to Grower's property or equipment located on the Property that is caused by the acts or omissions of Pure Prairie

2

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...    file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098    Doc 40    Filed 12/02/24    Entered 12/02/24 16:17:26    Desc Main
Document    Page 28 of 152

or its representatives, and Pure Prairie shall reimburse Grower for all costs incurred by Grower in repairing or replacing any such property or equipment.

3.    **OBLIGATIONS OF GROWER**.

A.    **General Duties**.  Grower agrees to provide the Facility and properly maintain the same at its sole expense.  Other than as set forth in this Agreement, Grower shall provide all labor and supervision as may be necessary to properly raise the Breeders including but not limited to rodent control of premises, and Breeder security.  Grower represents and warrants that it will purchase any and all materials used in the barns (including but not limited to disinfectants, pesticides, etc.) exclusively from Pure Prairie as part of Pure Prairie's biosecurity protocol.  Pure Prairie agrees to sell the materials to Grower at prices consistent with their market value in an arm's length transaction.

B.    **Manure Handling and Breeder Disposal.**  Grower expressly agrees that manure storage, manure removal, field application of manure, dead Breeder handling and disposal, proper management and cleaning Grower's Facility and/or hiring qualified and insured persons to conduct such pumping or cleaning, and all rules, regulations and other public or private requirements or obligations with regard to the same or to operation of Grower's Facility are solely the responsibility of Grower.  Grower shall adhere to the Dead Bird and Poultry House Litter Best Management Practices attached as Exhibit B hereto.

C.    **Rejection**.  Grower shall have the right to reject responsibility for any non-conforming Breeders if it notifies Pure Prairie within 72 hours of delivery by Pure Prairie.  Failure to reject shall cause the Breeders to be the full responsibility of Grower.  Pure Prairie shall have the right to verify the appropriateness of Grower's rejection.  Grower is responsible for all non-standard Breeders and death loss after acceptance under the terms of this agreement.

D.    **Exclusivity**.  Grower agrees to only raise chickens approved for purchase by Pure Prairie, and not to raise poultry or other fowl of any kind for any other entity whatsoever during the term of this Agreement at the Property or Facility.  Pure Prairie shall have the right to approve, such approval to not be unreasonably withheld, conditioned, or delayed, Grower raising chickens or other foul at another property or facility.

E.    **Notice of Condition**.  Grower is obligated to promptly notify Pure Prairie of any material abnormal conditions that may affect the Breeders, but in any event at least within twenty-four (24) hours of learning of said conditions.

F.    **Site Records**.  Grower shall keep accurate and up-to-date site records on barn cards approved by Pure Prairie.

G.    **Animal Welfare**.  Grower must comply with all industry standards for animal welfare.  Further, Grower shall abide by any production handbook generated by Pure Prairie to include such additional duties of Grower, including production standards, criteria and requirements relating to the care and feeding of the Breeders, as such terms and conditions may be amended by Pure Prairie from time to time, all of which terms and conditions are incorporated herein and made a part hereof.  Pure Prairie agrees to provide Grower with any amendments to such production handbook within five (5) business days of such amendment.  In the event of any such amendment, Grower shall have a commercially reasonable period of time to modify its production practices to bring such practices into compliance with any amendments made to the production handbook.  After such period of time, Grower's failure to follow duties as stated in any such production handbook, in addition to being

3

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...        file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098    Doc 40    Filed 12/02/24    Entered 12/02/24 16:17:26    Desc Main
Document    Page 29 of 152

an event of default under this Agreement, shall entitle Pure Prairie to deduct losses incurred by Pure Prairie (to the extent such losses directly result from Grower's failure to follow such duties) from subsequent payments due and owing to Grower.

H. **Insurance**. Grower agrees to maintain such property and casualty insurance on Property, including the Facility, as it deems necessary or appropriate and acknowledges that Pure Prairie shall have no responsibility therefore. Grower shall maintain a standard farm liability insurance policy with coverage in the amount of no less than $500,000.00 per occurrence, and Pure Prairie shall be named as an additional insured on such liability policy. Grower agrees that it will indemnify and hold Pure Prairie and its employees and representatives harmless from any and all costs or liability caused by Grower's performance hereunder, including but not limited to any claims for personal injury, wrongful death, or property damage.

I. **Catching Preparation**. Grower will prepare the Facility for catching and follow Pure Prairie's recommended feed withdrawal plans as communicated to Grower in writing from time to time. Grower or its agent must be present to walk the Facility(ies) with the crew foreman hired by Pure Prairie, prior to the beginning of catching and to determine the number of dead Breeders. If Grower or its agent is not present, Grower will accept the crew foreman's determination of the number of dead Breeders. Grower will allow Pure Prairie's catching crews to utilize any needed fans and utilities. Grower agrees to maintain a safe working environment for representatives of Pure Prairie who must enter the Facility to carry out their work assignments.

J. **Roads**. Grower will maintain all-weather roads to the Facility(ies) and provide adequate loading pads and space to turn loading vehicles. Failure to maintain roads, loading pads and turn-arounds will make Grower liable for wrecker services and damages sustained by Pure Prairie in accessing the Facility; provided that (1) Grower shall have a reasonable amount of time, but no less than 24 hours, to clear snow and ice from roads, loading pads, and turn-arounds prior to Pure Prairie accessing the Facility after inclement weather, (2) the damages sustained by Pure Prairie (including the need for wrecker services) arise directly from Grower's failure to maintain the roads, loading pads, or turn-arounds, and (3) Pure Prairie's negligence did not contribute to such damages.

K. **Right of Inspection.** Pure Prairie and its designated representatives shall have the right to enter Grower's Property and Facility to inspect the Breeders. In all other respects, Grower shall not permit visitor traffic or other inspection of the Property or Facility without prior written consent of Pure Prairie. Parties acknowledge that this requirement is intended to ensure disease control with regard to Grower's Facility.

L. **Antibiotic Free.** Grower acknowledges and represents and warrants that Grower will take any and all commercially reasonable actions necessary (as reasonably determined by Pure Prairie) to ensure that all Breeders raised by Grower under this Agreement are raised in such a way that Grower and Pure Prairie can properly certify and represent that the Breeders are "Antibiotic Free," as such terms are used in the industry, including but not limited to any definitions of such terms by any governmental entity, trade association, or other group(s) as specified by Pure Prairie.

M. **Reports**. Grower will regularly submit such reporting forms as reasonably requested by Pure Prairie in the manner and at the times as reasonably directed by Pure Prairie to Pure Prairie.

4.    **INDEPENDENT CONTRACTOR STATUS**

4

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...          file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098    Doc 40    Filed 12/02/24    Entered 12/02/24 16:17:26    Desc Main
                    Document        Page 30 of 152

It is understood and agreed that neither Grower nor its employees shall be deemed to be employees of Pure Prairie and that Grower and/or its employees are independent contractors engaged by Pure Prairie to perform services under this Agreement and Grower is not authorized to act as an agent of Pure Prairie for any purpose whatsoever.

## 5.    INDEMNIFICATION

A. **Indemnification by Grower.** Grower agrees to defend, indemnify, and hold harmless Pure Prairie and its officers, directors, employees, affiliates, successors and assigns, from all claims, liabilities, actions, losses, damages and expenses (including any costs and counsel fees in defending any such claims) which may be caused by Grower's negligence or which arise from Grower's default of this Agreement, including but not limited to claims of public or private nuisance. If any claim, cause of action, demand or regulatory proceeding is commenced or if there is any loss to Pure Prairie on account of Grower's negligent manure storage, manure application, dead Breeder disposal, public or private nuisance, pit pumping and/or cleaning of the Facility, operation of the Facility, or any other negligent acts or omissions related thereto, Grower agrees to defend, indemnify and hold harmless Pure Prairie from all such claims, actions, demands, proceedings or losses, including attorneys' fees and costs. In addition, Grower shall defend, indemnify and hold harmless Pure Prairie, and any and all of its employees and representatives, from any and all claims of regulatory violations and/or non-compliance including but not limited to any costs and reasonable attorneys' fees incurred by the indemnified parties on account of Grower's failure to comply with Section 1.C. above.

B. **Indemnification by Pure Prairie.** Pure Prairie agrees to defend, indemnify, and hold harmless Grower and its officers, directors, employees, affiliates, successors and assigns, from all claims, liabilities, actions, losses, damages and expenses (including any costs and counsel fees in defending any such claims) which may be caused by Pure Prairie's negligence or which arise from Pure Prairie's default of this Agreement. Additionally, Pure Prairie hereby agrees to defend, indemnify and hold harmless Grower, and its heirs, successors, and assigns, from and against all claims, causes of action, liabilities, losses, costs (including any costs and counsel fees in defending any such claims) and expenses arising from, or in connection with, any death, injury or damage to any person or property which occurs on Grower's Property in connection with the entry and use of the Property by Pure Prairie, its agents, contractors, employees, and invitees. This indemnification in this section shall survive the expiration of this Agreement.

## 6.    FORCE MAJEURE.

Neither party shall be liable in any respect for failure, delay in fulfillment or performance of this Agreement if hindered or prevented, directly or indirectly, by fire, flood, storms or other acts of God, or circumstances or causes beyond the party's reasonable control.

## 7.    DEFAULT.

An event of default shall be material breach of any term or condition of this Agreement by either party.

A. Unless otherwise provided in this Agreement, upon default, the non-defaulting party must provide written notice (or such other time as may be required by law) to the defaulting party. The notice of default shall include (1) a description of the act or omission believed to constitute a breach of contract, including identification of the section of this Agreement believed to have been breached; (2) the date(s) of the breach; (3) the means by which the defaulting party can

5

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...          file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098    Doc 40    Filed 12/02/24    Entered 12/02/24 16:17:26    Desc Main
Document        Page 31 of 152

satisfactorily remedy the breach, if possible, based on the nature of the breach; and (4) a date that provides a reasonable time, based on the nature of the breach, by which the breach must be remedied. With respect to a default by Grower, if the default does not relate to an animal or human health, welfare or disease issue, then Pure Prairie shall provide a performance improvement plan to Grower specifying (1) the factors considered when placing Grower on the performance improvement plan; (2) the guidance and support provided to Grower while on the performance improvement plan, if any; (3) the factors considered to determine if and when Grower is removed from the performance improvement plan and placed back in good standing; and (4) when Grower will be terminated, which shall be not less than 90 days from the date of notice, if Grower does not make satisfactory progress under the performance improvement plan.

B. If any default is not cured within the time set forth in the notice of default, to include the time for improvement under the performance improvement plan, if any, then in addition to the option of terminating this Agreement as provided below, Pure Prairie shall have all remedies that may exist at law or in equity including the remedy of specific performance. Specific performance may include, at Pure Prairie's option, the right to hire substitute labor to perform this Agreement (or the portion Grower has not performed) until the end of the term and to deduct the cost of such labor from Grower payments, and the right of Pure Prairie to pay any of Grower's vendors or creditors directly in lieu of payments to Grower. If Pure Prairie hires substitute labor the cost of such labor shall not exceed $2,500 per month. Nothing herein shall be construed so as to prohibit Pure Prairie from seeking injunctive or other relief (to include the remedies set forth herein), to prevent the recurrence of material defaults during any time granted to the defaulting party for the opportunity to cure default     .

C. An event of default shall occur if the party shall become bankrupt or insolvent or shall involuntarily be placed into the hands of a receiver, assignee or trustee in bankruptcy.

D. The Parties agree that Grower's failure to follow Pure Prairie's reasonable written instructions directed toward correction of performance regarding feed waste, mortality, bird comfort or delivery of Breeders shall constitute an event of default.

E. In the event of a dispute as to the meaning of Agreement terms, a party may request mediation. If requested, the Parties will confer within ten (10) days of written notice of the request for mediation and shall select a mutually agreeable mediator. If the Parties are unable to agree, then either party may petition the Court specified in Section 15 of this Agreement for appointment of a mediator. Each party shall bear their own expense in connection with any mediation.

F. If Pure Prairie elects to terminate this Agreement for default, the termination shall be effective no less than ninety (90) days after the expiration of the period set forth in Section 8(B) above, except in cases where the default arises due to Grower's failure to care for the health and welfare of the chickens, or a default which presents an imminent health, welfare, or disease issue, in which case Pure Prairie may terminate this Agreement immediately.

## 8.     ASSIGNMENT.

The Parties understand and acknowledge that any assignment of this Agreement shall require mutual consent of both Parties.

## 9.     ENTIRE AGREEMENT.

6

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...          file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098    Doc 40    Filed 12/02/24    Entered 12/02/24 16:17:26    Desc Main
Document        Page 32 of 152

This Agreement, all related Exhibits, and any other documents incorporated herein by reference, constitutes the sole and entire agreement between the Parties with respect to the subject matter of this Agreement, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to the subject matter. Except as otherwise provided in Section 4.G., no modification of any of the terms or conditions contained herein may be made except by subsequent written documents signed by the Parties.

10.    **SUCCESSORS BOUND**.

The provisions of this Agreement shall inure to the benefit of and be binding upon the heirs, successors and permitted assigns of the Parties.

11.    **EXECUTION OF DOCUMENTS**.

The Parties agree to execute any and all documents necessary to implement the full terms and conditions of this Agreement.

12.    **SEVERABILITY**.

If any one provision or clause of this Agreement, or the application thereof to any person or circumstances, is held invalid or unlawful, such invalidity or unlawfulness shall not affect any other provision or clause of this Agreement.

13.    **WAIVER**.

Waiver by a party of a breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Agreement will operate or be construed as a waiver thereof; nor will any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

14.    **GOVERNING LAW**.

The Parties agree that this Agreement is made in the State of Wisconsin and shall be governed by and construed in accordance with the laws of the State of Wisconsin. Any dispute arising here from shall be subject to the exclusive jurisdiction of and exclusive venue in the County in which the Property is located. To the extent required by law, Grower has the right to request mediation of any dispute arising from this Agreement provided that such mediation shall not delay or limit the right of any party to seek injunctive or other equitable relief for breaches of this Agreement.

15.    **MEMBER OF TRI-STATE**.

No later than 90 days after the date hereof, Grower agrees that it will make a capital contribution to, and become a member of, Tri-State PPF Growers Association LLC, an Iowa limited liability company.

16.    **COUNTERPARTS**.

7

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...    file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098    Doc 40    Filed 12/02/24    Entered 12/02/24 16:17:26    Desc Main
Document    Page 33 of 152

This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (to which a signed PDF copy is attached) will be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

17. **DEFINITIONS**.

The following is a cross-reference of the sections where terms are defined within the body of this Agreement or any exhibit hereto:

"Agreement" has the meaning set forth in the preamble.

"Breeders" has the meaning set forth in the preamble.

"Facility" has the meaning set forth in Section 1.A.

"Grower" has the meaning set forth in the preamble.

"Property" has the meaning set forth in Section 1.A.

"Pure Prairie" has the meaning set forth in the preamble.

**[Signature Page Follows]**

8

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...     file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098    Doc 40    Filed 12/02/24    Entered 12/02/24 16:17:26    Desc Main
Document      Page 34 of 152

IN WITNESS WHEREOF, this Agreement has been executed on the day and year first above written.

PURE PRAIRIE FARMS, INC.

By _____

Its _____

GROWER

By _____

Its _____

9

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...          file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098   Doc 40   Filed 12/02/24   Entered 12/02/24 16:17:26   Desc Main
Document          Page 35 of 152

## EXHIBIT A
## BREEDER PRODUCTION PAYMENT SCHEDULE

Pure Prairie shall pay Grower in accordance with the following schedule:

A.    Payments shall be in advance and begin on the 5th business day of the month following the initial stocking of the house and shall continue monthly thereafter, with the final payment on the 5th business day of the month following the later to occur of a) termination of the Agreement and b) removal of the final flock. The first and last payment shall be prorated for actual days of occupancy.

Payments shall be calculated based on the square footage of the Facility: _27,360_____, times $.34 per square foot.

B.    Pure Prairie shall pay the costs for the following items:

- O    Electric
- O    Propane / Natural Gas
- O    Litter & delivery as needed
- O    Feed
- O    Incinerator fuel
- O    Fly bait
- O    Annual generator service
- O    600 new nest pads after every flock
- O    Washing of all nest pads after 2-3 flocks and return them
- O    Catch crew to move spent hens
- O    Existing cost share on equipment financing and new cost shares as mutually agreed by parties.

C.    Bonus Payment:

Following the Effective Date and for as long as Grower, as the Amended and Restated Promissory Note dated April 29, 2022 given by Tri-State PPF Growers Association LLC in favor of Michael Helgeson (the "PPF Note") or any debt obligation undertaken for the purpose of repaying the PPF Note is outstanding Pure Prairie shall increase the payment due under this Agreement by 2 cents per square foot of barn space and remit such payment on behalf of Grower to Tri-State PPF Growers Association LLC.

Up to 10,000 dollars bonus per flock based on performance measures agreed upon between Pure Prairie and Tri-State PPF Growers Association LLC Board of Directors. Bonus structure to be reviewed annually.

D.    Pure Prairie is authorized to offset any amounts owed to it by Grower from any payments required to be made hereunder.

10

73246306-v1-Pure Prairie - Breeder Production Agreement Stephanie...       file:///Users/stephanieschotthofer/Downloads/73246306-v1-Pure%20P...

Case 24-01098    Doc 40    Filed 12/02/24    Entered 12/02/24 16:17:26    Desc Main
Document       Page 36 of 152

## EXHIBIT B

### DEAD BIRD AND POULTRY HOUSE LITTER
### BEST MANAGEMENT PRACTICES

#### DEAD BIRD BEST MANAGEMENT PRACTICES

1. All dead birds will be disposed of by one or more of the following approved methods:
   a. Composting
   b. Incineration
   c. Rendering
   d. Any other method approved by any applicable state regulatory agency

2. In the case of a major die-off that cannot be disposed of by the normal, approved means on that farm, Grower will contact Pure Prairie within 12 hours to report the loss and take such further actions as may be required by applicable Federal, State and/or local law for the proper disposal of such animals. Grower shall be responsible for all costs related to such animal disposal, provided that any such major die-off is not due to a negligent act or omission of Pure Prairie or third parties under its direction or control.

#### POULTRY HOUSE LITTER BEST MANAGEMENT PRACTICES

Grower shall at all times comply with all requirements of Federal, State and local law regarding the handling and disposal of all manure and litter in the performance of Grower's obligations under this Agreement, including the adoption of appropriate industry best management practices for such activities.

11

**EXHIBIT C**

**WINCORP**
**I N T E R N A T I O N A L**

## BROILER CUSTOM HATCH AGREEMENT

**The Broiler Custom Hatch Agreement** ("Agreement") **is entered into** this ....6......day of December 2023 between **Wincorp International** with its principal offices with a mailing address at 9675 NW 117th Avenue, Building 1300, Suite 300, Medley, Florida 33178-1231 (the supplier) and **Pure Prairie Poultry** with its principal offices with a mailing address at Charles City, IA 50616 (the buyer).

**WHEREAS,** WINCORP desires to provide regular, weekly (specified by agreed upon hatch days and quantities per day) custom hatch service to 250,000 Egg Set;

and

**WHEREAS,** Pure Prairie Poultry desires to purchase the consistent, reliable high quality services from WINCORP without disruption to its business. Now, therefore, in consideration of the foregoing and mutual covenants set forth herein the Parties agree as follows.

The Agreement shall have an effective date as of W/E 12/16/23 with expected a total duration of this Agreement is for one (1) year and six (6) months with an eight (8) month notice or will auto renew.

## 1. CUSTOM HATCH SERVICES:
During the term of Agreement, WINCORP agrees to provide hatching services to Pure Prairie Poultry on the following terms (these are ensued to be in entirety of or exclusion of other reasonable expectations):



a) WINCORP agrees to accept, store safely, set, hatch eggs and load on Pure Prairie Poultry truck day old chicks in accordance to mutually agreed upon time of day, day of week and quantities.

b) For the avoidance of errors and inaccuracies of receivables and deliveries of eggs and chicks, every and all calculations will be computation as a fraction or a whole of a week viz. number of Hatching Eggs to be set per week, a week being Sunday to Saturday.

c) The Agreement between the two Parties is based on the supply of 250,000 of Pure Prairie Poultry HE to be set and hatched by WINCORP per week.

d) WINCORP prides itself in the protection of its brand. To this end, Pure Prairie Poultry further agrees to abide by WINCORP's standards, which includes, but not limited to, NPIP status, MG, MS, AI, salmonella clean and sanitation monitored; as well as adherence to industry standards in respect to animal welfare, disease mitigation practices and strategies.

e) Subjected to clause "d", Pure Prairie Poultry agrees to pay WINCORP thirty (0.30) cents per Hatching Egg Set (hatched, graded, vaccinated, packaged, and loaded) on Pure Prairie Poultry designated transportation. Plus, any chick services and vaccines will be at an additional for buyer's account.

f) While Pure Prairie Poultry, using its best estimate and based on current and nearby plans, is confident in the weekly volume stated in clause "d", it is further agreed that in the unlikely event Pure Prairie Poultry cannot for whatever reason meet to committed



volumes, Pure Prairie Poultry will compensate WINCORP the equivalent of thirty (0.30) cents per committed egg space not utilized for each twenty-one (21) day period.

g) Payment for custom hatch services (hatch fee) for Pure Prairie Poultry shall be fourteen (14) days from hatching eggs set in machine.

During the term of this Agreement, WINCORP agrees to, in the normal course of business, accept and store eggs in the agreed prescribed quantities, scheduled in acceptable conditions (temperate, humidity, minimum disturbance) to supply the weekly agreed volume, e.g. 250,000 Hatching Eggs Set per week.

While due care will be exercised to achieve a maximum hatch, hatch will be determined by incoming fertility and hatching egg care prior to arrival at hatchery. For the instances chicks produced in excess of projection average chicks remains the property of Pure Prairie Poultry ownership. Notwithstanding, Pure Prairie Poultry will provide clear and timely instructions for the handling of variances in hatch on a particular day and/or week. This treatment may often include the offer of purchase by WINCORP for sale to their other customers.

Records and recording are essential requirements in the monitoring of biological expression, in this instance embryos and chicks. WINCORP agrees to keep and provide when requested records, which shall include but not limited to:
1. Volume eggs delivered/received
2. Volume of eggs set by (machine and flock numbers)
3. Volume rolled or un-settable (reason)
4. Shell temperature



5. Machine temperature
6. % Injected on transfer
7. Age of transfer
8. Hatch percentage (weighted average) by day and flock

## 2. VACCINATION:

Pure Prairie Poultry will from time to time, as dictated by the prevailing information and conditions, change, modify, add or eliminate one or more of the biologics to which its chicks are being purposefully exposed. All such changes will be relayed in writing and subsequent discussions with the designated personnel to address any perceived implications to the ongoing operations and inner working of the facilities to include the management of inventories, sourcing of the biologics and cost implications if any.

## 3. PACKAGING:

From time-to-time, seasonal influences and transportation capabilities may demand modification to what for this purpose will be deemed the standard pack of 100 chicks per reusable chick creates. Only graded, seemingly healthy chicks will be packaged for shipment (loaded FOB facility).

Additionally, Pure Prairie Poultry at its expense will provide apparatus for temperature monitoring during transportation. WINCORP agrees to adhere to the protocol (which will be provided) for the activation and placement of same in the locations and quantities as called for.

## 4. NOTICE:

Any notice to be provided hereunder by either of the Parties, hereto must be provided in writing, signed by an officer or otherwise



authorized representative of the company and sent by post or acceptable electronic means viz email and or fax.

## 5. ACT OF GOD OR DISEASE OUTBREAK:

Both Parties further agree to hold the other harmless against any loss resulting from acts of God or disease outbreak. In such cases, both Parties will exercise their best judgement to minimize any loss to be suffered by either Party.

## 6. LAW GOVERNING AND ASSIGNABILITY:

This Agreement shall be construed and governed by the laws of Florida. This Agreement is not assignable by either Party to this Agreement, nor may the duties of either Party be delegated to others without the prior written consent of the other Party.

## 7. DEFAULTS AND REMEDIES:

a) Pure Prairie Poultry shall be in default of this Agreement upon the occurrence of any of the following:

    i.    Failure to pay WINCORP amount due pursuant to sections 1 and 2 of this Agreement within five (5) business days of receipt of notice from WINCORP that such bill was not received when due.

    ii.   Failure to perform any other term of condition of this Agreement, if such failure is not cured within sixty (60) days following receipt of notice from WINCORP of such failure; provided that such sixty (60) day period shall be extended for up to an additional sixty (60) days if such failure is due to reasons beyond Pure Prairie Poultry's control and Pure Prairie Poultry has instituted reasonable steps within such sixty (60) days to cure such failure.



b) WINCORP shall be in default in this Agreement upon occurrence of any of the following:

   i.   Termination of placement of eggs for Pure Prairie Poultry's benefit at WINCORP hatchery.

   ii.   Failure to perform any other term or condition of this Agreement if such failure is not cured by WINCORP within sixty (60) days of receipt of notice from Pure Prairie Poultry of such failure; provided, that such sixty (60) day period shall be extended for up to an additional sixty (60) days if such failure is due to reasons beyond WINCORP's reasonable control and WINCORP has instituted reasonable steps within such sixty (60) day period to cure such failure.

c) Upon the occurrence of an event of default, as set forth in the section, each Party shall have the right to seek to resolve a dispute or controversy arising under this Agreement through any available forum, including at law or in equity. The Parties agree any default of this Agreement by the defaulting Party will cause the non-defaulting Party irreparable harm, and the monetary damages may not be a sufficient remedy, and that the non-defaulting Party may be left with no adequate remedy in law. Therefore, the non-defaulting Party shall be entitled, without waiving any other rights or remedies, and notwithstanding any provision herein to the contrary, to such injunctive or equitable relief as may be deemed proper by a court of competent jurisdiction. Such remedies shall not be deemed to be exclusive remedy for any breach of the Agreement, but shall be in addition to all other remedies available at law or in equity. In any and all events, the Parties agree each will take reasonable measures to wind down their relationship and will continue to take into account Pure Prairie Poultry's ongoing



chick supply needs during any wind down period which the Parties agree will take approximately 12 months.

**IN WITNESS WHEROF,** the Parties have executed this Agreement in duplicate the day and year first above written.

**WINCORP INTERNATIONAL
SUPPLIER:**

By ......................................

Title: President

Date: December 2023

**PURE PRAIRIE POULTRY
BUYER:**

By ......................................

Title: ~~President~~    CFO

Date: December 2023

# EXHIBIT D

**COVER SHEET TO BROILER PRODUCTION AGREEMENT**

|  |  |  |  |
|---|---|---|---|
| | Pure Prairie Poultry Inc. | Grower: | Gibbons |
| Address: | 68808 Ford Road | Address: | N20599 County Road G |
| | Fairfax, Minnesota 55332 | | Dodge, WI 54625 |
| Telephone #: | 612-501-3766 | | Greg Gibbons |

Telephone #:   608-865-1343

---

**THIS DOCUMENT IS A BINDING AGREEMENT BETWEEN
PURE PRAIRIE POULTRY INC. ("Pure Prairie"), AND YOU.**

**READ THIS CONTRACT CAREFULLY.** This Cover Sheet provides only a brief summary of your contract. However, this Cover Sheet is not the entire Agreement. This Cover Sheet is not the contract and only the terms of the actual contract are legally binding. The contract itself sets forth, in detail, the rights and obligations of both you and Pure Prairie. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR CONTRACT CAREFULLY.**

---

**RIGHT TO CANCEL AND DEADLINE TO EXERCISE RIGHT**. FOR A TIME PERIOD NOT LATER THAN THE DATE THAT IS THE LONGER OF: (i) THREE BUSINESS DAYS AFTER YOU AND PURE PRAIRIE HAVE EXECUTED THE BROILER PRODUCTION AGREEMENT; OR (ii) THREE BUSINESS DAYS AFTER YOU RECEIVE A COPY OF THE SIGNED BROILER PRODUCTION AGREEMENT, YOU HAVE A RIGHT TO CANCEL THE BROILER PRODUCTION AGREEMENT. THE PROCEDURE FOR CANCELLATION IS SET FORTH AT THE END OF THIS COVER SHEET. IF YOU CANCEL THE BROILER PRODUCTION AGREEMENT, THEN THE AGREEMENT SHALL BE VOID AND OF NO EFFECT.

**CAPITAL INVESTMENTS DISCLOSURE STATEMENT**.    DURING ITS TERM, THE BROILER PRODUCTION AGREEMENT MAY REQUIRE ADDITIONAL LARGE CAPITAL INVESTMENTS.

**MATERIAL RISK DISCLOSURE STATEMENT**

Please consider carefully the following risk factors in addition to your personal animal husbandry skills, experience and knowledge before signing this Broiler Production Agreement.

**BROILER PRODUCTION RISKS**
- Raising broiler chickens for profit depends on many factors. Performance under the terms of this Broiler Production Agreement does not ensure that You will make a profit. Your profitability is affected by numerous factors. Such factors include, but are not limited to, your own husbandry and management skills, herd health, adverse weather conditions, or other catastrophic loss of the facilities or the chickens on account of factors beyond Pure Prairie or Your control.
- Pure Prairie may fail to deliver chickens, feed or veterinary services in the quantity or quality described in the Broiler Production Agreement due to act of God or other unforeseen circumstances.
- Pure Prairie's production and animal welfare standards are subject to change from time to time in Pure Prairie's discretion.
- The risk exists that sickness, disease, or epidemic may injure the Pure Prairie flock or flocks.
- You will be responsible for loss of or damage to the Pure Prairie flock or flocks to the extent such loss or damage resulted from your breach of this Broiler Production Agreement.

**FINANCIAL RISKS**
- Financing of construction or operation of Your facilities may exceed costs anticipated by You.
- Failure to make payments to repay a third-party lender which has financed construction or operation of your facilities may cause your third-party lender to foreclose on the facility or take other collection actions.

- Default under the terms of your financing with your third-party lender shall also constitute a default under this Broiler Production Agreement.
- You must pay taxes relating to your operation, carry insurance on your facility, and bear other costs in connection with your operation.

## REGULATORY RISKS
- You are responsible for obtaining all necessary permits to legally construct and operate the facilities. Failure to obtain such permits may result in enforcement actions being taken against You by authorized regulatory agencies or personnel.
- You are responsible for properly storing, handling and disposing of manure from the facilities. You are exposed to liability for any manure spills or contamination caused by improper storage, handling or disposal.
- The chickens may be quarantined or destroyed by animal health or other regulatory agencies or personnel if the chickens are found to be diseased.
- You are responsible for disposal of all dead chickens. You could be exposed to liability if You fail to properly dispose of all dead chickens.

## PAYMENT RISKS
- Pure Prairie has the right to delay, adjust or offset the amount You are paid under the Broiler Production Agreement for various reasons. Such reasons include, but are not limited to, performance adjustments, death loss, sort loss, delivery of non-standard, diseased or injured chickens, failure to order feed in a timely manner, failure to make required production reports, failure to provide adequate access to the facilities, failure to clean the facilities between production cycles, failure to maintain required manure storage levels or failure to follow procedures mandated by Pure Prairie.
- You are required to indemnify, defend and hold Pure Prairie harmless from all liabilities and causes of action arising from your failure to perform the Broiler Production Agreement.

## TERMINATION RISKS
- Pure Prairie may terminate this Broiler Production Agreement prior to expiration of the term of this Broiler Production Agreement based on your default.
- The Broiler Production Agreement notes that Pure Prairie may develop and provide a production handbook which would contain additional duties and if You fail to perform those duties, Pure Prairie could declare a default of the Broiler Production Agreement.
- Upon default, Pure Prairie has the right to take possession of and to operate the facilities as well as any other property needed to operate the facilities for the duration of the Broiler Production Agreement.

IN WITNESS WHEREOF, Pure Prairie, Inc. has executed and emailed this Cover Sheet with attachment on June 20, 2024.

Pure Prairie Poultry, Inc.

By _George Peichel_
George Peichel (Jul 1, 2024 12:30 CDT)

Its CFO

## PROCEDURE TO CANCEL THE BROILER PRODUCTION AGREEMENT

You may terminate the Broiler Production Agreement by mailing a written cancellation notice to PURE PRAIRIE at the address set forth above not later than the date that is the longer of: (i) three business days after the date on which the Broiler Production Agreement has been signed by both You and Pure Prairie; or (ii) three business days after You receive a copy of the signed Broiler Production Agreement. The written notice of cancellation will be deemed mailed on the date of the postmark on the envelope.

Received by Grower: _07/01/2024_ _GG_
                     Date        Initials

## KEY TERMS INDEX

| | |
|---|---:|
| **Parties: Pure Prairie and Gibbons** | **p. 1** |
| **Cancellation, Renewal, Amendment** | **pp. 1, 3, 6, 8** |
| **Duties and Obligations of each Party** | **Pp 1-6** |
| **Provisions Subject to Change** | **Section 4.G., Section 10** |
| **Poultry Management Program** | **Section 4** |
| **Member of Tri-State PPF Growers Association LLC** | **Section 16** |
| **Definitions** | **Section 17** |

## PURE PRAIRIE POULTRY, INC.
## BROILER PRODUCTION AGREEMENT

On June 20, 2024 (the "Effective Date"), PURE PRAIRIE POULTRY, INC., a Minnesota Corporation with its principal place of business at 68808 Ford Road, Fairfax, Minnesota 55332, ("Pure Prairie") and Gibbons ("Grower") (Grower and Pure Prairie are jointly referred to as "Parties") agree that Pure Prairie will deliver broiler chickens ("Broilers") to Grower, Grower will care for such Broilers until of marketable age and Pure Prairie will thereafter haul out the Broilers for processing under the following terms and conditions ("Agreement"):

1.   **AVAILABILITY OF BUILDING AND FACILITIES.**

    A.   **Building and Facilities.** Grower has designated 1 barn(s), (the "Facility") on Grower's property located at N20595 County Road G, Dodge, WI 54625 ("Property") which Grower and Pure Prairie agree that as of the Effective Date includes adequate light, heat, square footage, feed and water space for the performance of Grower's obligations contained herein. Grower and Pure Prairie agree that Grower will have no obligation to make any capital investment in the Facility under this Agreement absent a written amendment to this Agreement executed by both parties. As a condition precedent to this Agreement becoming effective, Pure Prairie may require that Grower shall obtain such testing as Pure Prairie may reasonably require to verify that the ground under the facilities does not have any pesticide or other residues that would prevent the Broilers from meeting Pure Prairie's quality standards.

    B.   **Access and Utilities.** Grower shall make provisions for utilities, water, permanent ingress and egress and manure storage and disposal for the duration of this Agreement consistent with industry standards. Grower will continuously ensure the availability of all fixtures and equipment reasonably necessary to raise the Broilers pursuant to the terms of this Agreement.

    C.   **Regulatory Requirements.** Grower shall be responsible for any and all necessary environmental and/or regulatory approvals applicable to the Facility including any county zoning requirements, state requirements or permits, manure hauling permits including if necessary manure management plans and/or agreements and satisfaction of any and all other environmental, zoning or regulatory requirements and approvals necessary to operate the Facility. Grower shall be solely responsible for ensuring compliance with the foregoing requirements and any material failure to comply shall constitute a default of this Agreement.

2.   **TERM OF AGREEMENT.**

Unless earlier terminated in accordance with the terms of this Agreement, this Agreement shall run for a term of 5 years from the first placement of the Broilers in Grower's Facility. Such placement shall be documented with an addendum to this Agreement and signed by Pure Prairie and Grower.

At the end of the term Pure Prairie and Grower shall both have the right to terminate this Agreement without any cause, provided that a written notice is given at least ninety (90) days prior to the end of the term as set forth above. If neither party provides written notice of termination, this Agreement shall be automatically extended for successive one-year periods unless sooner terminated in accordance with the terms of this Agreement.

Grower shall have the right to terminate this Agreement for any reason at any time, provided that Pure Prairie is given written notice of termination at least ninety (90) days prior to the date of termination.

3.     **OBLIGATIONS OF PURE PRAIRIE.**

A.   **Delivery of Broilers.** Pure Prairie agrees to deliver Broilers to Grower on a regular basis at no cost to Grower. Pure Prairie will arrange for the delivery of healthy Broilers to the facilities. Pure Prairie will use commercially reasonable efforts to provide Grower with a tentative schedule for Broiler delivery in advance. Pure Prairie will give Grower at least three (3) days advance notice of delivery dates of its Broilers to the Facility.

B.   **Feed.** Pure Prairie shall be exclusively responsible to deliver, provide and pay for feed to the Facility for all Broilers under this Agreement.

C.   **Medications.** Pure Prairie will provide veterinary services to Broilers at no cost to Grower. The veterinarian shall be selected solely by Pure Prairie, provided that the selected veterinarian shall be qualified and experienced in the treatment of Broilers. Pure Prairie shall be responsible for obtaining and providing such medications and vaccinations as are recommended in the industry. Grower shall ensure that no medications are provided to any of the Broilers apart from what has been provided by Pure Prairie. Grower shall be exclusively responsible for all losses arising from Grower's use of medications and antibiotics unauthorized by Pure Prairie, including indemnifying and holding Pure Prairie harmless from any and all losses or liabilities directly resulting from such unauthorized use.

D.   **Ownership.** Pure Prairie shall remain the owner at all times of the Broilers. Grower shall not take any action inconsistent with Pure Prairie's ownership rights, including but not limited to using any of the Broilers as security for any loans or otherwise pledging or encumbering the Broilers in any fashion. Grower grants Pure Prairie the right to file a UCC-1 notification filing concerning its ownership rights as to the Broilers, but this grant of authority shall in no respect obligate Pure Prairie to do so. Grower agrees to indemnify and hold Pure Prairie harmless from any and all losses directly resulting from Grower's breach of this paragraph.

E.   **Catching & Hauling.** Pure Prairie will provide the labor and equipment necessary to catch and haul the Broilers from the Facility to a processing plant at no cost to Grower. In no event shall any Broilers be removed from Grower's Facility without the prior written consent of Pure Prairie. Pure Prairie will provide Grower at least three (3) days advance notice of catching and hauling dates of the Broilers from the Facility. Pure Prairie will be responsible for all damage to the Facility caused by the catch crew or any other representatives of Pure Prairie.

F.   **Payments.** Pure Prairie will pay Grower according to the terms specified in attached Exhibit A. A condition of payment is (1) timely performance by Grower of its obligations in this Agreement; and (2) completion of such reporting forms as requested by Pure Prairie in the manner and at the times as directed by Pure Prairie. Failure to regularly submit such reports to Pure Prairie in addition to being a condition of default, shall entitle Pure Prairie to delay payment until the report is provided.

G.   **Property Damage.** Pure Prairie shall be solely responsible for any damage or theft to Grower's property or equipment located on the Property that is caused by the acts or omissions of Pure Prairie or its representatives, and Pure Prairie shall reimburse Grower for all costs incurred by Grower in repairing or replacing any such property or equipment.

4.     **OBLIGATIONS OF GROWER.**

2

A. **General Duties**. Grower agrees to provide the Facility and properly maintain the same at its sole expense. Other than as set forth in this Agreement, Grower shall provide all labor and supervision as may be necessary to properly raise the Broilers including but not limited to unloading the Broilers at the Facility, rodent control of premises, and Broiler security. Grower represents and warrants that it will purchase any and all materials used in the barns (including but not limited to disinfectants, pesticides, etc.) exclusively from Pure Prairie as part of Pure Prairie's biosecurity protocol. Pure Prairie agrees to sell the materials to Grower at prices consistent with their market value in an arm's length transaction. Grower shall furnish, at its expense (except as provided otherwise in Exhibit A with respect to Class A and Class B Facilities), the water, electricity and propane needed for the proper care of the Broilers and shall be solely responsible for the cleaning of the Facility in which the Broilers are housed.

B. **Manure Handling and Broiler Disposal.** Grower expressly agrees that manure storage, manure removal, field application of manure, dead Broiler handling and disposal, proper management and cleaning Grower's Facility and/or hiring qualified and insured persons to conduct such pumping or cleaning, and all rules, regulations and other public or private requirements or obligations with regard to the same or to operation of Grower's Facility are solely the responsibility of Grower. Grower shall adhere to the Dead Bird and Poultry House Litter Best Management Practices attached as Exhibit B hereto.

C. **Rejection**. Grower shall have the right to reject responsibility for any non-conforming Broilers if it notifies Pure Prairie within 72 hours of delivery by Pure Prairie. Failure to so reject shall cause the Broilers to be the full responsibility of Grower. Pure Prairie shall have the right to verify the appropriateness of Grower's rejection. Grower is responsible for all non-standard Broilers and death loss after acceptance under the terms of this agreement.

D. **Exclusivity**. Grower agrees to only raise chickens approved for purchase by Pure Prairie, and not to raise poultry or other fowl of any kind for any other entity whatsoever during the term of this Agreement at the Property or Facility. Pure Prairie shall have the right to approve, such approval to not be unreasonably withheld, conditioned, or delayed, Grower raising chickens or other foul at another property or facility.

E. **Notice of Condition**. Grower is obligated to promptly notify Pure Prairie of any material abnormal conditions that may affect the Broilers, but in any event at least within twenty-four (24) hours of learning of said conditions.

F. **Site Records**. Grower shall keep accurate and up-to-date site records on barn cards approved by Pure Prairie.

G. **Animal Welfare**. Grower must comply with all industry standards for animal welfare. Further, Grower shall abide by any production handbook generated by Pure Prairie to include such additional duties of Grower, including production standards, criteria and requirements relating to the care and feeding of the Broilers, as such terms and conditions may be amended by Pure Prairie from time to time, all of which terms and conditions are incorporated herein and made a part hereof. Pure Prairie agrees to provide Grower with any amendments to such production handbook within five (5) business days of such amendment. In the event of any such amendment, Grower shall have a commercially reasonable period of time to modify its production practices to bring such practices into compliance with any amendments made to the production handbook. After such period of time, Grower's failure to follow duties as stated in any such production handbook, in addition to being an event of default under this Agreement, shall entitle Pure Prairie to deduct losses incurred by

3

Pure Prairie (to the extent such losses directly result from Grower's failure to follow such duties) from subsequent payments due and owing to Grower.

H. **Insurance**. Grower agrees to maintain such property and casualty insurance on Property, including the Facility, as it deems necessary or appropriate and acknowledges that Pure Prairie shall have no responsibility therefore. Grower shall maintain a standard farm liability insurance policy with coverage in the amount of no less than $500,000.00 per occurrence, and Pure Prairie shall be named as an additional insured on such liability policy. Grower agrees that it will indemnify and hold Pure Prairie and its employees and representatives harmless from any and all costs or liability caused by Grower's performance hereunder, including but not limited to any claims for personal injury, wrongful death, or property damage.

I. **Catching Preparation**. Grower will prepare the Facility for catching and follow Pure Prairie's recommended feed withdrawal plans as communicated to Grower in writing from time to time. Grower or its agent must be present to walk the Facility(ies) with the crew foreman hired by Pure Prairie, prior to the beginning of catching and to determine the number of dead Broilers. If Grower or its agent is not present, Grower will accept the crew foreman's determination of the number of dead Broilers. Grower will allow Pure Prairie's catching crews to utilize any needed fans and utilities. Grower agrees to maintain a safe working environment for representatives of Pure Prairie who must enter the Facility to carry out their work assignments.

J. **Roads**. Grower will maintain all-weather roads to the Facility(ies) and provide adequate loading pads and space to turn loading vehicles. Failure to maintain roads, loading pads and turn-arounds will make Grower liable for wrecker services and damages sustained by Pure Prairie in accessing the Facility; provided that (1) Grower shall have a reasonable amount of time, but no less than 24 hours, to clear snow and ice from roads, loading pads, and turn-arounds prior to Pure Prairie accessing the Facility after inclement weather, (2) the damages sustained by Pure Prairie (including the need for wrecker services) arise directly from Grower's failure to maintain the roads, loading pads, or turn-arounds, and (3) Pure Prairie's negligence did not contribute to such damages.

K. **Right of Inspection**. Pure Prairie and its designated representatives shall have the right to enter Grower's Property and Facility to inspect the Broilers. In all other respects, Grower shall not permit visitor traffic or other inspection of the Property or Facility without prior written consent of Pure Prairie. Parties acknowledge that this requirement is intended to ensure disease control with regard to Grower's Facility.

L. **Reports**. Grower will regularly submit such reporting forms as reasonably requested by Pure Prairie in the manner and at the times as reasonably directed by Pure Prairie to Pure Prairie.

5.    **INDEPENDENT CONTRACTOR STATUS**

It is understood and agreed that neither Grower nor its employees shall be deemed to be employees of Pure Prairie and that Grower and/or its employees are independent contractors engaged by Pure Prairie to perform services under this Agreement and Grower is not authorized to act as an agent of Pure Prairie for any purpose whatsoever.

6.    **INDEMNIFICATION**

A. **Indemnification by Grower.** Grower agrees to defend, indemnify, and hold harmless Pure Prairie and its officers, directors, employees, affiliates, successors and assigns, from all claims, liabilities,

4

actions, losses, damages and expenses (including any costs and counsel fees in defending any such claims) which may be caused by Grower's negligence or which arise from Grower's default of this Agreement, including but not limited to claims of public or private nuisance. If any claim, cause of action, demand or regulatory proceeding is commenced or if there is any loss to Pure Prairie on account of Grower's negligent manure storage, manure application, dead Broiler disposal, public or private nuisance, pit pumping and/or cleaning of the Facility, operation of the Facility, or any other negligent acts or omissions related thereto, Grower agrees to defend, indemnify and hold harmless Pure Prairie from all such claims, actions, demands, proceedings or losses, including attorneys' fees and costs. In addition, Grower shall defend, indemnify and hold harmless Pure Prairie, and any and all of its employees and representatives, from any and all claims of regulatory violations and/or non-compliance including but not limited to any costs and reasonable attorneys' fees incurred by the indemnified parties on account of Grower's failure to comply with Section 1.C. above.

B. **Indemnification by Pure Prairie.** Pure Prairie agrees to defend, indemnify, and hold harmless Grower and its officers, directors, employees, affiliates, successors and assigns, from all claims, liabilities, actions, losses, damages and expenses (including any costs and counsel fees in defending any such claims) which may be caused by Pure Prairie's negligence or which arise from Pure Prairie's default of this Agreement. Additionally, Pure Prairie hereby agrees to defend, indemnify and hold harmless Grower, and its heirs, successors, and assigns, from and against all claims, causes of action, liabilities, losses, costs (including any costs and counsel fees in defending any such claims) and expenses arising from, or in connection with, any death, injury or damage to any person or property which occurs on Grower's Property in connection with the entry and use of the Property by Pure Prairie, its agents, contractors, employees, and invitees. This indemnification in this section shall survive the expiration of this Agreement.

7. **FORCE MAJEURE.**

Neither party shall be liable in any respect for failure, delay in fulfillment or performance of this Agreement if hindered or prevented, directly or indirectly, by fire, flood, storms or other acts of God, or circumstances or causes beyond the party's reasonable control.

8. **DEFAULT.**

An event of default shall be material breach of any term or condition of this Agreement by either party.

A. Unless otherwise provided in this Agreement, upon default, the non-defaulting party must provide written notice (or such other time as may be required by law) to the defaulting party. The notice of default shall include (1) a description of the act or omission believed to constitute a breach of contract, including identification of the section of this Agreement believed to have been breached; (2) the date(s) of the breach; (3) the means by which the defaulting party can satisfactorily remedy the breach, if possible, based on the nature of the breach; and (4) a date that provides a reasonable time, based on the nature of the breach, by which the breach must be remedied. With respect to a default by Grower, if the default does not relate to an animal or human health, welfare or disease issue, then Pure Prairie shall provide a performance improvement plan to Grower specifying (1) the factors considered when placing Grower on the performance improvement plan; (2) the guidance and support provided to Grower while on the performance improvement plan, if any; (3) the factors considered to determine if and when Grower is removed from the performance improvement plan and placed back in good standing; and (4) when Grower will be terminated, which shall be not less than 90 days from the date of

notice, if Grower does not make satisfactory progress under the performance improvement plan.

B. If any default is not cured within the time set forth in the notice of default, to include the time for improvement under the performance improvement plan, if any, then in addition to the option of terminating this Agreement as provided below, Pure Prairie shall have all remedies that may exist at law or in equity including the remedy of specific performance. Specific performance may include, at Pure Prairie's option, the right to hire substitute labor to perform this Agreement (or the portion Grower has not performed) until the end of the term and to deduct the cost of such labor from Grower payments, and the right of Pure Prairie to pay any of Grower's vendors or creditors directly in lieu of payments to Grower. If Pure Prairie hires substitute labor the cost of such labor shall not exceed $2,500 per month. Nothing herein shall be construed so as to prohibit Pure Prairie from seeking injunctive or other relief (to include the remedies set forth herein), to prevent the recurrence of material defaults during any time granted to the defaulting party for the opportunity to cure default     .

C. An event of default shall occur if the party shall become bankrupt or insolvent or shall involuntarily be placed into the hands of a receiver, assignee or trustee in bankruptcy.

D. The Parties agree that Grower's failure to follow Pure Prairie's reasonable written instructions directed toward correction of performance regarding feed waste, mortality, bird comfort or delivery of Broilers shall constitute an event of default.

E. In the event of a dispute as to the meaning of Agreement terms, a party may request mediation. If requested, the Parties will confer within ten (10) days of written notice of the request for mediation and shall select a mutually agreeable mediator. If the Parties are unable to agree, then either party may petition the Court specified in Section 15 of this Agreement for appointment of a mediator. Each party shall bear their own expense in connection with any mediation.

F. If Pure Prairie elects to terminate this Agreement for default, the termination shall be effective no less than ninety (90) days after the expiration of the period set forth in Section 8(B) above, except in cases where the default arises due to Grower's failure to care for the health and welfare of the chickens, or a default which presents an imminent health, welfare, or disease issue, in which case Pure Prairie may terminate this Agreement immediately.

9.   **ASSIGNMENT**.

The Parties understand and acknowledge that any assignment of this Agreement shall require mutual consent of both Parties.

10.   **ENTIRE AGREEMENT**.

This Agreement, all related Exhibits, and any other documents incorporated herein by reference, constitutes the sole and entire agreement between the Parties with respect to the subject matter of this Agreement, and supersedes all prior and contemporaneous understandings, agreements, representations, and warranties, both written and oral, with respect to the subject matter. Except as otherwise provided in Section 4.G., no modification of any of the terms or conditions contained herein may be made except by subsequent written documents signed by the Parties.

11.   **SUCCESSORS BOUND**.

6

The provisions of this Agreement shall inure to the benefit of and be binding upon the heirs, successors and permitted assigns of the Parties.

**12.**   **EXECUTION OF DOCUMENTS.**

The Parties agree to execute any and all documents necessary to implement the full terms and conditions of this Agreement.

**13.**   **SEVERABILITY.**

If any one provision or clause of this Agreement, or the application thereof to any person or circumstances, is held invalid or unlawful, such invalidity or unlawfulness shall not affect any other provision or clause of this Agreement.

**14.**   **WAIVER.**

Waiver by a party of a breach of any provision of this Agreement shall not be construed as a waiver of any subsequent breach. Except as otherwise set forth in this Agreement, no failure to exercise, or delay in exercising, any rights, remedy, power, or privilege arising from this Agreement will operate or be construed as a waiver thereof; nor will any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

**15.**   **GOVERNING LAW.**

The Parties agree that this Agreement is made in the State of Wisconsin and shall be governed by and construed in accordance with the laws of the State of Wisconsin. Any dispute arising here from shall be subject to the exclusive jurisdiction of and exclusive venue in the County in which the Property is located. To the extent required by law, Grower has the right to request mediation of any dispute arising from this Agreement provided that such mediation shall not delay or limit the right of any party to seek injunctive or other equitable relief for breaches of this Agreement.

**16.**   **MEMBER OF TRI-STATE.**

No later than 90 days after the date hereof, Grower agrees that it will make a capital contribution to, and become a member of, Tri-State PPF Growers Association LLC, an Iowa limited liability company.

**17.**   **COUNTERPARTS.**

This Agreement may be executed in counterparts, each of which will be deemed an original, but all of which together will be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, e-mail, or other means of electronic transmission (to which a signed PDF copy is attached) will be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**18.**   **DEFINITIONS.**

The following is a cross-reference of the sections where terms are defined within the body of this Agreement or any exhibit hereto:

7

"Agreement" has the meaning set forth in the preamble.

"Broilers" has the meaning set forth in the preamble.

"Class A Facility" has the meaning set forth in Exhibit A.

"Class B Facility" has the meaning set forth in Exhibit A.

"Class C Facility" has the meaning set forth in Exhibit A.

"Facility" has the meaning set forth in Section 1.A.

"Grower" has the meaning set forth in the preamble.

"Property" has the meaning set forth in Section 1.A.

"Pure Prairie" has the meaning set forth in the preamble.

**[Signature Page Follows]**

IN WITNESS WHEREOF, this Agreement has been executed on the day and year first above written.

PURE PRAIRIE POULTRY, INC.

By _*George Peichel*_
   George Peichel (Jul 1, 2024 12:30 CDT)

Its CFO

GROWER

By _____
   Greg Osborn (Jul 1, 2024 11:40 CDT)

Its  07/01/2024

## EXHIBIT A
## BROILER PRODUCTION PAYMENT SCHEDULE

Pure Prairie shall pay Grower in accordance with the following schedule:

A.    Payments shall be in advance and begin on the 5th business day of the month following the initial stocking of the house and shall continue monthly thereafter, with the final payment on the 5th business day of the month following the later to occur of a) termination of the Agreement and b) removal of the final flock. The first and last payment shall be prorated for actual days of occupancy.

B.    Payments shall be calculated based on the square footage of the Facility:37,500, times the payment rate marked below:

   O    Class A Facility: $0.2180 per square foot per month

   O    Class B Facility: $0.1865 per square foot per month

   O    Class C Facility: $0.2030 per square foot per month

C.    For Class A and Class B Facilities Pure Prairie shall pay the monthly electrical cost and the monthly cost for heating the facilities.

D.    Grower and Pure Prairie shall split the cost of all new bedding 50/50.

E.    Bonus Payment:

   a.    Following the Effective Date and for as long as Grower, as the Amended and Restated Promissory Note dated April 29, 2022 given by Tri-State PPF Growers Association LLC in favor of Michael Helgeson (the "PPF Note") or any debt obligation undertaken for the purpose of repaying the PPF Note is outstanding Pure Prairie shall increase the payment due under this Agreement by 2 cents per square foot of barn space and remit such payment on behalf of Grower to Tri-State PPF Growers Association LLC.

   b.    During the term of this Agreement, Pure Prairie shall also provide an incentive payment to Grower pursuant to this Section E(b). The incentive program shall be based on the European Broiler Index.  This index combines the relevant factors under the control of Grower into one index.  It is calculated as follows:

Base Index
Numerator

| | |
|---|---|
| Average Daily Gain in Pounds per day | .13 |
| Times 454 | *454 |
| Equals | 59.02 |
| Times Livability | *92 |
| = Numerator | =5429.84 |

Denominator

| | |
|---|---|
| Feed Conversion (Efficiency) | 1.80 |
| Times 10 | *10 |

|  | = Denominator | | =18 |
| Result | | 5429.84/18 | =302.67 |

All flocks scoring above 350 in 2024 will receive a $.02 per pound incentive. The incentive calculation and threshold for scoring shall change annually by mutual negotiation between Pure Prairie and TRI-STATE PPF GROWERS ASSOCIATION LLC, but shall always be relevant to the business plan of Pure Prairie. It is the intent of the parties that the total bonus paid to Growers each year under this Section E(b) shall be equal to $0.01 per pound produced by all Growers. Such threshold shall be announced by December 15th of each year for the subsequent year.

For reference see: https://www.poultryperformanceplus.com/information-database/broilers/285-european-broiler-index-or-european-production-efficiency-factor

The bonus paid under this Section E(b) will be paid by the 15th day of the month following Broiler processing.

F. Pure Prairie is authorized to offset any amounts owed to it by Grower from any payments required to be made hereunder.

G. For purposes of this Exhibit A, the following terms shall have the meanings set forth below:
   a. "Class A Facility" means a Facility which meets the following specifications: (1) tunnel ventilation; (2) cool cells; (3) radiant heat; and (4) for future new barns, built according the New Bard Standards of Pure Prairie.

   b. "Class B Facility" means a Facility which meets the following specifications: (1) tunnel ventilation; and (2) cool cells or other approved cooling system.

   c. "Class C Facility" means a Facility which has been approved by Pure Prairie.

11

## EXHIBIT B

## DEAD BIRD AND POULTRY HOUSE LITTER
## BEST MANAGEMENT PRACTICES

### DEAD BIRD BEST MANAGEMENT PRACTICES

1. All dead birds will be disposed of by one or more of the following approved methods:
    a. Composting
    b. Incineration
    c. Rendering
    d. Any other method approved by any applicable state regulatory agency

2. In the case of a major die-off that cannot be disposed of by the normal, approved means on that farm, Grower will contact Pure Prairie within 12 hours to report the loss and take such further actions as may be required by applicable Federal, State and/or local law for the proper disposal of such animals. Grower shall be responsible for all costs related to such animal disposal, provided that any such major die-off is not due to a negligent act or omission of Pure Prairie or third parties under its direction or control.

### POULTRY HOUSE LITTER BEST MANAGEMENT PRACTICES

Grower shall at all times comply with all requirements of Federal, State and local law regarding the handling and disposal of all manure and litter in the performance of Grower's obligations under this Agreement, including the adoption of appropriate industry best management practices for such activities.

12

## CERTIFICATE AND CONSENT

Pure Prairie Poultry, Inc., a Minnesota corporation ("Company") has requested an extension of credit from Bremer Bank, National Association, a national banking association ("Lender").  As a condition to such extension of credit, the Lender requires that Company grant to the Lender a security interest in certain poultry and livestock ("Property").  To induce the Lender to extend credit to Company, the undersigned:

1. Certifies that the undersigned is a "Grower" under that certain Broiler Production Agreement with the Company dated June 20, 2024; ("Agreement") pursuant to which Grower has or will obtain possession of some of the Property; and

2. Consents to the assignment of the Agreement by the Company to the Lender as collateral security; and

3. Disclaims any interest in the Property and agrees to assert no liens or claim to the Property while Company is indebted to the Lender; and

4. Agrees that the Lender or its representatives may enter upon the real estate owned by the undersigned where the Property is being kept at any reasonable time to inspect or remove the Property, and may advertise and conduct a public auction or private sale thereon provided that such access and sale do not result in any damage to the real estate, or the improvements thereon owned by the undersigned; and

5. Agrees that at the option of the Lender said Property may remain upon (without the Lender being deemed to be taking possession of) the real estate of the undersigned for a period of 45 days after the receipt by the Lender of written notice by the undersigned directing removal at the same terms pursuant to the Agreement, without incurring any other obligations of the Company: and

6. Agrees that the undersigned will give the Lender at least ten (10) business days written notice prior to any cancellation or termination of the Agreement and will provide the Lender the opportunity to cure any default; and

7. Agrees that this Certificate and Consent shall be binding upon and inure to the benefit of the Lender's and the undersigned's successors and assigns.

Dated: __07/01/2024__

By _____

Its __Owner_____

**EXHIBIT E**

# 2023 TAX RETURN FILING INSTRUCTIONS
### U.S. CORPORATION INCOME TAX RETURN

## FOR THE YEAR ENDING
### DECEMBER 31, 2023

---

**PREPARED FOR:**

PURE PRAIRIE POULTRY, INC
68808 FORT RD
FAIRFAX, MN  55332

---

**PREPARED BY:**

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201

---

**TO BE SIGNED AND DATED BY:**

THE APPROPRIATE CORPORATE OFFICER(S).

---

**AMOUNT OF TAX:**

| | | |
|---|---|---|
| TOTAL TAX | $ | 0 |
| LESS: PAYMENTS AND CREDITS | $ | 0 |
| PLUS: INTEREST AND PENALTIES | $ | 0 |
| NO PAYMENT REQUIRED | $ | |

---

**OVERPAYMENT:**

NOT APPLICABLE

---

**MAKE CHECK PAYABLE TO:**

NOT APPLICABLE

---

**MAIL TAX RETURN AND CHECK (IF APPLICABLE) TO:**

THIS RETURN HAS BEEN PREPARED FOR ELECTRONIC FILING.  TO HAVE IT
TRANSMITTED ELECTRONICALLY TO THE IRS, PLEASE SIGN, DATE, AND
RETURN FORM 8879-CORP TO OUR OFFICE VIA FROST PORTAL, FAX TO
(501)975-0126, OR EMAIL TO EFILE@FROSTPLLC.COM. WE WILL THEN SUBMIT
YOUR ELECTRONIC RETURN.

---

**RETURN MUST BE MAILED ON OR BEFORE:**

RETURN FEDERAL FORM 8879-CORP TO US BY OCTOBER 15, 2024.

---

**SPECIAL INSTRUCTIONS:**

Form **8879-CORP**

(December 2022)

Department of the Treasury
Internal Revenue Service

# E-file Authorization for Corporations

For calendar year 2023, or tax year beginning _____ , 2023, ending _____ , 20 _____

**Do not send to the IRS. Keep for your records.**
**Go to www.irs.gov/Form8879CORP for the latest information.**

OMB No. 1545-0123

| Name of corporation | Employer identification number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

| Part I | Information (Whole dollars only) | | |
|---|---|---|---|
| **1** Total income (Form 1120, line 11) | | **1** | −19,303,680. |
| **2** Total income (Form 1120-F, Section II, line 11) | | **2** | |
| **3** Total income (loss) (Form 1120-S, line 6) | | **3** | |

**Part II**    **Declaration and Signature Authorization of Officer. Be sure to get a copy of the corporation's return.**

Under penalties of perjury, I declare that I am an officer of the above corporation and that I have examined a copy of the corporation's electronic income tax return and accompanying schedules and statements and to the best of my knowledge and belief, they are true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the corporation's electronic income tax return. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the corporation's return to the IRS and to receive from the IRS **(a)** an acknowledgment of receipt or reason for rejection of the transmission, **(b)** the reason for any delay in processing the return or refund, and **(c)** the date of any refund. If applicable, I authorize the U.S. Treasury and its designated Financial Agent to initiate an electronic funds withdrawal (direct debit) entry to the financial institution account indicated in the tax preparation software for payment of the corporation's federal taxes owed on this return, and the financial institution to debit the entry to this account. To revoke a payment, I must contact the U.S. Treasury Financial Agent at **1-888-353-4537** no later than 2 business days prior to the payment (settlement) date. I also authorize the financial institutions involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. I have selected a personal identification number (PIN) as my signature for the corporation's electronic income tax return and, if applicable, the corporation's consent to electronic funds withdrawal.

**Officer's PIN: check one box only**

[X] I authorize **FROST, PLLC** _____ to enter my PIN | 85133 |
                 **ERO firm name**                                                                    **do not enter all zeros**
as my signature on the corporation's electronically filed income tax return.

[ ] As an officer of the corporation, I will enter my PIN as my signature on the corporation's electronically filed income tax return.

Officer's signature _____   Date _____   Title **CFO** _____

**Part III**    **Certification and Authentication**

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN. | 71279980288 |
                                                                                                                                                      **do not enter all zeros**

I certify that the above numeric entry is my PIN, which is my signature on the electronically filed income tax return for the corporation indicated above. I confirm that I am submitting this return in accordance with the requirements of **Pub. 3112,** IRS *e-file* Application and Participation, and **Pub. 4163,** Modernized e-File (MeF) Information for Authorized IRS *e-file* Providers for Business Returns.

ERO's signature **FROST, PLLC** _____   Date **07/02/24**

**ERO Must Retain This Form - See Instructions**
**Do Not Submit This Form to the IRS Unless Requested To Do So**

**For Paperwork Reduction Act Notice, see instructions.**

LHA

Form **8879-CORP** (12-2022)

310211 04-01-23

10440702 787737 51010.00                                   2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Form **1120**

## U.S. Corporation Income Tax Return

Department of the Treasury
Internal Revenue Service

For calendar year 2023 or tax year beginning _____, ending _____

Go to www.irs.gov/Form1120 for instructions and the latest information.

OMB No. 1545-0123

**2023**

**A** Check if:
1a Consolidated return (attach Form 851) ☐
b Life/nonlife consolidated return ☐
2 Personal holding co. (attach Sch. PH) ☐
3 Personal service corp. (see instructions) ☐
4 Schedule M-3 attached ☒

TYPE OR PRINT

Name **PURE PRAIRIE POULTRY, INC**

Number, street, and room or suite no. If a P.O. box, see instructions.
**68808 FORT RD**

City or town, state or province, country, and ZIP or foreign postal code
**FAIRFAX, MN  55332**

**B** Employer identification number
**84-2185133**

**C** Date incorporated
**06/24/2019**

**D** Total assets (see instructions)
$ **69,168,476.**

**E** Check if: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☐ Address change

### Income

| | | | |
|---|---|---|---|
| **1a** Gross receipts or sales | 1a | 19,257,475. | |
| **b** Returns and allowances | 1b | | |
| **c** Balance. Subtract line 1b from line 1a | | 1c | 19,257,475. |
| **2** Cost of goods sold (attach Form 1125-A) | | 2 | 41,542,980. |
| **3** Gross profit. Subtract line 2 from line 1c | | 3 | -22,285,505. |
| **4** Dividends and inclusions (Schedule C, line 23) | | 4 | |
| **5** Interest                        SEE STATEMENT 1 | | 5 | 4,150. |
| **6** Gross rents | | 6 | |
| **7** Gross royalties | | 7 | |
| **8** Capital gain net income (attach Schedule D (Form 1120)) | | 8 | 7,432. |
| **9** Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | | 9 | 55,372. |
| **10** Other income (attach statement)     SEE STATEMENT 2 | | 10 | 2,914,871. |
| **11** Total income. Add lines 3 through 10 | | 11 | -19,303,680. |

### Deductions (See instructions for limitations on deductions.)

| | | | |
|---|---|---|---|
| **12** Compensation of officers (attach Form 1125-E) | | 12 | |
| **13** Salaries and wages (less employment credits) | | 13 | 1,084,230. |
| **14** Repairs and maintenance | | 14 | 598,671. |
| **15** Bad debts | | 15 | |
| **16** Rents | | 16 | 218,936. |
| **17** Taxes and licenses            SEE STATEMENT 3 | | 17 | 46,513. |
| **18** Interest (see instructions) | | 18 | 2,876,270. |
| **19** Charitable contributions   SEE STATEMENT 4  AND  SEE STATEMENT 5 | | 19 | 0. |
| **20** Depreciation from Form 4562 not claimed on Form 1125-A or elsewhere on return (attach Form 4562) | | 20 | |
| **21** Depletion | | 21 | |
| **22** Advertising | | 22 | 77,778. |
| **23** Pension, profit-sharing, etc., plans | | 23 | |
| **24** Employee benefit programs | | 24 | 1,539,312. |
| **25** Energy efficient commercial buildings deduction (attach Form 7205) | | 25 | |
| **26** Other deductions (attach statement)      SEE STATEMENT 6 | | 26 | 6,787,910. |
| **27** Total deductions. Add lines 12 through 26 | | 27 | 13,229,620. |
| **28** Taxable income before net operating loss deduction and special deductions. Subtract line 27 from line 11 | | 28 | -32,533,300. |
| **29a** Net operating loss deduction (see instructions)    STATEMENT 7 | 29a | 0. | |
| **b** Special deductions (Schedule C, line 24) | 29b | | |
| **c** Add lines 29a and 29b | | 29c | |

### Tax, Refundable Credits, and Payments

| | | | |
|---|---|---|---|
| **30** Taxable income. Subtract line 29c from line 28. See instructions | | 30 | -32,533,300. |
| **31** Total tax (Schedule J, Part I, line 11) | | 31 | 0. |
| **32** Reserved for future use | | 32 | |
| **33** Total payments and credits (Schedule J, Part III, line 23) | | 33 | |
| **34** Estimated tax penalty. See instructions. Check if Form 2220 is attached ☐ | | 34 | |
| **35** Amount owed. If line 33 is smaller than the total of lines 31 and 34, enter amount owed | | 35 | 0. |
| **36** Overpayment. If line 33 is larger than the total of lines 31 and 34, enter amount overpaid | | 36 | |
| **37** Enter amount from line 36 you want: Credited to 2024 estimated tax _____ Refunded | | 37 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _____ Date _____

Title **CFO**

May the IRS discuss this return with the preparer shown below? ☒ Yes ☐ No

**Paid Preparer Use Only**

| | | | | |
|---|---|---|---|---|
| Print/Type preparer's name | Preparer's signature | Date | Check ☐ if self-employed | PTIN |
| DUSTIN JOHNSON | DUSTIN JOHNSON | 07/02/24 | | P01751438 |
| Firm's name **FROST, PLLC** | | | Firm's EIN | 71-0817652 |
| Firm's address **425 WEST CAPITOL, SUITE 3300 LITTLE ROCK, AR 72201** | | | Phone no. **(501)376-9241** | |

311601
12-26-23   LHA   **For Paperwork Reduction Act Notice, see separate instructions.**

Form **1120** (2023)

1

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Form **7004**

(Rev. December 2018)

Department of the Treasury
Internal Revenue Service

## Application for Automatic Extension of Time To File Certain
## Business Income Tax, Information, and Other Returns

▶ **File a separate application for each return.**

▶ **Go to www.irs.gov/Form7004 for instructions and the latest information.**

OMB No. 1545-0233

| | Name | Identifying number |
|---|---|---|
| **Print** | PURE PRAIRIE POULTRY, INC | 84-2185133 |
| **or** | Number, street, and room or suite no. (If P.O. box, see instructions.) | |
| **Type** | 68808 FORT RD | |
| | City, town, state, and ZIP code (If a foreign address, enter city, province or state, and country (follow the country's practice for entering postal code).) | |
| | FAIRFAX, MN  55332 | |

**Note:** File request for extension by the due date of the return. See instructions before completing this form.

### Part I   Automatic Extension for Certain Business Income Tax, Information, and Other Returns.   See instructions.

**1**   Enter the form code for the return listed below that this application is for ............  **12**

| Application Is For: | Form Code | Application Is For: | Form Code |
|---|---|---|---|
| Form 706-GS(D) | 01 | Form 1120-ND (section 4951 taxes) | 20 |
| Form 706-GS(T) | 02 | Form 1120-PC | 21 |
| Form 1041 (bankruptcy estate only) | 03 | Form 1120-POL | 22 |
| Form 1041 (estate other than a bankruptcy estate) | 04 | Form 1120-REIT | 23 |
| Form 1041 (trust) | 05 | Form 1120-RIC | 24 |
| Form 1041-N | 06 | Form 1120S | 25 |
| Form 1041-QFT | 07 | Form 1120-SF | 26 |
| Form 1042 | 08 | Form 3520-A | 27 |
| Form 1065 | 09 | Form 8612 | 28 |
| Form 1066 | 11 | Form 8613 | 29 |
| Form 1120 | 12 | Form 8725 | 30 |
| Form 1120-C | 34 | Form 8804 | 31 |
| Form 1120-F | 15 | Form 8831 | 32 |
| Form 1120-FSC | 16 | Form 8876 | 33 |
| Form 1120-H | 17 | Form 8924 | 35 |
| Form 1120-L | 18 | Form 8928 | 36 |
| Form 1120-ND | 19 | | |

### Part II   All Filers Must Complete This Part

**2**   If the organization is a foreign corporation that does not have an office or place of business in the United States,

check here .................................................................................................  ▶ ☐

**3**   If the organization is a corporation and is the common parent of a group that intends to file a consolidated return,

check here .................................................................................................  ▶ ☐

If checked, attach a statement listing the name, address, and employer identification number (EIN) for each member
covered by this application.

**4**   If the organization is a corporation or partnership that qualifies under Regulations section 1.6081-5, check here ................  ▶ ☐

**5a**  The application is for calendar year  2023 , or tax year beginning _____ , and ending _____

**b**  **Short tax year.** If this tax year is less than 12 months, check the reason:  ☐ Initial return   ☐ Final return

☐ Change in accounting period   ☐ Consolidated return to be filed   ☐ Other (See instructions - attach explanation.)

| | | | |
|---|---|---|---|
| **6** | Tentative total tax ............................................................ | **6** | 0. |
| **7** | **Total** payments and credits. See instructions .................................... | **7** | 0. |
| **8** | **Balance due.** Subtract line 7 from line 6. See instructions ........................ | **8** | 0. |

**LHA**   **For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.**   Form **7004** (Rev. 12-2018)

DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE CENTER
OGDEN, UT 84201-0045

319741  04-01-23

Form 1120 (2023)   **PURE PRAIRIE POULTRY, INC**                    84-2185133  Page **2**

| **Schedule C** | **Dividends, Inclusions, and Special Deductions** (see instructions) | **(a)** Dividends and inclusions | **(b)** % | **(c)** Special deductions **(a)** x **(b)** |
|---|---|---|---|---|
| 1 | Dividends from less-than-20%-owned domestic corporations (other than debt-financed stock) | | 50 | |
| 2 | Dividends from 20%-or-more-owned domestic corporations (other than debt-financed stock) | | 65 | |
| 3 | Dividends on certain debt-financed stock of domestic and foreign corporations | | See Instructions | |
| 4 | Dividends on certain preferred stock of less-than-20%-owned public utilities | | 23.3 | |
| 5 | Dividends on certain preferred stock of 20%-or-more-owned public utilities | | 26.7 | |
| 6 | Dividends from less-than-20%-owned foreign corporations and certain FSCs | | 50 | |
| 7 | Dividends from 20%-or-more-owned foreign corporations and certain FSCs | | 65 | |
| 8 | Dividends from wholly owned foreign subsidiaries | | 100 | |
| 9 | **Subtotal.** Add lines 1 through 8 | | See Instructions | |
| 10 | Dividends from domestic corporations received by a small business investment company operating under the Small Business Investment Act of 1958 | | 100 | |
| 11 | Dividends from affiliated group members | | 100 | |
| 12 | Dividends from certain FSCs | | 100 | |
| 13 | Foreign-source portion of dividends received from a specified 10%-owned foreign corporation (excluding hybrid dividends) (see instructions) | | 100 | |
| 14 | Dividends from foreign corporations not included on line 3, 6, 7, 8, 11, 12, or 13 (including any hybrid dividends) | | | |
| 15 | Reserved for future use | | | |
| 16a | Subpart F inclusions derived from the sale by a controlled foreign corporation (CFC) of the stock of a lower-tier foreign corporation treated as a dividend (attach Form(s) 5471) (see instructions) | | 100 | |
| b | Subpart F inclusions derived from hybrid dividends of tiered corporations (attach Form(s) 5471) (see instructions) | | | |
| c | Other inclusions from CFCs under subpart F not included on line 16a, 16b, or 17 (attach Form(s) 5471) (see instructions) | | | |
| 17 | Global Intangible Low-Taxed Income (GILTI) (attach Form(s) 5471 and Form 8992) | | | |
| 18 | Gross-up for foreign taxes deemed paid | | | |
| 19 | IC -DISC and former DISC dividends not included on line 1, 2, or 3 | | | |
| 20 | Other dividends | | | |
| 21 | Deduction for dividends paid on certain preferred stock of public utilities | | | |
| 22 | Section 250 deduction (attach Form 8993) | | | |
| 23 | **Total dividends and inclusions.** Add column (a), lines 9 through 20. Enter here and on page 1, line 4 | | | |
| 24 | **Total special deductions.** Add column (c), lines 9 through 22. Enter here and on page 1, line 29b | | | |

Form **1120** (2023)

Form 1120 (2023)  PURE PRAIRIE POULTRY, INC                                      84-2185133    Page **3**

| Schedule J | Tax Computation and Payment (see instructions) |
|---|---|

**Part I - Tax Computation**

| | | | |
|---|---|---|---:|
| 1 | Income tax. See instructions | 1 | 0. |
| 2 | Base erosion minimum tax amount (attach Form 8991) | 2 | |
| 3 | Corporate alternative minimum tax from Form 4626, Part II, line 13 (attach Form 4626) | 3 | |
| 4 | Add lines 1, 2, and 3 | 4 | 0. |
| 5a | Foreign tax credit (attach Form 1118) | 5a | |
| b | Credit from Form 8834 (see instructions) | 5b | |
| c | General business credit (see instructions - attach Form 3800) | 5c | |
| d | Credit for prior year minimum tax (attach Form 8827) | 5d | |
| e | Bond credits from Form 8912 | 5e | |
| 6 | **Total credits.** Add lines 5a through 5e | 6 | |
| 7 | Subtract line 6 from line 4 | 7 | 0. |
| 8 | Personal holding company tax (attach Schedule PH (Form 1120)) | 8 | |
| 9a | Recapture of investment credit (attach Form 4255) | 9a | |
| b | Recapture of low-income housing credit (attach Form 8611) | 9b | |
| c | Interest due under the look-back method-completed long-term contracts (attach Form 8697) | 9c | |
| d | Interest due under the look-back method-income forecast method (attach Form 8866) | 9d | |
| e | Alternative tax on qualifying shipping activities (attach Form 8902) | 9e | |
| f | Interest/tax due under section 453A(c) | 9f | |
| g | Interest/tax due under section 453(l) | 9g | |
| z | Other (see instructions - attach statement) | 9z | |
| 10 | **Total.** Add lines 9a through 9z | 10 | |
| 11 | **Total tax.** Add lines 7, 8, and 10. Enter here and on page 1, line 31 | 11 | 0. |

**Part II - Payments and Refundable Credits**

| | | | |
|---|---|---|---:|
| 12 | Reserved for future use | 12 | |
| 13 | Preceding year's overpayment credited to the current year | 13 | |
| 14 | Current year's estimated tax payments | 14 | |
| 15 | Current year's refund applied for on Form 4466 | 15 | ( ) |
| 16 | Combine lines 13, 14, and 15 | 16 | |
| 17 | Tax deposited with Form 7004 | 17 | |
| 18 | Withholding (see instructions) | 18 | |
| 19 | **Total payments.** Add lines 16, 17, and 18 | 19 | |
| 20 | Refundable credits from: | | |
| a | Form 2439 | 20a | |
| b | Form 4136 | 20b | |
| c | Reserved for future use | 20c | |
| z | Other (attach statement - see instructions) | 20z | |
| 21 | **Total credits.** Add lines 20a through 20z | 21 | |
| 22 | Elective payment election amount from Form 3800 | 22 | |
| 23 | **Total payments and credits.** Add lines 19, 21, and 22. Enter here and on page 1, line 33 | 23 | |

Form **1120** (2023)

311621
12-26-23

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Form 1120 (2023)  **PURE PRAIRIE POULTRY, INC**  84-2185133  Page **4**

| **Schedule K** | **Other Information** (see instructions) | | Yes | No |
|---|---|---|---|---|

**1** Check accounting method: **a** ☐ Cash  **b** ☒ Accrual  **c** ☐ Other (specify) _____

**2** See the instructions and enter the:

**a** Business activity code no. **112300**

**b** Business activity **112300**

**c** Product or service **POULTRY PRODUCTION**

**3** Is the corporation a subsidiary in an affiliated group or a parent-subsidiary controlled group? ........................... | | | | X

If "Yes," enter name and EIN of the parent corporation

_____

**4** At the end of the tax year:

**a** Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part I of Schedule G (Form 1120) (attach Schedule G) | | | | X

**b** Did any individual or estate own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of the corporation's stock entitled to vote? If "Yes," complete Part II of Schedule G (Form 1120) (attach Schedule G) ............ | | | | X

**5** At the end of the tax year, did the corporation:

**a** Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation not included on **Form 851**, Affiliations Schedule? For rules of constructive ownership, see instructions ............... | | | | X

If "Yes," complete (i) through (iv) below.

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**b** Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions ............... | | | | X

If "Yes," complete (i) through (iv) below.

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Country of Organization | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

**6** During this tax year, did the corporation pay dividends (other than stock dividends and distributions in exchange for stock) in excess of the corporation's current and accumulated earnings and profits? See sections 301 and 316 ................................................ | | | | X

If "Yes," file **Form 5452,** Corporate Report of Nondividend Distributions. See the instructions for Form 5452.

If this is a consolidated return, answer here for the parent corporation and on Form 851 for each subsidiary.

**7** At any time during this tax year, did one foreign person own, directly or indirectly, at least 25% of the total voting power of all classes of the corporation's stock entitled to vote or at least 25% of the total value of all classes of the corporation's stock? ................ | | | | X

For rules of attribution, see section 318. If "Yes," enter:

**(a)** Percentage owned _____ and **(b)** Owner's country _____

**(c)** The corporation may have to file **Form 5472,** Information Return of a 25% Foreign-Owned U.S. Corporation or a Foreign Corporation Engaged in a U.S. Trade or Business. Enter the number of Forms 5472 attached _____

**8** Check this box if the corporation issued publicly offered debt instruments with original issue discount ................. ☐

If checked, the corporation may have to file **Form 8281,** Information Return for Publicly Offered Original Issue Discount Instruments.

**9** Enter the amount of tax-exempt interest received or accrued during this tax year  $ _____

**10** Enter the number of shareholders at the end of the tax year (if 100 or fewer) ☐

**11** If the corporation has an NOL for the tax year and is electing to forego the carryback period, check here ................ ☐

If the corporation is filing a consolidated return, the statement required by Regulations section 1.1502-21(b)(3) must be attached or the election will not be valid.

**12** Enter the available NOL carryover from prior tax years (do not reduce it by any deduction reported on page 1, line 29a) ............ $ **16,702,144.**

Form **1120** (2023)

311632
12-26-23

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Form 1120 (2023)　**PURE PRAIRIE POULTRY, INC**　　　84-2185133　Page **5**

| Schedule K | Other Information *(continued from page 4)* | | Yes | No |
|---|---|---|---|---|

| | | | Yes | No |
|---|---|---|---|---|
| 13 | Are the corporation's total receipts (page 1, line 1a, plus lines 4 through 10) for the tax year **and** its total assets at the end of the tax year less than $250,000? | | | X |
| | If "Yes," the corporation is not required to complete Schedules L, M-1, and M-2. Instead, enter the total amount of cash distributions and the book value of property distributions (other than cash) made during this tax year　$ | | | |
| 14 | Is the corporation required to file Schedule UTP (Form 1120), Uncertain Tax Position Statement? See instructions | | | X |
| | If "Yes," complete and attach Schedule UTP. | | | |
| 15a | Did the corporation make any payments that would require it to file Form(s) 1099? | | X | |
| b | If "Yes," did or will the corporation file required Form(s) 1099? | | X | |
| 16 | During this tax year, did the corporation have an 80%-or-more change in ownership, including a change due to redemption of its own stock? | | | X |
| 17 | During or subsequent to this tax year, but before the filing of this return, did the corporation dispose of more than 65% (by value) of its assets in a taxable, non-taxable, or tax deferred transaction? | | | X |
| 18 | Did this corporation receive assets in a section 351 transfer in which any of the transferred assets had a fair market basis or fair market value of more than $1 million? | | | X |
| 19 | During this corporation's tax year, did the corporation make any payments that would require it to file Forms 1042 and 1042-S under chapter 3 (sections 1441 through 1464) or chapter 4 (sections 1471 through 1474) of the Code? | | | X |
| 20 | Is the corporation operating on a cooperative basis? | | | X |
| 21 | During this tax year, did the corporation pay or accrue any interest or royalty for which the deduction is not allowed under section 267A? See instructions | | | X |
| | If "Yes," enter the total amount of the disallowed deductions　$ | | | |
| 22 | Does this corporation have gross receipts of at least $500 million in any of the 3 preceding tax years? (See sections 59A(e)(2) and (3)) | | | X |
| | If "Yes," complete and attach Form 8991. | | | |
| 23 | Did the corporation have an election under section 163(j) for any real property trade or business or any farming business in effect during this tax year? See instructions | | | X |
| 24 | Does the corporation satisfy one or more of the following? If "Yes," complete and attach Form 8990. See instructions | | | X |
| a | The corporation owns a pass-through entity with current, or prior year carryover, excess business interest expense. | | | |
| b | The corporation's aggregate average annual gross receipts (determined under section 448(c)) for the 3 tax years preceding the current tax year are more than $29 million and the corporation has business interest expense. | | | |
| c | The corporation is a tax shelter and the corporation has business interest expense. | | | |
| 25 | Is the corporation attaching Form 8996 to certify as a Qualified Opportunity Fund? | | | X |
| | If "Yes," enter amount from Form 8996, line 15　$ | | | |
| 26 | Since December 22, 2017, did a foreign corporation directly or indirectly acquire substantially all of the properties held directly or indirectly by the corporation, and was the ownership percentage (by vote or value) for purposes of section 7874 greater than 50% (for example, the shareholders held more than 50% of the stock of the foreign corporation)? If "Yes," list the ownership percentage by vote and by value. See instructions | | | X |
| | Percentage: By Vote　　　　　　　　　　By Value | | | |
| 27 | At any time during this tax year, did the corporation (a) receive a digital asset (as a reward, award, or payment for property or services); or (b) sell, exchange, or otherwise dispose of a digital asset (or a financial interest in a digital asset)? See instructions | | | X |
| 28 | Is the corporation a member of a controlled group? | | | X |
| | If "Yes," attach Schedule O (Form 1120). See instructions. | | | |
| 29 | Corporate Alternative Minimum Tax: | | | |
| a | Was the corporation an applicable corporation under section 59(k)(1) in any prior tax year? | | | X |
| | If "Yes," go to question 29b. If "No," skip to question 29c. | | | |
| b | Is the corporation an applicable corporation under section 59(k)(1) in the current tax year because the corporation was an applicable corporation in the prior tax year? | | | |
| | If "Yes," complete and attach Form 4626. If "No," continue to question 29c. | | | |
| c | Does the corporation meet the requirements of the safe harbor method, if provided under section 59(k)(3)(A), for the current tax year? See instructions | | X | |
| | If "No," complete and attach Form 4626. If "Yes," the corporation is not required to file Form 4626. | | | |
| 30 | Is the corporation required to file Form 7208 relating to the excise tax on repurchase of corporate stock (see instructions): | | | |
| a | Under the rules for stock repurchased by a covered corporation (or stock acquired by its specified affiliate)? | | | X |
| b | Under the applicable foreign corporation rules? | | | X |
| c | Under the covered surrogate foreign corporation rules? | | | X |
| | If "Yes" to either (a), (b), or (c), complete Form 7208, Excise Tax on Repurchase of Corporate Stock. See the Instructions for Form 7208. | | | |
| 31 | Is this a consolidated return with gross receipts or sales of $1 billion or more and a subchapter K basis adjustment, as described in the instructions, of $10 million or more? | | | X |
| | If "Yes," attach a statement. See instructions. | | | |

10440702 787737 51010.00　　　　　　2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

## Schedule L — Balance Sheets per Books

| Assets | Beginning of tax year (a) | Beginning of tax year (b) | End of tax year (c) | End of tax year (d) |
|---|---|---|---|---|
| 1 Cash | | 1,945. | | 1,132,475. |
| 2a Trade notes and accounts receivable | 5,129,367. | | 3,838,278. | |
| b Less allowance for bad debts | ( ) | 5,129,367. | ( ) | 3,838,278. |
| 3 Inventories | | 2,791,236. | | 7,803,695. |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (att. stmt.) STMT 8 | | 2,542,213. | | 734,237. |
| 7 Loans to shareholders | | | | |
| 8 Mortgage and real estate loans | | | | |
| 9 Other investments (att. stmt.) | | | | |
| 10a Buildings and other depreciable assets | 18,321,398. | | 22,211,547. | |
| b Less accumulated depreciation | ( 187,191.) | 18,134,207. | ( 2,666,491.) | 19,545,056. |
| 11a Depletable assets | | | | |
| b Less accumulated depletion | ( ) | | ( ) | |
| 12 Land (net of any amortization) | | 201,744. | | 201,744. |
| 13a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | ( ) | | ( ) | |
| 14 Other assets (att. stmt.) STMT 9 | | 279,035. | | 35,912,991. |
| 15 Total assets | | 29,079,747. | | 69,168,476. |
| **Liabilities and Shareholders' Equity** | | | | |
| 16 Accounts payable | | 1,268,433. | | 9,969,278. |
| 17 Mortgages, notes, bonds payable in less than 1 year | | 10,477,167. | | 30,914. |
| 18 Other current liabilities (att. stmt.) STMT 10 | | 7,776,890. | | 13,960,137. |
| 19 Loans from shareholders | | | | |
| 20 Mortgages, notes, bonds payable in 1 year or more | | 3,099,846. | | 61,950,428. |
| 21 Other liabilities (att. stmt.) | | | | |
| 22 Capital stock: a Preferred stock | | | | |
| b Common stock | 389,987. | 389,987. | 392,957. | 392,957. |
| 23 Additional paid-in capital | | 7,191,675. | | 7,347,958. |
| 24 Retained earnings - Appropriated (attach statement) | | | | |
| 25 Retained earnings - Unappropriated | | -1,124,251. | | -24,483,196. |
| 26 Adjustments to shareholders' equity (attach statement) | | | | |
| 27 Less cost of treasury stock | | ( ) | | ( ) |
| 28 Total liabilities and shareholders' equity | | 29,079,747. | | 69,168,476. |

## Schedule M-1 — Reconciliation of Income (Loss) per Books With Income per Return

**Note:** The corporation may be required to file Schedule M-3. See instructions.

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | | 7 Income recorded on books this year not included on this return (itemize): | | |
| 2 Federal income tax per books | | Tax-exempt interest    $ _____ | | |
| 3 Excess of capital losses over capital gains | | | | |
| 4 Income subject to tax not recorded on books this year (itemize): _____ | | | | |
| | | 8 Deductions on this return not charged against book income this year (itemize): | | |
| 5 Expenses recorded on books this year not deducted on this return (itemize): | | a Depreciation .... $ _____ | | |
| a Depreciation    $ _____ | | b Charitable contributions .... $ _____ | | |
| b Charitable contributions    $ _____ | | | | |
| c Travel and entertainment    $ _____ | | | | |
| | | 9 Add lines 7 and 8 | | |
| 6 Add lines 1 through 5 | | 10 Income (page 1, line 28) - line 6 less line 9 | | |

## Schedule M-2 — Analysis of Unappropriated Retained Earnings per Books (Schedule L, Line 25)

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | -1,124,251. | 5 Distributions: a Cash | | |
| 2 Net income (loss) per books | -23,358,945. | b Stock | | |
| 3 Other increases (itemize): _____ | | c Property | | |
| | | 6 Other decreases (itemize): _____ | | |
| | | 7 Add lines 5 and 6 | | |
| 4 Add lines 1, 2, and 3 | -24,483,196. | 8 Balance at end of year (line 4 less line 7) | | -24,483,196. |

10440702 787737 51010.00                          2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

**SCHEDULE D**
**(Form 1120)**

Department of the Treasury
Internal Revenue Service

**Capital Gains and Losses**

Attach to Form 1120, 1120-C, 1120-F, 1120-FSC, 1120-H, 1120-IC-DISC, 1120-L, 1120-ND, 1120-PC, 1120-POL, 1120-REIT, 1120-RIC, 1120-SF, or certain Forms 990-T.

Go to www.irs.gov/Form1120 for instructions and the latest information.

OMB No. 1545-0123

**2023**

| Name | Employer identification number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

Did the corporation dispose of any investment(s) in a qualified opportunity fund during the tax year? ........................... ☐ Yes ☒ No

If "Yes," attach Form 8949 and see its instructions for additional requirements for reporting your gain or loss.

## Part I  Short-Term Capital Gains and Losses - Assets Held One Year or Less

See instructions for how to figure the amounts to enter on the lines below.

This form may be easier to complete if you round off cents to whole dollars.

| | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part I, line 2, column (g) | (h) Gain or (loss) Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **1a** Totals for all short-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 1b .................. | | | | |
| **1b** Totals for all transactions reported on Form(s) 8949 with **Box A** checked | | | | |
| **2** Totals for all transactions reported on Form(s) 8949 with **Box B** checked | | | | |
| **3** Totals for all transactions reported on Form(s) 8949 with **Box C** checked | | | | |

| | | |
|---|---|---|
| **4** Short-term capital gain from installment sales from Form 6252, line 26 or 37 ................. | **4** | |
| **5** Short-term capital gain or (loss) from like-kind exchanges from Form 8824 ................. | **5** | |
| **6** Unused capital loss carryover (attach computation) ................. | **6** | ( ) |
| **7** Net short-term capital gain or (loss). Combine lines 1a through 6 in column h ................. | **7** | |

## Part II  Long-Term Capital Gains and Losses - Assets Held More Than One Year

See instructions for how to figure the amounts to enter on the lines below.

This form may be easier to complete if you round off cents to whole dollars.

| | (d) Proceeds (sales price) | (e) Cost (or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part II, line 2, column (g) | (h) Gain or (loss) Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **8a** Totals for all long-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 8b .................. | | | | |
| **8b** Totals for all transactions reported on Form(s) 8949 with **Box D** checked | | | | |
| **9** Totals for all transactions reported on Form(s) 8949 with **Box E** checked | | | | |
| **10** Totals for all transactions reported on Form(s) 8949 with **Box F** checked | | | | |

| | | |
|---|---|---|
| **11** Enter gain from Form 4797, line 7 or 9 | **11** | 7,432. |
| **12** Long-term capital gain from installment sales from Form 6252, line 26 or 37 ................. | **12** | |
| **13** Long-term capital gain or (loss) from like-kind exchanges from Form 8824 ................. | **13** | |
| **14** Capital gain distributions ................. | **14** | |
| **15** Net long-term capital gain or (loss). Combine lines 8a through 14 in column h ................. | **15** | 7,432. |

## Part III  Summary of Parts I and II

| | | |
|---|---|---|
| **16** Enter excess of net short-term capital gain (line 7) over net long-term capital loss (line 15) ................. | **16** | |
| **17** Net capital gain. Enter excess of net long-term capital gain (line 15) over net short-term capital loss (line 7) ................. | **17** | 7,432. |
| **18** Add lines 16 and 17. Enter here and on Form 1120, page 1, line 8, or the applicable line on other returns ................. | **18** | 7,432. |

**Note:** If losses exceed gains, see *Capital Losses* in the instructions.

LHA    **For Paperwork Reduction Act Notice, see the Instructions for Form 1120.**    Schedule D (Form 1120) 2023

321051
12-26-23

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Form **1125-A**

(Rev. November 2018)

Department of the Treasury
Internal Revenue Service

# Cost of Goods Sold

▶ Attach to Form 1120, 1120-C, 1120-F, 1120S, or 1065.

▶ Go to www.irs.gov/Form1125A for the latest information.

OMB No. 1545-0123

| Name | Employer Identification number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

| | | |
|---|---|---|
| 1 Inventory at beginning of year | 1 | 2,791,236. |
| 2 Purchases | 2 | 24,497,061. |
| 3 Cost of labor | 3 | 5,900,168. |
| 4 Additional section 263A costs (attach schedule) | 4 | |
| 5 Other costs (attach schedule)        SEE STATEMENT 11 | 5 | 16,158,210. |
| 6 **Total.** Add lines 1 through 5 | 6 | 49,346,675. |
| 7 Inventory at end of year | 7 | 7,803,695. |
| 8 **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on Form 1120, page 1, line 2 or the appropriate line of your tax return. See instructions | 8 | 41,542,980. |

**9 a** Check all methods used for valuing closing inventory:

(i) [X] Cost

(ii) [ ] Lower of cost or market

(iii) [ ] Other (Specify method used and attach explanation) ▶ _____

**b** Check if there was a writedown of subnormal goods _____ ▶ [ ]

**c** Check if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) _____ ▶ [ ]

**d** If the LIFO inventory method was used for this tax year, enter amount of closing inventory computed
under LIFO | **9d** | |

**e** If property is produced or acquired for resale, do the rules of Section 263A apply to the entity? See instructions _____ [ ] Yes [X] No

**f** Was there any change in determining quantities, cost, or valuations between opening and closing inventory? _____ [ ] Yes [X] No
If "Yes," attach explanation.

**For Paperwork Reduction Act Notice, see separate instructions.**

Form **1125-A** (Rev. 11-2018)

324441
04-01-23     LHA

8

**SCHEDULE B**
**(Form 1120)**

(Rev. December 2018)
Department of the Treasury
Internal Revenue Service

# Additional Information for
# Schedule M-3 Filers

▶ **Attach to Form 1120.**

▶ Go to www.irs.gov/Form1120 for the latest information.

OMB No. 1545-0123

| Name | Employer identification number (EIN) |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

| | | Yes | No |
|---|---|---|---|
| 1 | Does any amount reported on Schedule M-3 (Form 1120), Part II, line 9 or 10, column (d), reflect allocations to this corporation from a partnership of income, gain, loss, deduction, or credit that are disproportionate to this corporation's capital contribution to the partnership or its ratio for sharing other items of the partnership? | | X |
| 2 | At any time during the tax year, did the corporation sell, exchange, or transfer any interest in an intangible asset to a related person as defined in section 267(b)? | | X |
| 3 | At any time during the tax year, did the corporation acquire any interest in an intangible asset from a related person as defined in section 267(b)? | | X |
| 4a | During the tax year, did the corporation enter into a cost-sharing arrangement with any related foreign party on whose behalf the corporation did not file Form 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations? | | X |
| b | At any time during the tax year, was the corporation a participant in a cost-sharing arrangement with any related foreign party on whose behalf the corporation did not file Form 5471? | | X |
| 5 | At any time during the tax year, did the corporation make any change in accounting principle for financial accounting purposes? See instructions for the definition of "change in accounting principle" | | X |
| 6 | At any time during the tax year, did the corporation make any change in a method of accounting for U.S. income tax purposes? | | X |
| 7 | At any time during the tax year, did the corporation own any voluntary employees' beneficiary association (VEBA) trusts that were used to hold funds designated for employee benefits? | | X |
| 8 | At any time during the tax year, did the corporation use an allocation method for indirect costs capitalized to self-constructed assets that varied from its financial method of accounting? | | X |
| 9 | At any time during the tax year, did the corporation treat for tax purposes indirect costs, as defined in Regulations sections 1.263A-1(e)(3)(ii)(F), (G), and (H), as mixed-service costs, as defined in Regulations section 1.263A-1(e)(4)(ii)(C)? | | X |
| 10 | Did the corporation, under section 118 and 362(c) and the related regulations, take a return filing position characterizing any amount as a contribution to the capital of the corporation during the tax year by any nonshareholders? Amounts so characterized may include, without limitation, incentives, inducements, money, and property | | X |

**For Paperwork Reduction Act Notice, see the Instructions for Form 1120.**
**Schedule B (Form 1120) (Rev. 12-2018)**

313731 04-01-23    LHA

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

**SCHEDULE M-3**
**(Form 1120)**
(Rev. December 2019)

Department of the Treasury
Internal Revenue Service

# Net Income (Loss) Reconciliation for Corporations With Total Assets of $10 Million or More

OMB No. 1545-0123

▶ **Attach to Form 1120 or 1120-C.**
▶ **Go to www.irs.gov/Form1120 for instructions and the latest information.**

| Name of corporation (common parent, if consolidated return) | Employer identification number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

Check applicable box(es): (1) [X] Non-consolidated return  (2) [ ] Consolidated return (Form 1120 only)
(3) [ ] Mixed 1120/L/PC group  (4) [ ] Dormant subsidiaries schedule attached

---

**Part I**     **Financial Information and Net Income (Loss) Reconciliation** (see instructions)

**1a** Did the corporation file SEC Form 10-K for its income statement period ending with or within this tax year?
  [ ] **Yes.** Skip lines 1b and 1c and complete lines 2a through 11 with respect to that SEC Form 10-K.
  [X] **No.** Go to line 1b. See instructions if multiple non-tax-basis income statements are prepared.
  **b** Did the corporation prepare a certified audited non-tax-basis income statement for that period?
  [X] **Yes.** Skip line 1c and complete lines 2a through 11 with respect to that income statement.
  [ ] **No.** Go to line 1c.
  **c** Did the corporation prepare a non-tax-basis income statement for that period?
  [ ] **Yes.** Complete lines 2a through 11 with respect to that income statement.
  [ ] **No.** Skip lines 2a through 3c and enter the corporation's net income (loss) per its books and records on line 4a.

**2a** Enter the income statement period:  Beginning 01/01/2023   Ending 12/31/2023
  **b** Has the corporation's income statement been restated for the income statement period on line 2a?
  [ ] **Yes.** (If "Yes," attach an explanation and the amount of each item restated.)
  [X] **No.**
  **c** Has the corporation's income statement been restated for any of the five income statement periods immediately preceding the period on line 2a?
  [ ] **Yes.** (If "Yes," attach an explanation and the amount of each item restated.)
  [X] **No.**

**3a** Is any of the corporation's voting common stock publicly traded?
  [ ] **Yes.**
  [X] **No.** If "No," go to line 4a.
  **b** Enter the symbol of the corporation's primary U.S. publicly traded voting common stock
  **c** Enter the nine-digit CUSIP number of the corporation's primary publicly traded voting common stock

---

| | | |
|---|---|---|
| **4a** Worldwide consolidated net income (loss) from income statement source identified in Part I, line 1 | **4a** | -23,358,945. |
| **b** Indicate accounting standard used for line 4a (see instructions): (1) [X] GAAP (2) [ ] IFRS (3) [ ] Statutory (4) [ ] Tax-basis (5) [ ] Other (specify) | | |
| **5a** Net income from nonincludible foreign entities (attach statement) | **5a** | ( ) |
| **b** Net loss from nonincludible foreign entities (attach statement and enter as a positive amount) | **5b** | |
| **6a** Net income from nonincludible U.S. entities (attach statement) | **6a** | ( ) |
| **b** Net loss from nonincludible U.S. entities (attach statement and enter as a positive amount) | **6b** | |
| **7a** Net income (loss) of other includible foreign disregarded entities (attach statement) | **7a** | |
| **b** Net income (loss) of other includible U.S. disregarded entities (attach statement) | **7b** | |
| **c** Net income (loss) of other includible entities (attach statement) | **7c** | |
| **8** Adjustment to eliminations of transactions between includible entities and nonincludible entities (attach stmt.) | **8** | |
| **9** Adjustment to reconcile income statement period to tax year (attach statement) | **9** | |
| **10a** Intercompany dividend adjustments to reconcile to line 11 (attach statement) | **10a** | |
| **b** Other statutory accounting adjustments to reconcile to line 11 (attach statement) | **10b** | |
| **c** Other adjustments to reconcile to amount on line 11 (attach statement) | **10c** | |
| **11** **Net income (loss) per income statement of includible corporations.** Combine lines 4 through 10 | **11** | -23,358,945. |

**Note:** Part I, line 11, must equal Part II, line 30, column (a), or Schedule M-1, line 1 (see instructions).

**12** Enter the total amount (not just the corporation's share) of the assets and liabilities of all entities included or removed on the following lines.

| | Total Assets | Total Liabilities |
|---|---|---|
| **a** Included on Part I, line 4 ▶ | 69,168,476. | 85,910,757. |
| **b** Removed on Part I, line 5 ▶ | | |
| **c** Removed on Part I, line 6 ▶ | | |
| **d** Included on Part I, line 7 ▶ | | |

LHA   **For Paperwork Reduction Act Notice, see the Instructions for Form 1120.**   Schedule M-3 (Form 1120) (Rev. 12-2019)

313321  04-01-23

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Schedule M-3 (Form 1120) (Rev. 12-2019)

**Page 2**

| Name of corporation (common parent, if consolidated return) | Employer identification number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

Check applicable box(es): **(1)** ☐ Consolidated group  **(2)** ☐ Parent corp  **(3)** ☐ Consolidated eliminations  **(4)** ☐ Subsidiary corp  **(5)** ☐ Mixed 1120/L/PC group

Check if a sub-consolidated: **(6)** ☐ 1120 group  **(7)** ☐ 1120 eliminations

| Name of subsidiary (if consolidated return) | Employer identification number |
|---|---|
| | |

**Part II**  **Reconciliation of Net Income (Loss) per Income Statement of Includible Corporations With Taxable Income per Return** (see instructions)

| Income (Loss) Items (Attach statements for lines 1 through 12) | (a) Income (Loss) per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Income (Loss) per Tax Return |
|---|---|---|---|---|
| 1 Income (loss) from equity method foreign corporations | | | | |
| 2 Gross foreign dividends not previously taxed | | | | |
| 3 Subpart F, QEF, and similar inc inclusions | | | | |
| 4 Gross-up for foreign taxes deemed paid | | | | |
| 5 Gross foreign distributions previously taxed | | | | |
| 6 Income (loss) from equity method U.S. corporations | | | | |
| 7 U.S. dividends not eliminated in tax consolidation | | | | |
| 8 Minority interest for includible corporations | | | | |
| 9 Income (loss) from U.S. partnerships | | | | |
| 10 Income (loss) from foreign partnerships | | | | |
| 11 Income (loss) from other pass-through entities | | | | |
| 12 Items relating to reportable transactions | | | | |
| 13 Interest income (see instructions) | 4,150. | | | 4,150. |
| 14 Total accrual to cash adjustment | | | | |
| 15 Hedging transactions | | | | |
| 16 Mark-to-market income (loss) | | | | |
| 17 Cost of goods sold (see instructions) | (40,734,450.) | -808,530. | | (41,542,980.) |
| 18 Sale versus lease (for sellers and/or lessors) | | | | |
| 19 Section 481(a) adjustments | | | | |
| 20 Unearned/deferred revenue | | | | |
| 21 Income recognition from long-term contracts | | | | |
| 22 Original issue discount and other imputed interest | | | | |
| 23a Income statement gain/loss on sale, exchange, abandonment, worthlessness, or other disposition of assets other than inventory and pass-through entities | 24,514. | -24,514. | | |
| b Gross capital gains from Schedule D, excluding amounts from pass-through entities | | | | |
| c Gross capital losses from Schedule D, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | | | |
| d Net gain/loss reported on Form 4797, line 17, excluding amounts from pass-through entities, abandonment losses, and worthless stock losses | | 55,372. | | 55,372. |
| e Abandonment losses | | | | |
| f Worthless stock losses (attach stmt.) | | | | |
| g Other gain/loss on disposition of assets other than inventory | | 7,432. | | 7,432. |
| 24 Capital loss limitation and carryforward used | | | | |
| 25 Other income (loss) items with differences (attach stmt.) | | | | |
| 26 Total income (loss) items. Combine lines 1 through 25 | -40,705,786. | -770,240. | | -41,476,026. |
| 27 Total expense/deduction items (from Part III, line 39) | 4,425,202. | -8,422,528. | 18,413. | -3,978,913. |
| 28 Other items with no differences     STMT 12 | 12,921,639. | | | 12,921,639. |
| 29a Mixed groups, see instructions. All others, combine lines 26 through 28 | -23,358,945. | -9,192,768. | 18,413. | -32,533,300. |
| b PC insurance subgroup reconciliation totals | | | | |
| c Life insurance subgroup reconciliation totals | | | | |
| 30 Reconciliation totals. Combine lines 29a through 29c | -23,358,945. | -9,192,768. | 18,413. | -32,533,300. |

**Note:** Line 30, column (a), must equal Part I, line 11, and column (d) must equal Form 1120, page 1, line 28.

313322
04-01-23

**Schedule M-3 (Form 1120) (Rev. 12-2019)**

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Schedule M-3 (Form 1120) (Rev. 12-2019)                                                                 Page **3**

| Name of corporation (common parent, if consolidated return) | Employer identification number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

Check applicable box(es): **(1)** ☐ Consolidated group  **(2)** ☐ Parent corp  **(3)** ☐ Consolidated eliminations  **(4)** ☐ Subsidiary corp  **(5)** ☐ Mixed 1120/L/PC group

Check if a sub-consolidated: **(6)** ☐ 1120 group  **(7)** ☐ 1120 eliminations

| Name of subsidiary (if consolidated return) | Employer identification number |
|---|---|
|  |  |

**Part III**  **Reconciliation of Net Income (Loss) per Income Statement of Includible Corporations With Taxable Income per Return - Expense/Deduction Items** (see instructions)

| Expense/Deduction Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|
| 1 U.S. current income tax expense | | | | |
| 2 U.S. deferred income tax expense | -8,590,851. | 8,590,851. | | |
| 3 State and local current income tax expense | | | | |
| 4 State and local deferred income tax expense | | | | |
| 5 Foreign current income tax expense (other than foreign withholding taxes) | | | | |
| 6 Foreign deferred income tax expense | | | | |
| 7 Foreign withholding taxes | | | | |
| 8 Interest expense (see instructions) | 2,876,270. | | | 2,876,270. |
| 9 Stock option expense | | | | |
| 10 Other equity-based compensation | | | | |
| 11 Meals and entertainment                STMT 14 | 36,826. | | -18,413. | 18,413. |
| 12 Fines and penalties | | | | |
| 13 Judgments, damages, awards, and similar costs | | | | |
| 14 Parachute payments | | | | |
| 15 Compensation with section 162(m) limitation | | | | |
| 16 Pension and profit-sharing | | | | |
| 17 Other post-retirement benefits | | | | |
| 18 Deferred compensation | | | | |
| 19 Charitable contribution of cash and tangible property                STMT 15 | 400. | | | 400. |
| 20 Charitable contribution of intangible property | | | | |
| 21 Charitable contribution limitation/carryforward | | -400. | | -400. |
| 22 Domestic production activities deduction (see instrs.) | | | | |
| 23 Current year acquisition or reorganization investment banking fees | | | | |
| 24 Current year acquisition or reorganization legal and accounting fees | | | | |
| 25 Current year acquisition/ reorganization other costs | | | | |
| 26 Amortization/impairment of goodwill | | | | |
| 27 Amortization of acquisition, reorganization, and start-up costs | | | | |
| 28 Other amortization or impairment write-offs | | | | |
| 29 Reserved | | | | |
| 30 Depletion | | | | |
| 31 Depreciation | | | | |
| 32 Bad debt expense | | | | |
| 33 Corporate owned life insurance premiums | | | | |
| 34 Purchase versus lease (for purchasers and/or lessees) | | | | |
| 35 Research and development costs | | | | |
| 36 Section 118 exclusion (att. stmt.) | | | | |
| 37 Sec. 162(r) - FDIC premiums paid by certain large financial institutions (see instructions) | | | | |
| 38 Other expense/deduction items with differences (attach stmt.)                STMT 16 | 1,252,153. | -167,923. | | 1,084,230. |
| 39 **Total expense/deduction items.** Combine lines 1 through 38. Enter here and on Part II, line 27, reporting positive amounts as negative and negative amounts as positive | -4,425,202. | 8,422,528. | -18,413. | 3,978,913. |

313323
04-01-23

**Schedule M-3 (Form 1120)** (Rev. 12-2019)

10440702 787737 51010.00                              2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Form **4562**

**Depreciation and Amortization**
**(Including Information on Listed Property)**   COGS

OMB No. 1545-0172

**2023**

Department of the Treasury
Internal Revenue Service

Attach to your tax return.
Go to www.irs.gov/Form4562 for instructions and the latest information.

Attachment
Sequence No. **179**

Name(s) shown on return
PURE PRAIRIE POULTRY, INC

Business or activity to which this form relates
COST OF GOODS SOLD DEPRECIATION

Identifying number
84-2185133

**Part I**   Election To Expense Certain Property Under Section 179   **Note:** If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 Maximum amount (see instructions) | 1 | 1,160,000. |
| 2 Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 Threshold cost of section 179 property before reduction in limitation | 3 | 2,890,000. |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| | | |
|---|---|---|
| 7 Listed property. Enter the amount from line 29 | 7 | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 Tentative deduction. Enter the **smaller** of line 5 or line 8 | 9 | |
| 10 Carryover of disallowed deduction from line 13 of your 2022 Form 4562 | 10 | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 | 11 | |
| 12 Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | 12 | |
| 13 Carryover of disallowed deduction to 2024. Add lines 9 and 10, less line 12 | 13 | |

**Note:** Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II**   Special Depreciation Allowance and Other Depreciation (Don't include listed property.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year | 14 | 3,142,751. |
| 15 Property subject to section 168(f)(1) election | 15 | |
| 16 Other depreciation (including ACRS) | 16 | |

**Part III**   MACRS Depreciation (Don't include listed property. See instructions.)

**Section A**

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2023 | 17 | 68,322. |
| 18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here | | |

**Section B - Assets Placed in Service During 2023 Tax Year Using the General Depreciation System**

| | (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|---|
| 19a | 3-year property | | 31,413. | 3 | HY | 200DB | 10,471. |
| b | 5-year property | | 92,065. | 5 | HY | 200DB | 18,413. |
| c | 7-year property | | 618,036. | 7 | HY | 150DB | 87,525. |
| d | 10-year property | | | | | | |
| e | 15-year property | | | | | | |
| f | 20-year property | | 44,174. | 20 | HY | 150DB | 1,657. |
| g | 25-year property | | | 25 yrs. | | S/L | |
| h | Residential rental property | / | | 27.5 yrs. | MM | S/L | |
| | | / | | 27.5 yrs. | MM | S/L | |
| i | Nonresidential real property | / | | 39 yrs. | MM | S/L | |
| | | / | | | MM | S/L | |

**Section C - Assets Placed in Service During 2023 Tax Year Using the Alternative Depreciation System**

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 20a | Class life | | | | | S/L | |
| b | 12-year | | | 12 yrs. | | S/L | |
| c | 30-year | / | | 30 yrs. | MM | S/L | |
| d | 40-year | / | | 40 yrs. | MM | S/L | |

**Part IV**   Summary (See instructions.)

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | 21 | |
| 22 **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | 22 | 3,329,139. |
| 23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

316251  12-20-23   LHA   **For Paperwork Reduction Act Notice, see separate instructions.**

Form **4562** (2023)

Form 4562 (2023)  **PURE PRAIRIE POULTRY, INC**  84-2185133  Page **2**

| **Part V** | **Listed Property** (Include automobiles, certain other vehicles, certain aircraft, and property used for entertainment, recreation, or amusement.) |
|---|---|

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution:** See the instructions for limits for passenger automobiles.)

24a Do you have evidence to support the business/investment use claimed?  ☐ Yes ☐ No  24b If "Yes," is the evidence written?  ☐ Yes ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use | | | | | | **25** | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | | **28** | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | | **29** | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles) | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons.

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | |
| 39 Do you treat all use of vehicles by employees as personal use? | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? | | |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

| **Part VI** | **Amortization** |
|---|---|

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2023 tax year: | | | | | |
| | : : | | | | |
| | : : | | | | |
| 43 Amortization of costs that began before your 2023 tax year | | | | **43** | |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report | | | | **44** | |

Form **4562** (2023)

Form **4562**

Department of the Treasury
Internal Revenue Service

**Depreciation and Amortization**
**(Including Information on Listed Property)** OTHER
Attach to your tax return.
**Go to www.irs.gov/Form4562 for instructions and the latest information.**

OMB No. 1545-0172

**2023**

Attachment
Sequence No. **179**

Name(s) shown on return
PURE PRAIRIE POULTRY, INC

Business or activity to which this form relates
OTHER DEPRECIATION

Identifying number
84-2185133

**Part I** Election To Expense Certain Property Under Section 179 **Note:** If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 Maximum amount (see instructions) | 1 | 1,160,000. |
| 2 Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 Threshold cost of section 179 property before reduction in limitation | 3 | 2,890,000. |
| 4 Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|
| | | |
| | | |
| | | |
| | | |

| | | |
|---|---|---|
| 7 Listed property. Enter the amount from line 29 | 7 | |
| 8 Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 Tentative deduction. Enter the **smaller** of line 5 or line 8 | 9 | |
| 10 Carryover of disallowed deduction from line 13 of your 2022 Form 4562 | 10 | |
| 11 Business income limitation. Enter the smaller of business income (not less than zero) or line 5 | 11 | |
| 12 Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | 12 | |
| 13 Carryover of disallowed deduction to 2024. Add lines 9 and 10, less line 12 | 13 | |

**Note:** Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II** Special Depreciation Allowance and Other Depreciation (Don't include listed property.)

| | | |
|---|---|---|
| 14 Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year | 14 | |
| 15 Property subject to section 168(f)(1) election | 15 | |
| 16 Other depreciation (including ACRS) | 16 | |

**Part III** MACRS Depreciation (Don't include listed property. See instructions.)

**Section A**

| | | |
|---|---|---|
| 17 MACRS deductions for assets placed in service in tax years beginning before 2023 | 17 | |

18 If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ☐

**Section B - Assets Placed in Service During 2023 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs. | | S/L | |
| h Residential rental property | / | | 27.5 yrs. | MM | S/L | |
| | / | | 27.5 yrs. | MM | S/L | |
| i Nonresidential real property | / | | 39 yrs. | MM | S/L | |
| | / | | | MM | S/L | |

**Section C - Assets Placed in Service During 2023 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs. | | S/L | |
| c 30-year | / | | 30 yrs. | MM | S/L | |
| d 40-year | / | | 40 yrs. | MM | S/L | |

**Part IV** Summary (See instructions.)

| | | |
|---|---|---|
| 21 Listed property. Enter amount from line 28 | 21 | |
| 22 **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | 22 | |
| 23 For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

316251 12-20-23    LHA **For Paperwork Reduction Act Notice, see separate instructions.**

Form **4562** (2023)

Form 4562 (2023)    **PURE PRAIRIE POULTRY, INC**    84-2185133    Page **2**

| **Part V** | **Listed Property** (Include automobiles, certain other vehicles, certain aircraft, and property used for entertainment, recreation, or amusement.) |
|---|---|

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution:** See the instructions for limits for passenger automobiles. **)**

24a  Do you have evidence to support the business/investment use claimed?  ☐ Yes  ☐ No   24b If "Yes," is the evidence written?  ☐ Yes  ☐ No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use ..... **25** | | | | | | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 ..... **28** | | | | | | | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 ............................... | | | | | | | **29** | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles) ......... | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year ... | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven .............................................. | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 ............................. | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? ............. | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons.

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners ......... | | |
| 39 Do you treat all use of vehicles by employees as personal use? | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? ......... | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? ......... | | |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

| **Part VI** | **Amortization** |
|---|---|

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2023 tax year: | | | | | |
| | : : | | | | |
| | : : | | | | |
| 43 Amortization of costs that began before your 2023 tax year ......... **43** | | | | | |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report .... **44** | | | | | |

316252  12-20-23    Form **4562** (2023)

| Form **4797** | **Sales of Business Property** | OMB No. 1545-0184 |
|---|---|---|
| Department of the Treasury Internal Revenue Service | (Also Involuntary Conversions and Recapture Amounts Under Sections 179 and 280F(b)(2))<br>**Attach to your tax return.**<br>Go to www.irs.gov/Form4797 for instructions and the latest information. | **2023**<br>Attachment Sequence No. **27** |

| Name(s) shown on return | Identifying number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

**1a** Enter the gross proceeds from sales or exchanges reported to you for 2023 on Form(s) 1099-B or 1099-S (or substitute statement) that you are including on line 2, 10, or 20    **1a**

  **b** Enter the total amount of gain that you are including on lines 2, 10, and 24 due to the partial dispositions of MACRS assets    **1b**

  **c** Enter the total amount of loss that you are including on lines 2 and 10 due to the partial dispositions of MACRS assets    **1c**

**Part I**   **Sales or Exchanges of Property Used in a Trade or Business and Involuntary Conversions From Other Than Casualty or Theft - Most Property Held More Than 1 Year** (see instructions)

| 2   **(a)** Description of property | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) | **(d)** Gross sales price | **(e)** Depreciation allowed or allowable since acquisition | **(f)** Cost or other basis, plus improvements and expense of sale | **(g)** Gain or (loss) Subtract (f) from the sum of (d) and (e) |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---:|
| **3** Gain, if any, from Form 4684, line 39 | **3** | |
| **4** Section 1231 gain from installment sales from Form 6252, line 26 or 37 | **4** | |
| **5** Section 1231 gain or (loss) from like-kind exchanges from Form 8824 | **5** | |
| **6** Gain, if any, from line 32, from other than casualty or theft | **6** | 7,432. |
| **7** Combine lines 2 through 6. Enter the gain or (loss) here and on the appropriate line as follows | **7** | 7,432. |

**Partnerships and S corporations.** Report the gain or (loss) following the instructions for Form 1065, Schedule K, line 10, or Form 1120-S, Schedule K, line 9. Skip lines 8, 9, 11, and 12 below.

**Individuals, partners, S corporation shareholders, and all others.** If line 7 is zero or a loss, enter the amount from line 7 on line 11 below and skip lines 8 and 9. If line 7 is a gain and you didn't have any prior year section 1231 losses, or they were recaptured in an earlier year, enter the gain from line 7 as a long-term capital gain on the Schedule D filed with your return and skip lines 8, 9, 11, and 12 below.

| | | |
|---|---|---:|
| **8** Nonrecaptured net section 1231 losses from prior years. See instructions | **8** | |
| **9** Subtract line 8 from line 7. If zero or less, enter -0-. If line 9 is zero, enter the gain from line 7 on line 12 below. If line 9 is more than zero, enter the amount from line 8 on line 12 below and enter the gain from line 9 as a long-term capital gain on the Schedule D filed with your return. See instructions | **9** | 7,432. |

**Part II**   **Ordinary Gains and Losses** (see instructions)

**10**   Ordinary gains and losses not included on lines 11 through 16 (include property held 1 year or less):

| BOBCAT TL 619 TELEHANDLER | | | | | | |
|---|---|---|---|---|---|---|
| | 070323 | 123123 | 105,082. | | 88,000. | 17,082. |
| | | | | | | |
| | | | | | | |

| | | |
|---|---|---:|
| **11** Loss, if any, from line 7 | **11** ( | ) |
| **12** Gain, if any, from line 7 or amount from line 8, if applicable | **12** | |
| **13** Gain, if any, from line 31 | **13** | 38,290. |
| **14** Net gain or (loss) from Form 4684, lines 31 and 38a | **14** | |
| **15** Ordinary gain from installment sales from Form 6252, line 25 or 36 | **15** | |
| **16** Ordinary gain or (loss) from like-kind exchanges from Form 8824 | **16** | |
| **17** Combine lines 10 through 16 | **17** | 55,372. |

**18** For all except individual returns, enter the amount from line 17 on the appropriate line of your return and skip lines a and b below. For individual returns, complete lines a and b below.

  **a** If the loss on line 11 includes a loss from Form 4684, line 35, column (b)(ii), enter that part of the loss here. Enter the loss from income-producing property on Schedule A (Form 1040), line 16. (Do not include any loss on property used as an employee.) Identify as from "Form 4797, line 18a." See instructions    **18a**

  **b** Redetermine the gain or (loss) on line 17 excluding the loss, if any, on line 18a. Enter here and on Schedule 1 (Form 1040), Part I, line 4    **18b**

LHA   **For Paperwork Reduction Act Notice, see separate instructions.**    Form **4797** (2023)
318001
12-27-23

10440702 787737 51010.00      2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Form 4797 (2023)                                                                                                        Page **2**

| Part III | Gain From Disposition of Property Under Sections 1245, 1250, 1252, 1254, and 1255 (see instructions) |
|---|---|

| | **19 (a)** Description of section 1245, 1250, 1252, 1254, or 1255 property: | **(b)** Date acquired (mo., day, yr.) | **(c)** Date sold (mo., day, yr.) |
|---|---|---|---|
| **A** | MIDSOTA GOOSENECK TRAILER | 121522 | 123123 |
| **B** | | | |
| **C** | | | |
| **D** | | | |

| | These columns relate to the properties on lines 19A through 19D. | | **Property A** | **Property B** | **Property C** | **Property D** |
|---|---|---|---|---|---|---|
| **20** | Gross sales price (**Note:** See line 1a before completing.) | **20** | 45,722. | | | |
| **21** | Cost or other basis plus expense of sale | **21** | 38,290. | | | |
| **22** | Depreciation (or depletion) allowed or allowable | **22** | 38,290. | | | |
| **23** | Adjusted basis. Subtract line 22 from line 21 | **23** | 0. | | | |
| **24** | Total gain. Subtract line 23 from line 20 | **24** | 45,722. | | | |
| **25** | **If section 1245 property:** | | | | | |
| **a** | Depreciation allowed or allowable from line 22 | **25a** | 38,290. | | | |
| **b** | Enter the **smaller** of line 24 or 25a | **25b** | 38,290. | | | |
| **26** | **If section 1250 property:** If straight line depreciation was used, enter -0- on line 26g, except for a corporation subject to section 291. | | | | | |
| **a** | Additional depreciation after 1975 | **26a** | | | | |
| **b** | Applicable percentage multiplied by the **smaller** of line 24 or line 26a | **26b** | | | | |
| **c** | Subtract line 26a from line 24. If residential rental property **or** line 24 isn't more than line 26a, skip lines 26d and 26e | **26c** | | | | |
| **d** | Additional depreciation after 1969 and before 1976 | **26d** | | | | |
| **e** | Enter the **smaller** of line 26c or 26d | **26e** | | | | |
| **f** | Section 291 amount (corporations only) | **26f** | | | | |
| **g** | Add lines 26b, 26e, and 26f | **26g** | | | | |
| **27** | **If section 1252 property:** Skip this section if you didn't dispose of farmland or if this form is being completed for a partnership. | | | | | |
| **a** | Soil, water, and land clearing expenses | **27a** | | | | |
| **b** | Line 27a multiplied by applicable percentage | **27b** | | | | |
| **c** | Enter the **smaller** of line 24 or 27b | **27c** | | | | |
| **28** | **If section 1254 property:** | | | | | |
| **a** | Intangible drilling and development costs, expenditures for development of mines and other natural deposits, mining exploration costs, and depletion | **28a** | | | | |
| **b** | Enter the **smaller** of line 24 or 28a | **28b** | | | | |
| **29** | **If section 1255 property:** | | | | | |
| **a** | Applicable percentage of payments excluded from income under section 126 | **29a** | | | | |
| **b** | Enter the **smaller** of line 24 or 29a | **29b** | | | | |

**Summary of Part III Gains.** Complete property columns A through D through line 29b before going to line 30.

| **30** | Total gains for all properties. Add property columns A through D, line 24 | **30** | 45,722. |
|---|---|---|---|
| **31** | Add property columns A through D, lines 25b, 26g, 27c, 28b, and 29b. Enter here and on line 13 | **31** | 38,290. |
| **32** | Subtract line 31 from line 30. Enter the portion from casualty or theft on Form 4684, line 33. Enter the portion from other than casualty or theft on Form 4797, line 6 | **32** | 7,432. |

| Part IV | Recapture Amounts Under Sections 179 and 280F(b)(2) When Business Use Drops to 50% or Less (see instructions) |
|---|---|

| | | | **(a) Section 179** | **(b) Section 280F(b)(2)** |
|---|---|---|---|---|
| **33** | Section 179 expense deduction or depreciation allowable in prior years | **33** | | |
| **34** | Recomputed depreciation. See instructions | **34** | | |
| **35** | Recapture amount. Subtract line 34 from line 33. See the instructions for where to report | **35** | | |

Form **8916-A**
(Rev. November 2019)

Department of the Treasury
Internal Revenue Service

## Supplemental Attachment to Schedule M-3

OMB No. 1545-0123

▶ **Attach to Schedule M-3 for Form 1065, 1120, 1120-L, 1120-PC, or 1120-S.**
▶ **Go to www.irs.gov/Form1120 for the latest information.**

| Name of common parent | Employer identification number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |
| Name of subsidiary | Employer identification number |

| **Part I** | **Cost of Goods Sold** | | | |
|---|---|---|---|---|

| Cost of Goods Sold Items | (a) Expense per Income Statement | (b) Temporary Difference | (c) Permanent Difference | (d) Deduction per Tax Return |
|---|---|---|---|---|
| **1** Amounts attributable to cost flow assumptions | | | | |
| **2** Amounts attributable to: | | | | |
| **a** Stock option expense | | | | |
| **b** Other equity-based compensation | | | | |
| **c** Meals and entertainment | | | | |
| **d** Parachute payments | | | | |
| **e** Compensation with section 162(m) limitation | | | | |
| **f** Pension and profit sharing | | | | |
| **g** Other post-retirement benefits | | | | |
| **h** Deferred compensation | | | | |
| **i** Reserved | | | | |
| **j** Amortization | | | | |
| **k** Depletion | | | | |
| **l** Depreciation | 2,520,609. | 808,530. | | 3,329,139. |
| **m** Corporate-owned life insurance premiums | | | | |
| **n** Other section 263A costs | | | | |
| **3** Inventory shrinkage accruals | | | | |
| **4** Excess inventory and obsolescence reserves | | | | |
| **5** Lower of cost or market write-downs | | | | |
| **6** Other items with differences (attach statement) SEE STATEMENT 18 | | | | |
| **7** Other items with no differences | 38,213,841. | | | 38,213,841. |
| **8** **Total cost of goods sold.** Add lines 1 through 7 in columns a, b, c, and d. Enter totals on the applicable Schedule M-3. See instructions | 40,734,450. | 808,530. | | 41,542,980. |

LHA    **For Paperwork Reduction Act Notice, see instructions.**

Form **8916-A** (Rev. 11-2019)

313315
04-01-23

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

Form 8916-A (Rev. 11-2019) PURE PRAIRIE POULTRY, INC          84-2185133   Page **2**

## Part II   Interest Income

| | Interest Income Item | (a)<br>Income (Loss) per<br>Income Statement | (b)<br>Temporary<br>Difference | (c)<br>Permanent<br>Difference | (d)<br>Income (Loss) per<br>Tax Return |
|---|---|---|---|---|---|
| 1 | Tax-exempt interest income | | | | |
| 2 | Interest income from hybrid securities | | | | |
| 3 | Sale/lease interest income | | | | |
| 4a | Intercompany interest income - From outside tax affiliated group | | | | |
| 4b | Intercompany interest income - From tax affiliated group | | | | |
| 5 | Other interest income                    STMT 19 | 4,150. | | | 4,150. |
| 6 | Total interest income. Add lines 1 through 5 in columns a, b, c, and d. Enter total on the applicable Schedule M-3. See instructions. | 4,150. | | | 4,150. |

## Part III   Interest Expense

| | Interest Expense Item | (a)<br>Expense per<br>Income Statement | (b)<br>Temporary<br>Difference | (c)<br>Permanent<br>Difference | (d)<br>Deduction per<br>Tax Return |
|---|---|---|---|---|---|
| 1 | Interest expense from hybrid securities | | | | |
| 2 | Lease/purchase interest expense | | | | |
| 3a | Intercompany interest expense - Paid to outside tax affiliated group | | | | |
| 3b | Intercompany interest expense - Paid to tax affiliated group | | | | |
| 4 | Other interest expense                   STMT 20 | 2,876,270. | | | 2,876,270. |
| 5 | Total interest expense. Add lines 1 through 4 in columns a, b, c, and d. Enter total on the applicable Schedule M-3. See instructions. | 2,876,270. | | | 2,876,270. |

Form **8916-A** (Rev. 11-2019)

313316
04-01-23

10440702 787737 51010.00          2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

PURE PRAIRIE POULTRY, INC                                                84-2185133

| FORM 1120 | INTEREST INCOME | | STATEMENT 1 |
|---|---|---|---|
| DESCRIPTION | | US | OTHER |
| INTEREST | | | 4,150. |
| TOTAL TO FORM 1120, LINE 5 | | | 4,150. |

| FORM 1120 | OTHER INCOME | STATEMENT 2 |
|---|---|---|
| DESCRIPTION | | AMOUNT |
| OTHER INCOME | | 45,447. |
| TAXABLE GRANT INCOME | | 2,869,424. |
| TOTAL TO FORM 1120, LINE 10 | | 2,914,871. |

| FORM 1120 | TAXES AND LICENSES | STATEMENT 3 |
|---|---|---|
| DESCRIPTION | | AMOUNT |
| REAL ESTATE TAXES | | 46,513. |
| TOTAL TO FORM 1120, LINE 17 | | 46,513. |

| | CURRENT YEAR CONTRIBUTIONS | STATEMENT 4 |
|---|---|---|
| DESCRIPTION | | AMOUNT |
| CONTRIBUTIONS | | 400. |
| TOTAL CURRENT YEAR CONTRIBUTIONS | | 400. |

| | CONTRIBUTIONS | STATEMENT 5 |
|---|---|---|

```
CURRENT YEAR CONTRIBUTIONS:
QUALIFIED CONTRIBUTIONS SUBJECT TO 100% LIMIT
QUALIFIED CONTRIBUTIONS SUBJECT TO 25% LIMIT
FOOD INVENTORY CONTRIBUTIONS SUBJECT TO 25% LIMIT
FOOD INVENTORY CONTRIBUTIONS SUBJECT TO 15% LIMIT
QUALIFIED CONTRIBUTIONS SUBJECT TO 10% LIMIT                400

CONTRIBUTION SUBJECT TO LIMITATION:
  CARRYOVER OF PRIOR YEARS UNUSED CONTRIBUTIONS


  FOR TAX YEAR 2018
  FOR TAX YEAR 2019
  FOR TAX YEAR 2020
  FOR TAX YEAR 2021
  FOR TAX YEAR 2022                                         585
                                                          -------
  TOTAL CARRYOVER                                           585
  CURRENT YEAR CONTRIBUTIONS                                400
                                                          -------
  TOTAL CONTRIBUTIONS AVAILABLE                             985
  TAXABLE INCOME LIMITATION AS ADJUSTED                       0
                                                          -------
  EXCESS CONTRIBUTIONS                                      985
                                                          -------
  ALLOWABLE CONTRIBUTIONS DEDUCTION                                       0
                                                                       -------
TOTAL CONTRIBUTION DEDUCTION                                             0
                                                                       =======
```

PURE PRAIRIE POULTRY, INC                                            84-2185133

---

| FORM 1120 | OTHER DEDUCTIONS | STATEMENT 6 |

| DESCRIPTION | AMOUNT |
|---|---|
| BANK SERVICE CHARGES | 23,971. |
| DUES & SUBSCRIPTIONS | 16,196. |
| GOVERNMENT INSPECTION | 48,602. |
| INSURANCE | 989,859. |
| LEGAL & PROFESSIONAL | 632,980. |
| MEALS | 18,413. |
| MEDICAL EXPENSES | 81,703. |
| MISCELLANEOUS | 147,416. |
| OFFICE SUPPLIES AND SOFTWARE | 1,394,405. |
| OUTSIDE SERVICES | 503,260. |
| POSTAGE & FREIGHT | 3,348. |
| PUBLIC RELATIONS | 32,017. |
| RECRUITING | 80,157. |
| SAMPLES | 4,864. |
| SUPPLIES | 1,014,629. |
| TOOLS | 45,031. |
| TRAINING | 25,019. |
| TRAVEL | 168,447. |
| UTILITIES | 1,372,488. |
| VEHICLE EXPENSE | 185,105. |
| TOTAL TO FORM 1120, LINE 26 | 6,787,910. |

---

| | NET OPERATING LOSS DEDUCTION | | | STATEMENT 7 |

| TAX YEAR | LOSS SUSTAINED | LOSS PREVIOUSLY APPLIED | LOSS REMAINING | AVAILABLE THIS YEAR |
|---|---|---|---|---|
| 12/31/20 | 36,656. | | 36,656. | 36,656. |
| 12/31/21 | 68,808. | | 68,808. | 68,808. |
| 12/31/22 | 16,596,680. | | 16,596,680. | 16,596,680. |
| NOL AVAILABLE THIS YEAR | | | 16,702,144. | 16,702,144. |

PURE PRAIRIE POULTRY, INC                                                  84-2185133

| SCHEDULE L | OTHER CURRENT ASSETS | | STATEMENT 8 |
| --- | --- | --- | --- |
| DESCRIPTION | | BEGINNING OF TAX YEAR | END OF TAX YEAR |
| DEPOSITS | | 10,882. | 210,892. |
| NOTE RECEIVABLE - CURRENT | | 87,327. | 63,153. |
| OTHER PREPAID EXPENSES | | 2,444,004. | 459,897. |
| PURCHASES RETURNED NOT CREDITED | | 0. | 295. |
| TOTAL TO SCHEDULE L, LINE 6 | | 2,542,213. | 734,237. |

| SCHEDULE L | OTHER ASSETS | | STATEMENT 9 |
| --- | --- | --- | --- |
| DESCRIPTION | | BEGINNING OF TAX YEAR | END OF TAX YEAR |
| CONSTRUCTION IN PROGRESS | | 15,000. | 27,058,105. |
| DEFERRED TAX ASSET | | 264,035. | 8,854,886. |
| TOTAL TO SCHEDULE L, LINE 14 | | 279,035. | 35,912,991. |

| SCHEDULE L | OTHER CURRENT LIABILITIES | | STATEMENT 10 |
| --- | --- | --- | --- |
| DESCRIPTION | | BEGINNING OF TAX YEAR | END OF TAX YEAR |
| ACCRUED BENEFITS | | 18,576. | 2,631. |
| ACCRUED EXPENSES | | 1,274,843. | 736,326. |
| ACCRUED INTEREST | | 610,897. | 3,232,524. |
| ACCRUED PAYROLL | | 75,472. | 188,536. |
| ACCRUED PAYROLL TAXES | | 7,081. | 0. |
| ACCRUED PROPERTY TAXES | | 141,016. | 94,096. |
| ACCRUED PURCHASES | | 79,445. | 146,128. |
| ACCRUED VACATION & SICK TIME | | 143,092. | 303,072. |
| CHECKS WRITTEN IN EXCESS OF CASH | | 665,246. | 1,656,338. |
| CREDIT CARD PAYABLE | | 47,005. | 100,486. |
| LINE OF CREDIT | | 4,714,217. | 7,500,000. |
| TOTAL TO SCHEDULE L, LINE 18 | | 7,776,890. | 13,960,137. |

Case 24-01098   Doc 40   Filed 12/02/24   Entered 12/02/24 16:17:26   Desc Main
PURE PRAIRIE POULTRY, INC   Document   Page 90 of 152

84-2185133

| FORM 1125-A | OTHER COSTS | STATEMENT 11 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| BREEDER DEPRECIATION | 1,608,448. |
| DEPRECIATION | 3,329,139. |
| FREIGHT | 4,788,569. |
| MILLING | 59,045. |
| MISCELLANEOUS | 74,277. |
| RENT | 4,871,076. |
| SHAVING | 159,077. |
| UTILITIES | 1,183,242. |
| VACCINATION | 38,588. |
| VETERINARY | 46,749. |
| TOTAL TO LINE 5 | 16,158,210. |

---

SCHEDULE M-3          OTHER INCOME (LOSS) AND EXPENSE / DEDUCTION       STATEMENT 12
                          ITEMS WITH NO DIFFERENCES

| DESCRIPTION | INCOME (LOSS) PER INCOME STATEMENT | INCOME (LOSS) PER TAX RETURN |
|---|---|---|
| OTHER INCOME (LOSS) - SEE STATEMENT | 22,172,346. | 22,172,346. |
| OTHER EXPENSE / DEDUCTION - SEE STATEMENT | -9,250,707. | -9,250,707. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 28 | 12,921,639. | 12,921,639. |

---

SCHEDULE M-3       OTHER INCOME (LOSS) ITEMS WITH NO DIFFERENCES    STATEMENT 13

| DESCRIPTION | INCOME (LOSS) PER INCOME STATEMENT | INCOME (LOSS) PER TAX RETURN |
|---|---|---|
| GROSS RECEIPTS OR SALES | 19,257,475. | 19,257,475. |
| OTHER INCOME | 45,447. | 45,447. |
| TAXABLE GRANT INCOME | 2,869,424. | 2,869,424. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 28 | 22,172,346. | 22,172,346. |

PURE PRAIRIE POULTRY, INC

84-2185133

| SCHEDULE M-3 | MEALS AND ENTERTAINMENT | STATEMENT 14 |
|---|---|---|

| DESCRIPTION | EXPENSE PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| MEALS AND ENTERTAINMENT | 36,826. | | -18,413. | 18,413. |
| TOTAL | 36,826. | | -18,413. | 18,413. |

| SCHEDULE M-3 | CHARITABLE CONTRIBUTION OF CASH AND TANGIBLE PROPERTY | STATEMENT 15 |
|---|---|---|

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| CONTRIBUTIONS | 400. | | 0. | 400. |
| TOTAL | 400. | | 0. | 400. |

| SCHEDULE M-3 | OTHER EXPENSE/DEDUCTION ITEMS WITH DIFFERENCES | STATEMENT 16 |
|---|---|---|

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|---|---|
| SALARIES AND WAGES | 1,252,153. | -167,923. | 0. | 1,084,230. |
| TOTAL TO M-3, PART III, LINE 38 | 1,252,153. | -167,923. | 0. | 1,084,230. |

PURE PRAIRIE POULTRY, INC                                          84-2185133

---

SCHEDULE M-3              OTHER EXPENSE/DEDUCTION ITEMS            STATEMENT 17
                              WITH NO DIFFERENCES

---

| DESCRIPTION | EXPENSE/ DEDUCTION PER INCOME STATEMENT | EXPENSE/ DEDUCTION PER TAX RETURN |
|---|---|---|
| ADVERTISING | 77,778. | 77,778. |
| BANK SERVICE CHARGES | 23,971. | 23,971. |
| DUES & SUBSCRIPTIONS | 16,196. | 16,196. |
| EMPLOYEE BENEFIT PROGRAMS | 1,539,312. | 1,539,312. |
| GOVERNMENT INSPECTION | 48,602. | 48,602. |
| INSURANCE | 989,859. | 989,859. |
| LEGAL & PROFESSIONAL | 632,980. | 632,980. |
| MEDICAL EXPENSES | 81,703. | 81,703. |
| MISCELLANEOUS | 147,416. | 147,416. |
| OFFICE SUPPLIES AND SOFTWARE | 1,394,405. | 1,394,405. |
| OUTSIDE SERVICES | 503,260. | 503,260. |
| POSTAGE & FREIGHT | 3,348. | 3,348. |
| PUBLIC RELATIONS | 32,017. | 32,017. |
| REAL ESTATE TAXES | 46,513. | 46,513. |
| RECRUITING | 80,157. | 80,157. |
| RENTS | 218,936. | 218,936. |
| REPAIRS | 598,671. | 598,671. |
| SAMPLES | 4,864. | 4,864. |
| SUPPLIES | 1,014,629. | 1,014,629. |
| TOOLS | 45,031. | 45,031. |
| TRAINING | 25,019. | 25,019. |
| TRAVEL | 168,447. | 168,447. |
| UTILITIES | 1,372,488. | 1,372,488. |
| VEHICLE EXPENSE | 185,105. | 185,105. |
| TOTAL TO SCHEDULE M-3, PART II, LINE 28 | 9,250,707. | 9,250,707. |

PURE PRAIRIE POULTRY, INC                                                    84-2185133

---

| FORM 8916-A | OTHER ITEMS WITH NO DIFFERENCES | STATEMENT 18 |
|---|---|---|

| DESCRIPTION | PER INCOME STATEMENT | PER TAX RETURN |
|---|---|---|
| BEGINNING INVENTORY | 2,791,236. | 2,791,236. |
| BREEDER DEPRECIATION | 1,608,448. | 1,608,448. |
| ENDING INVENTORY | -7,803,695. | -7,803,695. |
| FREIGHT | 4,788,569. | 4,788,569. |
| MILLING | 59,045. | 59,045. |
| MISCELLANEOUS | 74,277. | 74,277. |
| PURCHASES | 24,497,061. | 24,497,061. |
| RENT | 4,871,076. | 4,871,076. |
| SALARIES AND WAGES | 5,900,168. | 5,900,168. |
| SHAVING | 159,077. | 159,077. |
| UTILITIES | 1,183,242. | 1,183,242. |
| VACCINATION | 38,588. | 38,588. |
| VETERINARY | 46,749. | 46,749. |
| TOTAL TO LINE 7 | 38,213,841. | 38,213,841. |

---

| FORM 8916-A | OTHER INTEREST INCOME | | STATEMENT 19 |
|---|---|---|---|

| DESCRIPTION | PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | PER TAX RETURN |
|---|---|---|---|---|
| INTEREST | 4,150. | 0. | 0. | 4,150. |
| TOTAL TO PART II, LINE 5 | 4,150. | 0. | 0. | 4,150. |

---

| FORM 8916-A | OTHER INTEREST EXPENSE | | STATEMENT 20 |
|---|---|---|---|

| DESCRIPTION | PER INCOME STATEMENT | TEMPORARY DIFFERENCE | PERMANENT DIFFERENCE | PER TAX RETURN |
|---|---|---|---|---|
| INTEREST EXPENSE FROM TRADE OR BUSINESS | 2,876,270. | 0. | 0. | 2,876,270. |
| TOTAL TO PART III, LINE 4 | 2,876,270. | 0. | 0. | 2,876,270. |

# TAX RETURN FILING INSTRUCTIONS
### ARKANSAS FORM AR1100CT

## FOR THE YEAR ENDING
### DECEMBER 31, 2023

**PREPARED FOR:**

PURE PRAIRIE POULTRY, INC
68808 FORT RD
FAIRFAX, MN  55332

**PREPARED BY:**

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201

**TO BE SIGNED AND DATED BY:**

THE APPROPRIATE CORPORATE OFFICER(S).

**AMOUNT OF TAX:**

| | | |
|---|---|---:|
| TOTAL TAX | $ | 0 |
| LESS: PAYMENTS AND CREDITS | $ | 0 |
| PLUS: OTHER AMOUNT | $ | 0 |
| PLUS: INTEREST AND PENALTIES | $ | 0 |
| NO PAYMENT REQUIRED | $ | |

**OVERPAYMENT:**

NOT APPLICABLE

**MAKE CHECK PAYABLE TO:**

NOT APPLICABLE

**MAIL TAX RETURN AND CHECK (IF APPLICABLE) TO:**

THIS RETURN HAS BEEN PREPARED FOR ELECTRONIC FILING. IF YOU WISH TO
HAVE IT TRANSMITTED TO THE DEPT. OF F & A, PLEASE SIGN, DATE AND
RETURN FORM AR8453-C TO OUR OFFICE VIA FROST PORTAL, FAX TO (501)975-
0126, OR EMAIL TO EFILE@FROSTPLLC.COM. WE WILL THEN SUBMIT THE
RETURN TO THE DEPT. OF F & A. DO NOT MAIL A PAPER COPY OF THE RETURN.

**RETURN MUST BE MAILED ON OR BEFORE:**

RETURN FORM AR8453-C TO US BY NOVEMBER 14, 2024.

**SPECIAL INSTRUCTIONS:**

# 2023 AR1100CT
## ARKANSAS CORPORATION
## INCOME TAX RETURN

**C**

Software ID: PROSYSTEM

Tax Year beginning ● JAN 1  2023 and ending ● DEC 31 2023

[X] INITIAL Return     [ ] AMENDED Return     [ ] FINAL Arkansas Return (Going out of Business)     ● [ ] Cooperative Association

FEIN ● 84-2185133     ● [X] Check this box if Automatic Federal Extension Form 7004 filed (See Instructions)     ● [ ] Check if Using Three Factor
                      ● [ ] Check this box if Arkansas Extension Form AR1155 filed     Apportionment Alternative

NAICS Code ● 112300     ● [ ] Check this box if name has changed from prior year     **Type of Corporation**
Name ● PURE PRAIRIE POULTRY, INC     Check only one box

Date of Incorporation ● 06/24/2019     ● [ ] Check this box if address has changed from prior year     ● 5 [ ] Domestic (in state)
Address ● 68808 FORT RD     ● 6 [X] Foreign (out of state)

Date Began Business in AR ● 06/24/2019     City ● FAIRFAX     State or Province ● MN     ZIP ● 55332     [ ] Check if address is outside U.S.
                                                                                                            Foreign Country

If you are a pass-through entity and are electing the "**Check the Box**" provision for state income tax purposes, check the type of entity and check one of the filing status boxes below:
See instructions     ● [ ] LIMITED LIABILITY COMPANY     ● [ ] PARTNERSHIP

**FILING STATUS:**     ● 1 [ ] Corporation Operating only in Arkansas     ● 3 [ ] Multistate Corporation - Direct Accounting
(CHECK ONLY     **(Prior written approval required for Direct Accounting)**
ONE BOX)     ● 2 [X] Multistate Corporation - Apportionment     ● 4 [ ] Consolidated return: # of corp. entities in AR

**Note:  Attach completed copy of Federal Return and Sign Arkansas Return.**     *(See Important Reminders)*     **ARKANSAS**

| | | | | |
|---|---|---|---|---|
| **INCOME** | 7. | Gross Sales: **(Less returns and allowances)** | 7.● | 00 |
| | 8. | Less Cost of Goods Sold: | 8.● | 00 |
| | 9. | Gross Profit: **(Line 7 less Line 8)** | 9.● | 00 |
| | 10. | Dividends: **(See Instructions)** | 10.● | 00 |
| | 11. | Taxable Interest: **(Attach AR1100REC)** | 11.● | 00 |
| | 12. | Gross Rents/Gross Royalties: **(See Instructions)** | 12.● | 00 |
| | 13. | Gains or Losses: | 13.● | 00 |
| | 14. | Other Income: | 14.● | 00 |
| | 15. | TOTAL INCOME: **(Add Lines 9 through 14)** | 15.● | 00 |
| **DEDUCTIONS** | 16. | Compensation of Officers/Other Salaries and Wages: **(See Instructions)** | 16.● | 00 |
| | 17. | Repairs: | 17.● | 00 |
| | 18. | Bad Debts: | 18.● | 00 |
| | 19. | Rent on Business Property: | 19.● | 00 |
| | 20. | Taxes: **(Attach AR1100REC)** | 20.● | 00 |
| | 21. | Interest: | 21.● | 00 |
| | 22. | Contributions: | 22.● | 00 |
| | 23. | Depreciation: **(Attach AR1100REC/Except IRC 179D))** | 23.● | 00 |
| | 24. | Depletion: | 24.● | 00 |
| | 25. | Advertising: | 25.● | 00 |
| | 26. | Other Deductions: **(Attach schedule/Except IRC 179D)** | 26.● | 00 |
| | 27. | TOTAL DEDUCTIONS: **(Add Lines 16 through 26)** | 27.● | 00 |
| | 28. | Taxable Income Before Net Operating Losses: **(Line 15 less Line 27)** | 28.● | 00 |
| | 29. | Net Operating Losses: **(Adjust for Non-taxable Income)** | 29.● | 00 |
| **TAX COMPUTATION** | 30. | Net Taxable Income: **(Line 28 less Line 29 or Schedule A C4 page 2) (If Amended Return Box Checked, Enter Amended Net Taxable Income)** | 30.● −19,475,210 | 00 |
| | 31. | Tax from Table: **(See Instructions)** | 31.● 0 | 00 |
| | 32. | Business Incentive Credits: **(Attach all original certificates and Schedule AR1100BIC)** | 32.● | 00 |
| | 33. | Tax Liability: **(If Amended Return Box Checked, Enter Amended Tax Liability)** | 33.● 0 | 00 |
| | 34. | Estimated Tax Paid: **(Including estimate carryforward from prior year)** | 34.● | 00 |
| | 35. | Payment with Extension Request: | 35.● | 00 |
| | 36. | Withholding Payment: **(Attach AR1100-WH)** | 36.● | 00 |
| | 37. | Amended Return Only: **(Enter Net tax paid (or refunded) on previous return(s) for this tax year)** | 37.● | 00 |
| | 38. | Overpayment: **(Line 34 plus Line 35 plus Line 36 plus or minus Line 37; less Line 33)** | 38.● | 00 |
| | 39. | Amount Applied to next tax year | 39.● | 00 |
| | 40. | Amount Applied to Check Off Contributions: **(Attach AR1100CO)** | 40.● | 00 |
| | 41. | Amount to be Refunded: **(Line 38 less Lines 39 and 40)** | 41.● | 00 |
| | 42. | Tax Due: **(Line 33 less Line 34 and 35 and Line 36, plus or minus Line 37)** | 42.● | 00 |
| | 43. | Interest on Tax Due: | 43.● | 00 |
| | 44. | Penalty for Late Filing or Payment: **(See Instructions)** | 44.● | 00 |
| | 45. | Penalty for Underpayment of Estimated Tax: **(Attach AR2220)** Enter exception checked in Part 3 ● [ ] | 45.● | 00 |
| | 46. | Amount Due: **(Add Lines 42 through 45)** | 46.● 0 | 00 |

AR1100CT (R 8/28/2023)     **DO NOT STAPLE RETURNS, SCHEDULES OR ATTACHMENTS**     338301 08-30-23

**SCHEDULE A**
**Apportionment of Income**
**for Multistate Corporation**

**FEIN:** 84-2185133

**A. INCOME TO APPORTION:**

| | | |
|---|---|---|
| 1. Income per Federal Return: **(Federal Form 1120, Line 28)** | 1. | -32,533,300 00 |
| 2. Add Adjustments: **(Attach schedule)**    SEE STATEMENT 1 | 2. 3,102,365 00 | |
| 3. Deduct Adjustments: **(Attach schedule)** | 3. 0 00 | |
| 4. TOTAL APPORTIONABLE INCOME: | 4. | -29,430,935 00 |

**NOTE:** If all factors in **Section B** are 100%, do not complete Columns (A), (B), or (C). The return should be filed as a status 1, CORPORATION OPERATING ONLY IN ARKANSAS and complete all appropriate lines on page 1 of Form AR1100CT. Property and payroll factors are only applicable under special industry regulations, all other filers must use the single sales factor only. Refer to the instructions for industry specific details.

**B. APPORTIONMENT FACTOR:**

| | **(A)** Amounts in Arkansas | **(B)** Total Amounts | **(C)** Percentage (A) ÷ (B) |
|---|---|---|---|
| 1. Property Used in Business: | | | *(Calculate to 6 places to the right of the decimal. Fill in all spaces.)* |
| a. Tangible Assets Used in Business and Inventories | | | |
| 1. Amount Beginning of Year: | 1. 0 00 | 1. 0 00 | |
| 2. Amount End of Year: | 2. 0 00 | 2. 0 00 | |
| 3. Total: **(Add Lines a1 and a2)** | 3. 0 00 | 3. 0 00 | 999.999999 % |
| 4. Average Tangible Assets: **(Line 3 ÷ 2)** | 4. 0 00 | 4. 0 00 | **(EXAMPLE)** |
| b. Rental Property: **(8 times annual rent)** | b. 0 00 | b. 0 00 | |
| c. TOTAL PROPERTY: **(Add Lines a4 and b)** | c. 0 00 | c. 0 00 | c. .000000 % |

| | | | |
|---|---|---|---|
| 2. Salaries, Wages, Commissions and Other Compensation Related to the Production of business income: | | | |
| a. Total: | a. 0 00 | a. 0 00 | a. .000000 % |
| 3. Sales/Receipts: | | | |
| a. Destination Shipped From Within Arkansas: | a. 14,733,827 00 | | |
| b. Destination Shipped From Without Arkansas: | b. 0 00 | | |
| c. Origin Shipped From Within Arkansas to U.S. Govt: | c. 0 00 | | |
| d. Origin Shipped From Within Arkansas to Other Non-taxable Jurisdictions: | d. 0 00 | | |
| e. Other Gross Receipts: **(Attach schedule)** | e. 0 00 | | |
| f. TOTAL SALES / RECEIPTS: **(Add Lines 3a through 3e)** | f. 14,733,827 00 | f. 22,265,757 00 | f. 66.172585 % |
| g. Multiply Column C, Line 3f by 2 to Doubleweight the Sales Factor **(If Sales Factor only, do not doubleweight)** | | | g. 66.172584 % |
| 4. Sum of Percentages: **(Double Weighted: Add Column C, Lines 1c, 2a and 3g)** | | | 4. 66.172584 % |

| | | | |
|---|---|---|---|
| * 5. Percentage Attributable to Arkansas: ............ Line 4  66.17% | Divided By * 1 | = | 5. 66.172584 % |

**\* For Part B, Line 5, Divide Line 4 by number of entries other than zero which you make on Part B, Column B, Lines (1c), (2a), and (3f).**
**NOTE: An entry other than zero in Part B, Column B, Line (3f), counts as two (2) entries unless using Single Sales Factor.**

**C. ARKANSAS TAXABLE INCOME:**

| | | |
|---|---|---|
| 1. Income Apportioned to Arkansas: **(Part A, Line 4) x (Part B, Line 5, Column C)** | 1. | -19,475,210 00 |
| 2. Add: Direct Income Allocated to Arkansas: **(Attach schedule)** | 2. | 00 |
| 3. Less: Apportioned NOL to Arkansas: **(See NOL Instructions, Attach AR1100NOL form)** | 3. | 00 |
| 4. TOTAL INCOME TAXABLE TO ARKANSAS: **(Enter here and on Line 30, page 1)** | 4. | -19,475,210 00 |

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules, statements and documents, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| | | | |
|---|---|---|---|
| Officer's Signature | Date | Title CFO | Telephone Number 612-209-6740 |
| Preparer's Signature DUSTIN JOHNSON | Date 07/02/24 | Preparer's FEIN/PTIN 71-0817652 | |
| Preparer's Printed Name DUSTIN JOHNSON | | May the Arkansas Revenue Agency discuss this return with the preparer shown above? | **For Department Use Only** |
| Area Code and Telephone Number of Preparer (501)376-9241 | | [X] Yes [ ] No | A ●
B ●
C |

**MAIL RETURN TO:** Corporation Income Tax, P O Box 919, Little Rock, AR 72203-0919

338311 08-30-23    AR1100CT Page 2 (R 9/8/2021)                                PROSYSTEM

## DO NOT STAPLE RETURNS, STATEMENTS OR ATTACHMENTS

84-2185133

| AR1100CT | ADDITIONS TO FEDERAL INCOME | STATEMENT 1 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| AR DEPRECIATION/AMORTIZATION DIFFERENCE | 3,102,365. |
| TOTAL TO FORM AR1100CT, PAGE 2, SCH A, PART A, LINE 2 | 3,102,365. |

# AR-AIS

## Arkansas
## Additional Information Schedule

# 2023

**1.**

| | |
|---|---|
| **Name:** PURE PRAIRIE POULTRY, INC | |
| **SSN/FEIN:** 842185133 | |
| **Arkansas Form or Schedule:** AR1100CT | |
| **Ownership Type:** ADD ADJUSTMENTS | |
| **Description:** AR DEPRECIATION/AMORTIZATION DIFFERENCE | |
| **Tax Year:** 2023 | |

**1. Amount** 3,102,365.00

**2.**

| | |
|---|---|
| **Name:** | |
| **SSN/FEIN:** | |
| **Arkansas Form or Schedule:** | |
| **Ownership Type:** | |
| **Description:** | |
| **Tax Year:** | |

**2. Amount** 00

**3.**

| | |
|---|---|
| **Name:** | |
| **SSN/FEIN:** | |
| **Arkansas Form or Schedule:** | |
| **Ownership Type:** | |
| **Description:** | |
| **Tax Year:** | |

**3. Amount** 00

**4.**

| | |
|---|---|
| **Name:** | |
| **SSN/FEIN:** | |
| **Arkansas Form or Schedule:** | |
| **Ownership Type:** | |
| **Description:** | |
| **Tax Year:** | |

**4. Amount** 00

**5.**

| | |
|---|---|
| **Name:** | |
| **SSN/FEIN:** | |
| **Arkansas Form or Schedule:** | |
| **Ownership Type:** | |
| **Description:** | |
| **Tax Year:** | |

**5. Amount** 00

**6.**

| | |
|---|---|
| **Name:** | |
| **SSN/FEIN:** | |
| **Arkansas Form or Schedule:** | |
| **Ownership Type:** | |
| **Description:** | |
| **Tax Year:** | |

**6. Amount** 00

**7.**

| | |
|---|---|
| **Name:** | |
| **SSN/FEIN:** | |
| **Arkansas Form or Schedule:** | |
| **Ownership Type:** | |
| **Description:** | |
| **Tax Year:** | |

**7. Amount** 00

AR

Form **4562**

Department of the Treasury
Internal Revenue Service

**Depreciation and Amortization**
**(Including Information on Listed Property)**

COGS

Attach to your tax return.
Go to www.irs.gov/Form4562 for instructions and the latest information.

OMB No. 1545-0172

**2023**

Attachment
Sequence No. **179**

Name(s) shown on return

PURE PRAIRIE POULTRY, INC

Business or activity to which this form relates

COST OF GOODS SOLD
DEPRECIATION

Identifying number

84-2185133

**Part I** | Election To Expense Certain Property Under Section 179 **Note:** If you have any listed property, complete Part V before you complete Part I.

| | | |
|---|---|---|
| 1 | Maximum amount (see instructions) | **1** | 1,160,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | **2** | |
| 3 | Threshold cost of section 179 property before reduction in limitation | **3** | 2,890,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | **4** | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | **5** | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | **7** | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | **8** | |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | **9** | |
| 10 | Carryover of disallowed deduction from line 13 of your 2022 Form 4562 | **10** | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 | **11** | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but don't enter more than line 11 | **12** | |
| 13 | Carryover of disallowed deduction to 2024. Add lines 9 and 10, less line 12 | **13** | |

**Note:** Don't use Part II or Part III below for listed property. Instead, use Part V.

**Part II** | Special Depreciation Allowance and Other Depreciation (Don't include listed property.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year | **14** | |
| 15 | Property subject to section 168(f)(1) election | **15** | |
| 16 | Other depreciation (including ACRS) | **16** | |

**Part III** | MACRS Depreciation (Don't include listed property. See instructions.)

**Section A**

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2023 | **17** | 68,323. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here | | |

**Section B - Assets Placed in Service During 2023 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only - see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| **19a** 3-year property | | 157,065. | 3 YRS | MQ | 200DB | 13,089. |
| **b** 5-year property | | 460,325. | 5 YRS | MQ | 200DB | 29,283. |
| **c** 7-year property | | 3,090,179. | 7 YRS | MQ | 200DB | 114,009. |
| **d** 10-year property | | | | | | |
| **e** 15-year property | | | | | | |
| **f** 20-year property | | 220,868. | 20 YRD | MQ | 150DB | 2,071. |
| **g** 25-year property | | | 25 yrs. | | S/L | |
| **h** Residential rental property | / | | 27.5 yrs. | MM | S/L | |
| | / | | 27.5 yrs. | MM | S/L | |
| **i** Nonresidential real property | / | | 39 yrs. | MM | S/L | |
| | / | | | MM | S/L | |

**Section C - Assets Placed in Service During 2023 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| **20a** Class life | | | | | S/L | |
| **b** 12-year | | | 12 yrs. | | S/L | |
| **c** 30-year | / | | 30 yrs. | MM | S/L | |
| **d** 40-year | / | | 40 yrs. | MM | S/L | |

**Part IV** | Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | **21** | |
| 22 | **Total.** Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations - see instr. | **22** | 226,774. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | **23** | |

316251 12-20-23   LHA **For Paperwork Reduction Act Notice, see separate instructions.**

Form **4562** (2023)

Form 4562 (2023)  **PURE PRAIRIE POULTRY, INC**  84-2185133  Page **2**

**Part V** | **Listed Property** (Include automobiles, certain other vehicles, certain aircraft, and property used for entertainment, recreation, or amusement.)

**Note:** For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete **only** 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.

**Section A - Depreciation and Other Information (Caution:** See the instructions for limits for passenger automobiles.**)**

| 24a Do you have evidence to support the business/investment use claimed? | | | Yes | No | 24b If "Yes," is the evidence written? | | Yes | No |

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use | | | | | | **25** | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| | : : | % | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| | : : | % | | | | S/L - | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1 | | | | | | **28** | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1 | | | | | | | **29** | |

**Section B - Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other "more than 5% owner," or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**don't** include commuting miles) | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 | | | | | | | | | | | | |
| 34 Was the vehicle available for personal use during off-duty hours? | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? | | | | | | | | | | | | |

**Section C - Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who **aren't** more than 5% owners or related persons.

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners | | |
| 39 Do you treat all use of vehicles by employees as personal use? | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? | | |

**Note:** If your answer to 37, 38, 39, 40, or 41 is "Yes," don't complete Section B for the covered vehicles.

**Part VI** | **Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2023 tax year: | | | | | |
| | : : | | | | |
| | : : | | | | |
| 43 Amortization of costs that began before your 2023 tax year | | | | **43** | |
| 44 **Total.** Add amounts in column (f). See the instructions for where to report | | | | **44** | |

316252 12-20-23

Form **4562** (2023)

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

**AR8453-C**

**2023**

## ARKANSAS CORPORATION INCOME TAX
## DECLARATION FOR ELECTRONIC FILING

For calendar year 2023, or tax year beginning  01/01/23  , ending 12/31/23

| Name PURE PRAIRIE POULTRY, INC | Federal Employer Identification Number 84-2185133 |
|---|---|
| Mailing Address **(Number and Street, P.O. Box or Rural Route)** 68808 FORT RD | Telephone 612-209-6740 |
| City FAIRFAX | State or Province MINNESOTA | ZIP 55332 | ☐ Check if address is outside U.S. Foreign Country |

### PART I - TAX RETURN INFORMATION (Whole Dollars Only)

| | | | |
|---|---|---|---|
| 1. Total Income **(Form AR1100CT, Line 15)** | 1 | | 00 |
| 2. Net Taxable Income **(Form AR1100CT, Line 30)** | 2 | -19,475,210 | 00 |
| 3. Total Tax Liability **(Form AR1100CT, Line 33)** | 3 | | 00 |
| 4. Overpayment **(Form AR1100CT, Line 38)** | 4 | | 00 |
| 5. Tax Due **(Form AR1100CT, Line 42)** | 5 | | 00 |

### PART II - DECLARATION OF OFFICER (Sign only after Part I is completed)

6a. ☐ I authorize the State of Arkansas Income Tax Section to initiate debit entries to my account as indicated on the Arkansas Income Tax Payment form (AR TAX PMT).

6b. ☐ I authorize the State of Arkansas Income Tax Section to initiate debit entries to my account as indicated on the Arkansas Estimated Tax Payment form (AR EST PMT) or Arkansas Extension Payment form (AR EXT PMT).

If the corporation is filing a balance due return, I understand that if the State of Arkansas does not receive full and timely payment of its tax liability, the corporation will remain liable for the tax liability and all applicable interest and penalties. If the federal corporation return is rejected, I understand the state corporation return may also be rejected.

Under penalties of perjury, I declare that I am an officer of the above corporation and that the information I have given my electronic return originator (ERO), transmitter, and/or internet service provider (ISP) and that amounts in Part I above agree with the amounts on the corresponding lines of the corporation's 2023 Arkansas income tax return. To the best of my knowledge and belief, the corporation's return is true, correct, and complete. I consent to my ERO, transmitter, and/or ISP sending the corporation's return, this declaration, and accompanying schedules and statements to the State of Arkansas. I also consent to the State of Arkansas sending my ERO, transmitter, and/or ISP an acknowledgment of receipt of transmission and an indication of whether or not the corporation's return is accepted, and, if rejected, the reason(s) for the rejection. If the processing of the corporation's return or refund is delayed, I authorize the State of Arkansas to disclose to my ERO, transmitter, and/or ISP the reason(s) for the delay, or when the refund was sent. In addition, by using a computer system and software to prepare and transmit my return electronically, I consent to the disclosure to the State of Arkansas of all information pertaining to my use of the system and software and to the transmission of my tax return electronically.

**Sign Here** ▶ | Signature of Officer | Date | ▶ CFO | Title

### PART III - DECLARATION OF ELECTRONIC RETURN ORIGINATOR (ERO) AND PAID PREPARER

I declare that I have reviewed the above corporation return and that the entries on Form AR8453-C are complete and correct to the best of my knowledge. If I am only a collector, I understand that I am not responsible for reviewing the corporation's return; I declare that Form AR8453-C accurately reflects the data on the return. I have obtained the officer's signature on Form AR8453-C before submitting this return to the State of Arkansas, and have provided the officer with a copy of all forms and information to be filed with the State of Arkansas. If I am also the Paid Preparer, under penalties of perjury I declare that I have examined the above corporations return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. This declaration of Paid Preparer is based on all information of which the preparer has knowledge.

| **ERO'S Use Only** | ERO's signature FROST, PLLC | Date 07/02/24 | Check if also [X] paid preparer | Check if ☐ self-employed | ERO's SSN or PTIN P01751438 |
|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed) FROST, PLLC | | | EIN 71-0817652 | |
| | address and ZIP code 425 WEST CAPITOL, SUITE 3300 LITTLE ROCK, AR 72201 | | | Phone No. (501)376-924 | |

**Under penalties of perjury,** I declare that I have examined the above corporation's return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete. This declaration is based on all information of which I have any knowledge.

| **Paid Preparer's Use Only** | Preparer's signature | Date | Check if ☐ self-employed | Preparer's SSN or PTIN |
|---|---|---|---|---|
| | Firm's name (or yours if self-employed) | | | EIN |
| | address and ZIP code | | | Phone No. |

AR8453-C (R 4/10/2023)
338631 08-23-23

PROSYSTEM

# TAX RETURN FILING INSTRUCTIONS
### COLORADO FORM 112

## FOR THE YEAR ENDING
### DECEMBER 31, 2023

**PREPARED FOR:**

PURE PRAIRIE POULTRY, INC
68808 FORT RD
FAIRFAX, MN  55332

**PREPARED BY:**

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201

**TO BE SIGNED AND DATED BY:**

THE APPROPRIATE CORPORATE OFFICER(S).

**AMOUNT OF TAX:**

| | | |
|---|---|---:|
| TOTAL TAX | $ | 0 |
| LESS: PAYMENTS AND CREDITS | $ | 0 |
| PLUS: OTHER AMOUNT | $ | 0 |
| PLUS: INTEREST AND PENALTIES | $ | 0 |
| NO PAYMENT REQUIRED | $ | |

**OVERPAYMENT:**

NOT APPLICABLE

**MAKE CHECK PAYABLE TO:**

NOT APPLICABLE

**MAIL TAX RETURN AND CHECK (IF APPLICABLE) TO:**

THIS RETURN HAS BEEN PREPARED FOR ELECTRONIC FILING. IF YOU WISH TO
HAVE IT TRANSMITTED TO THE CDOR, PLEASE SIGN, DATE AND RETURN DR
8454 TO OUR OFFICE VIA FROST PORTAL, FAX TO (501)975-0126, OR EMAIL TO
EFILE@FROSTPLLC.COM. WE WILL THEN SUBMIT THE RETURN TO THE CDOR.
DO NOT MAIL A PAPER COPY OF THE RETURN.

**RETURN MUST BE MAILED ON OR BEFORE:**

RETURN DR 8454 TO US BY OCTOBER 15, 2024.

**SPECIAL INSTRUCTIONS:**



DR 8454 (09/28/23)
**COLORADO DEPARTMENT OF REVENUE**
Denver CO 80261-0005
*Tax.Colorado.gov*
**Page 1 of 1**

# State of Colorado Income Tax Declaration
# for Online Electronic Filing

**Do not mail** this form to the IRS or the Colorado
Department of Revenue. **Retain with your records.**

| For Tax Year (MM/DD/YY) | or Fiscal Year beginning (MM/DD/YY) |
|---|---|
| 01/01/23 | |

## Tax Type

| | | | |
|---|---|---|---|
| ☐ Individual Income (DR 0104) | ☒ Corporate Income (DR 0112) | ☐ Partnership/S-Corp Income (DR 0106) | ☐ Fiduciary Income (DR 0105) |

| Taxpayer Last Name or Business Name | First Name or Business DBA if different from Business Name | Middle Initial |
|---|---|---|
| PURE PRAIRIE POULTRY, INC | | |

| Spouse's Last Name (if applicable) | First Name | Middle Initial |
|---|---|---|
| | | |

| Taxpayer SSN or ITIN | Spouse SSN or ITIN (if applicable) | FEIN |
|---|---|---|
| | | 84-2185133 |

| Taxpayer or Business Address | City | State | ZIP |
|---|---|---|---|
| 68808 FORT RD | FAIRFAX | MN | 55332 |

## Part I - Tax Return Information

| | | | |
|---|---|---|---|
| **1.** Total Income from your federal return (see instructions for more information) | **1** | $ | −19,303,680 |
| **2.** Taxable Income (or allowable deduction) from your federal return (see instructions for more information) | **2** | $ | −32,533,300 |
| **3.** Colorado Tax from your Colorado return (see instructions for more information) | **3** | $ | |
| **4.** Colorado Tax Withheld or Payments, from your Colorado return (see instructions or more information) | **4** | $ | |

## Part II - Declaration of Tax Payer

Under penalties of perjury, I declare that the information I have provided for electronic filing and the amounts shown in Part I above agree with the amounts shown on my Federal/Colorado income tax returns, and that said tax returns, statements, schedules and attachments are true, correct, and complete to the best of my knowledge and belief. I understand that I (or my Electronic Return Originator (ERO) if applicable) may be required to provide paper copies of this declaration, my returns, withholding statements, schedules, and attachments upon request by the Colorado Department of Revenue at any time during the period covered by the Colorado statute of limitations.

| Signature | Date (MM/DD/YY) |
|---|---|
| | |

| Spouse's Signature (If Joint Return, Both Must Sign) | Date (MM/DD/YY) |
|---|---|
| | |

## Part III - Declaration of ERO/Preparer/Transmitter

If the transmitter did not prepare the tax return, check here    ☒

If I am not the preparer, I declare only that the amounts shown in Part I above agree with the amounts shown on the taxpayer's Federal/Colorado income tax returns. If I am the preparer, under penalties of perjury I declare that I have reviewed the above taxpayer's Federal/Colorado income tax returns and that the information provided to me by the taxpayer and the amounts shown in Part I above agree with the amounts shown on said tax returns, and that said tax returns, statements, schedules, and attachments are true, correct, and complete to the best of my knowledge and belief. As preparer, I further declare that I have obtained the taxpayer's signature on this form at the time of filing and have provided the taxpayer with copies of all forms and information filed. I also agree to maintain this signed Form (DR 8454) for the period covered by the Colorado statute of limitations, and to provide paper copies of this declaration, said returns, withholding statements, schedules and attachments upon request by the Colorado Department of Revenue at any time during this period.

| ERO's Signature | Preparer Identification Number, Your SSN, or ITIN |
|---|---|
| FROST, PLLC | P01751438 |

| Check if also Preparer ☐ | Date (MM/DD/YY) |
|---|---|
| | 07/02/24 |

340121  11-08-23





DR 0112 (08/22/23)
**COLORADO DEPARTMENT OF REVENUE**
*Tax.Colorado.gov*
Page 1 of 4

230112 11019

# 2023 Colorado C Corporation Income Tax Return

**Do not submit federal return, forms or schedules when filing this return.**   **(0023)**

| Fiscal Year Beginning (MM/DD/23) | | Year Ending (MM/DD/YY) | |
|---|---|---|---|

| Name of Corporation | ● Colorado Account Number |
|---|---|

**PURE PRAIRIE POULTRY, INC**

| Address | ● Federal Employer ID Number |
|---|---|

**68808 FORT RD**        **84-2185133**

| City | State | ZIP |
|---|---|---|

**FAIRFAX**                                        **MN**   **55332**

● ☐  Mark for Final Return          ● ☐  If you are submitting a statement disclosing a listed or reported transaction, mark this box

● **A. Apportionment of Income.** This return is being filed for:

☐ **(42)** A corporation not apportioning income;

☒ **(43)** A corporation engaged in interstate business apportioning income using receipts-factor apportionment (DR 0112RF required);

☐ **(44)** A corporation engaged in interstate business apportioning income using special regulation (DR 0112RF required);

☐ **(46)** A corporation claiming an exemption under P.L. 86-272;

☐ **(47)** Other apportionment method, see instructions concerning the requirement for approval by the Department (fill in below);

● **B. Separate/Consolidated/Combined Filing.** This return is being filed for:

☒ A single corporation filing a separate return;

☐ An affiliated group of corporations electing to file a consolidated report. **Warning:** such election is binding for four years. If your election was made in a prior year, enter the year of election in line below. (Schedule C required);

☐ An affiliated group of corporations required to file a combined return (Schedule C required);

☐ An affiliated group of corporations required to file a combined return that includes another affiliated, consolidated group (Schedule C required);

● Enter the year of election (YYYY)

## Federal Taxable Income

| | | | Round to nearest dollar |
|---|---|---|---|
| **1.** | Federal taxable income from Federal form 1120 or 990-T | ● 1 | −32533300 00 |
| **2.** | Federal taxable income of companies not included in this return | ● 2 | 0 00 |
| **3.** | Net federal taxable income, subtract line 2 from line 1 | 3 | −32533300 00 |

## Additions

| | | | |
|---|---|---|---|
| **4.** | Federal net operating loss deduction | ● 4 | 00 |
| **5.** | Colorado income tax deduction | ● 5 | 00 |



230112 21019

DR 0112 (08/22/23)
**COLORADO DEPARTMENT OF REVENUE**
*Tax.Colorado.gov*
**Page 2 of 4**

**Form 112**



| Name | Account Number | |
|---|---|---|
| PURE PRAIRIE POULTRY, INC | | |

| | | | | |
|---|---|---|---:|---|
| **6.** | Other additions, submit explanation | ● 6 | | 00 |
| **7.** | Sum of lines 3 through 6 | 7 | −32533300 | 00 |

## Subtractions

| | | | | |
|---|---|---|---:|---|
| **8.** | Exempt federal interest | ● 8 | | 00 |
| **9.** | Excludable foreign source income | ● 9 | | 00 |
| **10.** | Colorado Marijuana Business Deduction | ● 10 | | 00 |
| **11.** | Other subtractions, explanation required below | ● 11 | | 00 |

Explain:

| | | | | |
|---|---|---|---:|---|
| **12.** | Sum of lines 8 through 11 | 12 | | 00 |

## Taxable Income

| | | | | |
|---|---|---|---:|---|
| **13.** | Modified federal taxable income, subtract line 12 from line 7 | 13 | −32533300 | 00 |
| **14.** | Colorado taxable income before net operating loss deduction | ● 14 | −1,875,219 | 00 |

**15.** Colorado net operating loss deduction: (see instructions)

| | | | | |
|---|---|---|---:|---|
| **(a)** Colorado net operating losses carried forward from tax years beginning before January 1, 2018 | ● 15(a) | | 00 | |
| **(b)** Subtract line 15(a) from line 14, if zero skip to 15(d) | 15(b) | | 00 | |
| **(c)** Colorado net operating losses carried forward from tax years beginning on or after January 1, 2018 | ● 15(c) | | 00 | |
| **(d)** Colorado net operating loss deduction, sum of (a) and (c) | 15(d) | | | 00 |
| **16.** Carryforward deduction from Income Tax Year 2021, subtractions from HB21-1002 (see instructions) | ● 16 | | | 00 |
| **17.** Colorado taxable income, subtract the sum of lines 15(d) and 16 from line 14 | 17 | −1,875,219 | | 00 |
| **18** Tax, 4.4% of the amount on line 17 | ● 18 | 0 | | 00 |

## Credits

| | | | | |
|---|---|---|---:|---|
| **19.** | Sum of nonrefundable credits from line 26B, form DR 0112CR (the sum of lines 19, 20, and 21 cannot exceed tax on line 18.) You must submit the DR 0112CR with your return. | ● 19 | | 00 |
| **20.** | Non-refundable Enterprise Zone credits used - as calculated, or from the DR 1366 line 85 (the sum of lines 19, 20, and 21 cannot exceed tax on line 18). You must submit the DR 1366 with your return. | ● 20 | | 00 |
| **21.** | Strategic capital tax credit from DR 1330 line 8b, the sum of lines 19, 20, and 21 cannot exceed line 18, you must submit the DR 1330 with your return. | ● 21 | | 00 |
| **22.** | Net tax, sum of lines 19, 20, and 21. Subtract that sum from line 18. | 22 | 0 | 00 |
| **23.** | Recapture of prior year credits | ● 23 | | 00 |



230112 31019

DR 0112 (08/22/23)
**COLORADO DEPARTMENT OF REVENUE**
*Tax.Colorado.gov*
**Page 3 of 4**

**Form 112**



| Name | Account Number |
|------|----------------|
| PURE PRAIRIE POULTRY, INC | |

| | | | |
|---|---|---|---|
| 24. Sum of lines 22 and 23 | **24** | 0 | 00 |
| 25. Estimated tax, extension payments, and credits | ● **25** | | 00 |
| 26. W-2G Withholding from lottery winnings, you must submit the W-2G(s) with your return. | ● **26** | | 00 |
| 27. Gross Conservation Easement Credit from the DR 1305G line 33, you must submit the DR 1305G with your return. | ● **27** | | 00 |
| 28. Innovative Motor Vehicle and Innovative Truck Credit from form DR 0617, you must submit the DR 0617(s) with your return. | ● **28** | | 00 |
| 29. Business Personal Property Credit: Use the worksheet in the 112 book instructions to calculate, you must submit copy of assessor's statement with your return. | ● **29** | | 00 |
| 30. Renewable Energy Tax Credit from form DR 1366 line 86, you must submit the DR 1366 with your return. | ● **30** | | 00 |
| 31. SALT Parity Act Credit (see instructions). | ● **31** | | 00 |
| 32. Credit for conversion costs to an employee-owned business model. You must submit the certificate from the Office of Economic Development with your return. | ● **32** | | 00 |
| 33. Alternative Transportation Options Credit. | ● **33** | | 00 |
| 34. Refundable Residential Energy Storage Systems Credit (assigned to you by the building owner) from line 10 of DR 1307, which you must submit with your return. | ● **34** | | 00 |
| 35. Refundable Heat Pump Credit (assigned to you by the building owner) from line 8 of DR 1322, which you must submit with your return. | ● **35** | | 00 |
| 36. Sum of lines 25 through 35 | **36** | | 00 |
| 37. Net tax due. Subtract line 36 from line 24 | **37** | | 00 |
| 38. Penalty | ● **38** | | 00 |
| 39. Interest | ● **39** | | 00 |
| 40. Estimated tax penalty due | ● **40** | | 00 |
| 41. Total due. Enter the sum of lines 37 through 40 | ● **41** | | |
| 42. Overpayment, subtract line 24 from line 36 | **42** | | 00 |
| 43. Amount from line 42 to carry forward to the next year's estimated tax | ● **43** | | 00 |
| 44. Amount from line 42 to be refunded | ● **44** | | 00 |

**Direct Deposit**

Routing Number [ ][ ][ ][ ][ ][ ][ ][ ][ ]   Type: ☐ Checking   ☐ Savings

Account Number [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

The State may convert your check to a one-time electronic banking transaction. Your bank account may be debited as early as the same day received by the State. If converted, your check will not be returned. If your check is rejected due to insufficient or uncollected funds, the Department of Revenue may collect the payment directly from your bank account electronically.

File and pay at: *Colorado.gov/RevenueOnline or*
**Mail and Make Checks Payable to:**   Colorado Department of Revenue
Denver, CO 80261-0006



230112 41019

DR 0112 (08/22/23)
**COLORADO DEPARTMENT OF REVENUE**
*Tax.Colorado.gov*
**Page 4 of 4**

**Form 112** ▮

| Name | Account Number |
|---|---|
| PURE PRAIRIE POULTRY, INC | |

**C.** The corporation's books are in care of:

| Last Name | First Name | Middle Initial | Phone Number |
|---|---|---|---|
| COMPANY | THE | | |

| Address | City | State | ZIP |
|---|---|---|---|
| 68808 FORT RD | FAIRFAX | MN | 55332 |

**D.** Business code number per federal return (NAICS)

• 112300

**E.** Year corporation began doing business in Colorado

•

**F.** Do you want to allow the paid preparer shown below to discuss this return and any related information with the Colorado Department of Revenue? See the instructions.

• [X] Yes    [ ] No

**G.** Kind of business in detail
112300

**H.** Has the Internal Revenue Service made any adjustments in the corporation's income or tax or have you filed amended federal income tax returns at any time during the last four years?

• [ ] Yes    [ ] No

If yes, for which year(s)? (YYYY)

Did you file amended Colorado returns to reflect such changes or submit copies of the Federal Agent's reports?

• [ ] Yes    [ ] No

| Last Name of person or firm preparing return | First Name | Middle Initial |
|---|---|---|
| JOHNSON | DUSTIN | |

| Address of person or firm preparing return | Phone Number |
|---|---|
| 425 WEST CAPITOL, SUITE 3300 | (501)376-9241 |

| City | State | ZIP |
|---|---|---|
| LITTLE ROCK | AR | 72201 |

Under penalties of perjury in the second degree, I declare that I have examined this return and to the best of my knowledge is true, correct and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

| Signature or Title of Officer | Date (MM/DD/YY) |
|---|---|
| CFO | |

**Do Not Submit Federal Return, Forms or Schedules when Filing this Return**

---

If you are filing this return **with** a check or payment, please mail the return to:

COLORADO DEPARTMENT OF REVENUE
Denver, CO 80261-000**6**

If you are filing this return **without** a check or payment please mail the return to:

COLORADO DEPARTMENT OF REVENUE
Denver, CO 80261-000**5**

These addresses and ZIP codes are exclusive to the Colorado Department of Revenue, so a street address is not required.



DR 0112RF (08/15/23)
**COLORADO DEPARTMENT OF REVENUE**
*Tax.Colorado.gov*
**Page 1 of 2**

230112RF11019

# 2023 Schedule RF -
# Apportionment Schedule

Complete this form in accordance with section **39-22-303.6 C.R.S.,** and the regulations thereunder.

| Name | | Account Number | |
|---|---|---|---|
| PURE PRAIRIE POULTRY, INC | | 84-2185133 | |

| | | ● Colorado | ● Everywhere |
|---|---|---|---|
| **1.** Total modified federal taxable income from the DR 0112 line 13 **1** | | | −32533300 |

**Apportionable Income Apportioned to Colorado By Use of the Receipts Factor**
Do not include foreign source income modified out on the DR 0112 line 9.

| | | ● Colorado | ● Everywhere |
|---|---|---|---|
| **2.** Gross receipts from the sale of tangible personal property ● **2** | | 1,109,992 | 19,257,475 |
| **3.** Gross receipts from the sale of services ● **3** | | | |
| **4.** Gross receipts from the sale, rental, lease, or license of real property ● **4** | | | |
| **5.** Gross receipts from the rental, lease, or license of tangible personal property ● **5** | | | |
| **6.** Gross receipts from the sale, rental, lease,or license of intangible property ● **6** | | | |
| **7.** Distributive share of partnership factors ● **7** | | | |
| **8.** Total receipts (total of lines 2 through 7 in each column) **8** | | 1,109,992 | 19,257,475 |
| **9.** Line 8 (Colorado) divided by line 8 (Everywhere) **9** | | 5.7640 | |

**Complete Lines 10 and 13 only if nonapportionable income is being directly allocated. If all income is being treated as apportionable income, enter 0 (Zero) on Lines 10 and 13.**

**10.** Less income directly allocable to any state, including Colorado

| **Nonapportionable Income Only** | **(a)** Net rents and royalties from real or tangible property ● | |
|---|---|---|
| | **(b)** Capital gains and losses ● | |
| | **(c)** Interest and dividends ● | |
| | **(d)** Patents and copyright royalties ● | |
| | **(e)** Other nonapportionable income ● | |
| | **(f)** Total income directly allocable (add lines (a) through (e)) **10** | 0 |

| **11.** Modified federal taxable income subject to apportionment, line 1 less line 10 **11** | −32,533,300 |
|---|---|
| **12.** Income apportioned to Colorado, line 9 multiplied by line 11 **12** | −1,875,219 |

**Do not submit federal return, forms or schedules when filing this return.**

DR 0112RF (08/15/23)
**COLORADO DEPARTMENT OF REVENUE**
*Tax.Colorado.gov*
**Page 2 of 2**

230112RF21019

| Name | Account Number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

**13.** Add income directly allocable to Colorado:

|  |  |  |
|---|---|---|
| **Nonapportionable Income Only** | **(a)** Net rents and royalties from real or tangible property ● |  |
|  | **(b)** Capital gains and losses ● |  |
|  | **(c)** Interest and dividends ● |  |
|  | **(d)** Patents and copyright royalties ● |  |
|  | **(e)** Other nonapportionable income ● |  |
|  | **(f)** Total income directly allocable to Colorado (add lines (a) through (e)) **13** | 0 |

**14.** Total income apportioned and allocated to Colorado, sum of lines 12 and 13(f). Enter here and on the DR 0112 line 14     **14**     −1,875,219

**15.** ☐ Pursuant to **§39-22-303.6(8) C.R.S.**, taxpayer elects to treat all income as apportionable income for the tax year covered by this return

340222 09-12-23

**SCHEDULE D**
**(Form 1120)**

Department of the Treasury
Internal Revenue Service

**Capital Gains and Losses**

Attach to Form 1120, 1120-C, 1120-F, 1120-FSC, 1120-H, 1120-IC-DISC, 1120-L,
1120-ND, 1120-PC, 1120-POL, 1120-REIT, 1120-RIC, 1120-SF, or certain Forms 990-T.
Go to www.irs.gov/Form1120 for instructions and the latest information.

OMB No. 1545-0123

**2023**

| Name | Employer identification number |
|------|-------------------------------|
| PURE PRAIRIE POULTRY, INC | 84-2185133 |

Did the corporation dispose of any investment(s) in a qualified opportunity fund during the tax year? ................................. ☐ Yes ☒ No
If "Yes," attach Form 8949 and see its instructions for additional requirements for reporting your gain or loss.

### Part I   Short-Term Capital Gains and Losses - Assets Held One Year or Less

| See instructions for how to figure the amounts to enter on the lines below.<br><br>This form may be easier to complete if you round off cents to whole dollars. | (d)<br>Proceeds<br>(sales price) | (e)<br>Cost<br>(or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part I, line 2, column (g) | (h) Gain or (loss)<br>Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **1a** Totals for all short-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 1b ................. | | | | |
| **1b** Totals for all transactions reported on Form(s) 8949 with **Box A** checked ......... | | | | |
| **2** Totals for all transactions reported on Form(s) 8949 with **Box B** checked ......... | | | | |
| **3** Totals for all transactions reported on Form(s) 8949 with **Box C** checked ......... | | | | |

| | | |
|---|---|---|
| **4** Short-term capital gain from installment sales from Form 6252, line 26 or 37 ................................. | **4** | |
| **5** Short-term capital gain or (loss) from like-kind exchanges from Form 8824 ................................. | **5** | |
| **6** Unused capital loss carryover (attach computation) ................................. | **6** | ( ) |
| **7** Net short-term capital gain or (loss). Combine lines 1a through 6 in column h ................................. | **7** | |

### Part II   Long-Term Capital Gains and Losses - Assets Held More Than One Year

| See instructions for how to figure the amounts to enter on the lines below.<br><br>This form may be easier to complete if you round off cents to whole dollars. | (d)<br>Proceeds<br>(sales price) | (e)<br>Cost<br>(or other basis) | (g) Adjustments to gain or loss from Form(s) 8949, Part II, line 2, column (g) | (h) Gain or (loss)<br>Subtract column (e) from column (d) and combine the result with column (g) |
|---|---|---|---|---|
| **8a** Totals for all long-term transactions reported on Form 1099-B for which basis was reported to the IRS and for which you have no adjustments (see instructions). However, if you choose to report all these transactions on Form 8949, leave this line blank and go to line 8b ................. | | | | |
| **8b** Totals for all transactions reported on Form(s) 8949 with **Box D** checked ......... | | | | |
| **9** Totals for all transactions reported on Form(s) 8949 with **Box E** checked ......... | | | | |
| **10** Totals for all transactions reported on Form(s) 8949 with **Box F** checked ......... | | | | |

| | | |
|---|---|---|
| **11** Enter gain from Form 4797, line 7 or 9 ................................. | **11** | 7,432. |
| **12** Long-term capital gain from installment sales from Form 6252, line 26 or 37 ................................. | **12** | |
| **13** Long-term capital gain or (loss) from like-kind exchanges from Form 8824 ................................. | **13** | |
| **14** Capital gain distributions ................................. | **14** | |
| **15** Net long-term capital gain or (loss). Combine lines 8a through 14 in column h ................................. | **15** | 7,432. |

### Part III   Summary of Parts I and II

| | | |
|---|---|---|
| **16** Enter excess of net short-term capital gain (line 7) over net long-term capital loss (line 15) ................................. | **16** | |
| **17** Net capital gain. Enter excess of net long-term capital gain (line 15) over net short-term capital loss (line 7) ................................. | **17** | 7,432. |
| **18** Add lines 16 and 17. Enter here and on Form 1120, page 1, line 8, or the applicable line on other returns ................................. | **18** | 7,432. |

**Note:** If losses exceed gains, see *Capital Losses* in the instructions.

LHA   For Paperwork Reduction Act Notice, see the Instructions for Form 1120.

Schedule D (Form 1120) 2023

321051
12-26-23

10440702 787737 51010.00                    2023.04000 PURE PRAIRIE POULTRY, INC 51010.01

# TAX RETURN FILING INSTRUCTIONS
IOWA FORM IA 1120

# FOR THE YEAR ENDING
DECEMBER 31, 2023

---

**PREPARED FOR:**

PURE PRAIRIE POULTRY, INC
68808 FORT RD
FAIRFAX, MN  55332

---

**PREPARED BY:**

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201

---

**TO BE SIGNED AND DATED BY:**

THE APPROPRIATE CORPORATE OFFICER(S).

---

**AMOUNT OF TAX:**

| | | |
|---|---|---|
| TOTAL TAX | $ | 0 |
| LESS: PAYMENTS AND CREDITS | $ | 0 |
| PLUS: OTHER AMOUNT | $ | 0 |
| PLUS: INTEREST AND PENALTIES | $ | 0 |
| NO PAYMENT REQUIRED | $ | |

---

**OVERPAYMENT:**

NOT APPLICABLE

---

**MAKE CHECK PAYABLE TO:**

NOT APPLICABLE

---

**MAIL TAX RETURN AND CHECK (IF APPLICABLE) TO:**

THIS RETURN HAS BEEN PREPARED FOR ELECTRONIC FILING. IF YOU WISH TO
HAVE IT TRANSMITTED TO THE IOWA DOR, PLEASE SIGN, DATE AND RETURN IA
8453-C TO OUR OFFICE VIA FROST PORTAL, FAX TO (501)975-0126, OR EMAIL TO
EFILE@FROSTPLLC.COM. WE WILL THEN SUBMIT THE RETURN TO THE IOWA
DOR. DO NOT MAIL A PAPER COPY OF THE RETURN.

---

**RETURN MUST BE MAILED ON OR BEFORE:**

RETURN IA 8453-C TO US BY OCTOBER 31, 2024.

---

**SPECIAL INSTRUCTIONS:**

**Iowa Department of**
# REVENUE

**2023 IA 1120**
Iowa Corporation Income Tax Return
tax.iowa.gov

## Step 1

Tax Period

▶ 010123          to  ▶ 123123

Amended Return    Short Period

Check the box if:    ▶          ▶

Legal Name                                    Doing Business As Name

▶ PURE PRAIRIE POULTRY, INC              ▶

Address

▶ 68808 FORT RD

Address 2                                      Federal Employer
                                               Identification Number (FEIN)
▶                                        ▶ 84-2185133

City                  State    ZIP          NAICS Code          County No.

▶ FAIRFAX           ▶ MN    ▶ 55332      ▶ 112300          ▶ 34

**Is this the first or final return?**

|  | New Business | Successor | Entering Iowa |
|---|---|---|---|
| First Return | ▶ | ▶ | ▶ |

|  | Reorganized | Merged | Dissolved | Withdrawn | Bankruptcy | Other |
|---|---|---|---|---|---|---|
| Final Return | ▶ | ▶ | ▶ | ▶ | ▶ | ▶ |

## Step 2 Filing Status

|  | Corporation | Limited Liability Company | Association | Government | Other |
|---|---|---|---|---|---|
| Type of Entity | ▶ X | ▶ | ▶ | ▶ | ▶ |

|  | Separate Iowa/ Separate Federal | Separate Iowa/ Consolidated Federal | Consolidated Iowa/ Consolidated Federal |
|---|---|---|---|
| Filing Status | ▶ X | ▶ | ▶ |

|  | Regular Corporation | Cooperative | UBIT |
|---|---|---|---|
| Type of Return | ▶ X | ▶ | ▶ |

|  | Yes | No |  |
|---|---|---|---|
| Is this an inactive corporation? | ▶ | ▶ X | Prior period if yes (MM/DD/YY): |
| Was federal income or tax changed for any prior period? | ▶ | ▶ X | ▶ |
| Do you have property in Iowa? | ▶ X | ▶ | |
| Do you have employees in Iowa? | ▶ X | ▶ | |

42-001a (07/14/2023)   CCH        351401   11-01-23



**2023 IA 1120, page 2**

Corporation Name

▶ PURE PRAIRIE POULTRY, INC

FEIN

▶ 84-2185133

**Enter Dollars and Cents**

**Step 3
Net Income
and
Additions
to Income**

1. Taxable Income from federal return. See instructions ............... ▶ 1 -32,533,300.00

2. Total additions from Schedule A ............... ▶ 2

3. Net income after additions.
   Add lines 1 and 2 ............... ▶ 3 -32,533,300.00

**Step 4
Reductions
to Income**

4. Total reductions from Schedule A ............... ▶ 4

5. Net income after reductions. Subtract line 4 from line 3 ............... ▶ 5 -32,533,300.00

**Step 5
Taxable
Income**

6. Nonbusiness income from Schedule D, line 17 ............... ▶ 6

7. Income subject to apportionment. Subtract line 6 from line 5 ............... ▶ 7 -32,533,300.00

8. Iowa percentage from Schedule E. See instructions ............... ▶ 8 15.635200 %

9. Income apportioned to Iowa. Multiply line 7 by line 8 ............... ▶ 9 -5,086,647.00

10. Iowa nonbusiness income from Schedule D, line 8 ............... ▶ 10

11. Income before Net Operating Loss. Add lines 9 and 10 ............... ▶ 11 -5,086,647.00

12. Net Operating Loss carryforward for losses incurred prior to 2023 ............... ▶ 12

13. Income subject to tax. Subtract line 12 from line 11.
    Do not enter an amount below $0 ............... ▶ 13 0.00

Check here if the corporation or any member of the consolidated ▶
group is claiming P.L.86-272 protection in Iowa

**Step 6
Tax,
Credits and
Payments**

14. Total tax. For tax rates, see page 6. **Check box if tax is annualized.** ▶ ▶ 14

15. Credits from Schedule C1, line 5. Do not include estimated tax credit ............... ▶ 15

16. Payments from Schedule C2, line 4 ............... ▶ 16

17. Total credits and payments. Add lines 15 and 16 ............... ▶ 17

18. Net amount. Subtract line 17 from line 14 ............... ▶ 18 0.00



**2023 IA 1120, page 3**

Corporation Name                                           FEIN

▶ PURE PRAIRIE POULTRY, INC                    ▶ 84-2185133

**Step 7
Balance Due**

19. Tax due if line 18 is greater than $0 ............................ ▶ 19

20. Penalty; underpayment of estimated tax. Include IA 2220 .............. ▶ 20                    0.00

21. Filing and payment penalties ................................ ▶ 21

22. Interest ......................................... ▶ 22

23. Total amount due. Add lines 19 through 22.
    Pay electronically or submit payment with voucher ................ ▶ 23

**Step 8
Overpayment**

24. Overpayment if line 18 is less than $0 .......................... ▶ 24

25. Credit to next period's estimated tax .......................... ▶ 25

26. Refund requested. Subtract line 25 from line 24 .................. ▶ 26

26a. Routing number          26b.  Savings   Checking    26c. Account number

▶                            ▶          ▶            ▶

**Schedule A - Additions and Reductions**

   Type of Income                                          Additions            Reductions

1.  RESERVED FOR FUTURE USE .............................. ▶ 1
2.  RESERVED FOR FUTURE USE .............................. ▶ 2

3.  Capital Loss Adjustments for filing status 2 or 3 ............. ▶ 3
4.  Contribution Adjustments for filing status 2 or 3 ............. ▶ 4

5.  RESERVED FOR FUTURE USE .............................. ▶ 5
6.  Interest Expense Adjustments from IA 163 ................. ▶ 6

7.  Qualifying COVID-19 Grants ........................... ▶ 7
8.  Expensing/Depreciation Adjustment from IA 4562A ........... ▶ 8

9.  Tax Exempt Interest and Dividends. See instructions .......... ▶ 9
10. RESERVED FOR FUTURE USE .............................. ▶ 10
11. RESERVED FOR FUTURE USE .............................. ▶ 11

12. RESERVED FOR FUTURE USE .............................. ▶ 12
13. Foreign Dividend Exclusion from Schedule B below ........... ▶ 13

14. Federal Securities Interest and Dividends. See instructions ...... ▶ 14
15. Nonconformity Adjustments from IA 101 .................. ▶ 15

16. All-source PTE modifications from Iowa K-1s ............... ▶ 16



Corporation name

▶ PURE PRAIRIE POULTRY, INC

FEIN

▶ 84-2185133

**Type of Income**

| | | | Additions | Reductions |
|---|---|---|---|---|
| 17. | Pre 2023 federal NOL addback. See Instructions | ▶ 17 | | |
| 18. | Charitable Contribution Adjustment from Iowa Credit | ▶ 18 | | |
| 19. | Other. Must include schedule | ▶ 19 | | |
| 20. | Totals. Add lines 1-19 | ▶ 20 | | |

Enter total on page 2, line 2.   Enter total on page 2, line 4.

**Schedule B - Foreign Dividend Exclusion**

**Type of Dividend Income**

| | | | Total Dividend | | Exclusion |
|---|---|---|---|---|---|
| 1. | Less than 20% owned | ▶ 1 | | x 50% | |
| 2. | 20% owned | ▶ 2 | | x 65% | |
| 3. | Small Business Investment Company | ▶ 3 | | x 100% | |
| 4. | Qualifying Dividends | ▶ 4 | | x 100% | |
| 5. | Total. Add lines 1 through 4. Enter on Schedule A, line 13 | ▶ 5 | | | |

**Schedule C1 - Credits**

| | | | Amount |
|---|---|---|---|
| 1. | Fuel Credit. Include IA 4136 | ▶ 1 | |
| 2. | Total Nonrefundable Credits. Include IA 148 | ▶ 2 | |
| 3. | Total Refundable Credits, excluding Fuel Credit. Include IA 148 | ▶ 3 | |
| 4. | Total Composite and PTET Credits. Include Schedule CC | ▶ 4 | |
| 5. | Total Credits. Add lines 1-4. Enter on page 2, line 15 | ▶ 5 | |

**Schedule C2 - Payments**

| | | | | Amount |
|---|---|---|---|---|
| 1. | Estimated Tax Payments | | | |
| | a. | Credit from prior period | ▶ a | |
| | b. | First quarter | ▶ b | |
| | c. | Second quarter | ▶ c | |
| | d. | Third quarter | ▶ d | |
| | e. | Fourth quarter | ▶ e | |
| | f. | Other | ▶ f | |
| 2. | Voucher Payment | | ▶ 2 | |
| 3. | Other Payments. Include statement | | ▶ 3 | |
| 4. | Total. Add lines 1-3. Enter on page 2, line 16 | | ▶ 4 | |




**2023 IA 1120, page 5**

| Corporation Name | FEIN |
|---|---|
| ▶ PURE PRAIRIE POULTRY, INC | ▶ 84-2185133 |

**Additional Information**

1. Year business was started in Iowa: ▶ 2022

2. Last period filed as S corporation (if any): ▶ _____ to ▶ _____

3. Information from the prior period Iowa return:

| Corporation Name | FEIN |
|---|---|
| ▶ PURE PRAIRIE POULTRY, IN | ▶ 84-2185133 |

**Income before net operating loss**

▶ -16,596,680.00

4. If part of a federal consolidated group, please provide information about the corporate parent:

| Corporation Name | FEIN |
|---|---|
| ▶ _____ | ▶ _____ |

**Schedule E - Business Activity Ratio (BAR)**
(see instructions)

| Type of Income | | Column A Iowa Receipts | Column B Receipts Everywhere |
|---|---|---|---|
| 1a. Gross Receipts from sale of tangible personal property | ▶ a | 473,017.00 | 19,257,475.00 |
| 1b. Gross receipts from performance of services | ▶ b | | |
| 1c. Gross receipts from railroad, trucking, aviation, or other transportation activities | ▶ c | | |
| 1d. Gross receipts from telecommunication services | ▶ d | | |
| 1e. Gross receipts from radio and television broadcasts | ▶ e | | |
| 1f. Gross receipts from printed and electronic media | ▶ f | | |
| 1g. Gross receipts from utilities services | ▶ g | | |
| 1h. Gross receipts from financial activities | ▶ h | | |
| 2. Net Dividends. (see instructions) | ▶ 2 | | |
| 3. Exempt Interest from Schedule A, line 9 | ▶ 3 | | |
| 4. Accounts Receivable Interest | ▶ 4 | | |
| 5. Other Interest | ▶ 5 | | |
| 6. Rent | ▶ 6 | | |
| 7. Royalties | ▶ 7 | | |
| 8. Capital Gain | ▶ 8 | | |
| 9. Ordinary Gain | ▶ 9 | | |
| 10. Partnership Gross Receipts. Include schedule | ▶ 10 | | |
| 11. Other. Must include schedule | ▶ 11 | 3,008,282.00 | 3,008,282.00 |
| 12. Total. Add lines 1a through 11 | ▶ 12 | 3,481,299.00 | 22,265,757.00 |

13. Divide column A total by column B total. Enter % on page 2, line 8.
   Round to six decimal places and enter as a percentage. For example, 0.1234505 becomes 12.3451%   ▶ 13   15.6352   %



**2023 IA 1120, page 6**

Corporation Name

▶ PURE PRAIRIE POULTRY, INC

FEIN

▶ 84-2185133

A complete copy of your federal return, as filed with the Internal Revenue Service, must be filed with this return. For federal consolidated filers, you must include pages 1-5 of your consolidated federal return, consolidating income statements, federal 851 (for status 3), Iowa Schedule H and any other forms related to the Iowa return.

**Third Party Disclosure Designee. Do you want to allow an individual to discuss this return with the Department? See instructions.**

Designee's Name

▶

Mailing address

▶

ID Number (optional)

▶

City

▶

State

▶

ZIP

▶

Designee's phone number

▶

Email

▶

I, the undersigned, declare under penalties of perjury or false certificate, that I have examined this return, and, to the best of my knowledge and belief, it is true, correct, and complete. I declare that I am authorized to act on behalf of the taxpayer, and will only act within my authority

Officer's name (Printed)

▶ GEORGE PEICHEL

Title

▶ CFO

Phone

▶ 612-209-6740

Officer's signature

**Sign Here** ▶

Date

▶



Signature of preparer if other than taxpayer

**Sign Here** ▶ DUSTIN JOHNSON

Date

▶ 07/02/24

Signature must be signed by hand or via a digital signature with a digital certificate. Stamped or typed signatures are not accepted.

Name of preparer or preparer's employer

▶ FROST, PLLC

Preparer's phone number

▶ (501)376-9241

Address of preparer or preparer's employer

▶ 425 WEST CAPITOL, SUITE 3300

Preparer's ID

▶ P01751438

City

▶ LITTLE ROCK

State

▶ AR

ZIP

▶ 72201

**Tax Rates**

If income shown on page 2, line 13 is:

- $100,000 or less; multiply line 13 by 5.5% (.055).
- Over $100,000; multiply line 13 by 8.4% (.084) and subtract $2,900

If annualizing, include a schedule showing computation.

**To obtain schedules and forms:**

Website: tax.iowa.gov

**Tax Research Library:** itrl.idr.iowa.gov/

**Questions:**

515-281-3114 or 800-367-3388

**Email:** idr@iowa.gov

**eFile or mail your return to:**

Corporation Tax Return Processing

Iowa Department of Revenue
PO Box 10468
Des Moines, IA 50306-0468




**Iowa Department of**
# REVENUE

**IA 124**
Net Operating Loss (NOL) Adjustment Schedule

tax.iowa.gov

Legal Name(s): **PURE PRAIRIE POULTRY, INC**          Tax period (MM/DD/YYYY): **12/31/23**

Federal Employer Identification Number (FEIN) or Social Security Number: **84-2185133**

Individual (IA 1040), fiduciary (IA 1041), corporate income (IA 1120), and franchise (IA 1120F) filers must use this form to calculate their current year NOL adjustments for tax years beginning on or after January 1, 2023.

## Part I: Pre-2023 Federal NOL Addback

Taxpayers are required to add back any federal NOL carried forward from a tax year beginning before January 1, 2023, to the extent it is deducted in the current year. Use Part I to calculate the current year addback and track the amount remaining to addback for future years.

| | | |
|---|---|---:|
| 1. | Pre-2023 federal NOL carryover to the current year. See instructions ............................... 1. | 16,702,144. |
| 2. | Current year federal NOL deduction. See instructions ............................... 2. | 0. |
| 3. | Enter the lesser of lines 1 and 2. This is your current year pre-2023 federal NOL addback. See instructions ............................... 3. | |
| 4. | Subtract line 3 from line 1. This is your pre-2023 federal NOL carryover to next year for Iowa purposes. Enter on next year's IA 124, Part I, line 1 ............................... 4. | 16,702,144. |

## Part II: Pre-2023 Iowa NOL Deduction

Taxpayers may deduct available Iowa NOL carried forward from a tax year beginning before January 1, 2023, to the extent it is deducted in the current year. Use Part II to calculate the current year Iowa carryforward deduction and track the amount remaining to deduct for future years.

| | | |
|---|---|---:|
| 1. | Beginning balance. See instructions ............................... 1. | |
| 2. | Iowa NOL that expired at the end of last tax year ............................... 2. | 16,596,680. |
| 3. | Iowa NOL available to deduct. Subtract line 2 from line 1 ............................... 3. | -16,596,680. |
| 4. | Enter income attributable to Iowa. If zero or less, enter 0 ............................... 4. | 0. |
| 5. | Current year deduction. Enter the lesser of lines 3 and 4. This is your current year Iowa NOL deduction. See instructions on where to report this amount ............................... 5. | -16,596,680. |
| 6. | Ending balance. Subtract line 5 from line 3 ............................... 6. | |

Include this form with your tax return.

41-177a (09/08/2023) CCH          351451 05-07-24





**Iowa Department of**
# REVENUE

**2023 IA 2220 Underpayment of Estimated Tax**
Corporations, S Corporations, Financial Institutions, and Partnerships

tax.iowa.gov

Name: PURE PRAIRIE POULTRY, INC

Federal Employer Identification Number (FEIN): 84-2185133          Tax Period: 12/31/23

### Computation of Underpayment

This form must be included with your return, even if no underpayment penalty is due.

**Note:** If you meet any of the exceptions that avoid the underpayment penalty for all quarters (see instructions), skip lines 1 through 8, and go directly to line 9.

| | | |
|---|---|---|
| 1. 2023 tax from IA 1120, line 14, IA 1120F, line 12, IA 1120S, lines 35 and 38, or IA 1065, line 29 | 1. | 0. |
| 2. Credits from IA 1120, line 15, IA 1120F, line 13 and 15, IA 1120S, lines 36 and 39, or IA 1065, line 30 | 2. | 0. |
| 3. Balance. Subtract line 2 from line 1 | 3. | 0. |

| | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter |
|---|---|---|---|---|
| 4. Enter in columns 1 through 4 the installment dates that correspond to the last day of the 4th, 6th, 9th, and 12th months of your taxable year | 04/30/2023 | 06/30/2023 | 09/30/2023 | 12/31/2023 |
| 5. Enter 25% of line 3 in columns 1 through 4 | 0. | 0. | 0. | 0. |
| 6. (a) Amount paid or credited for each period | 0. | 0. | 0. | 0. |
| 6. (b) Overpayment of previous installment. An overpayment on line 8 in excess of all prior underpayments is to be applied as a credit against the next installment | | 0. | 0. | 0. |
| 7. Total of lines 6(a) and 6(b) | 0. | 0. | 0. | 0. |
| 8. Underpayment: Subtract line 7 from line 5 | 0. | 0. | 0. | 0. |
| Overpayment: Subtract line 5 from line 7 | 0. | 0. | 0. | 0. |

**Exceptions that avoid the underpayment penalty; Exceptions 1 and 2 not applicable for initial year filers.**

| | | | | |
|---|---|---|---|---|
| 9. Total cumulative amount paid or credited from the beginning of the taxable year through the installment dates that correspond to the last day of the 4th, 6th, 9th, and 12th months of your taxable year | | | | |
| | 25% of tax | 50% of tax | 75% of tax | 100% of tax |
| 10. Exception 1: Prior year's tax | | | | |
| 11. Exception 2: Tax on prior | 25% of tax | 50% of tax | 75% of tax | 100% of tax |
| year's income using current year's rates | | | | |
| | 25% of tax | 50% of tax | 75% of tax | 100% of tax |
| 12. Exception 3: Tax on annualized income. Include schedule. | | | | |

**Computation of Underpayment Penalty**

| | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter |
|---|---|---|---|---|
| 13. Enter same installment dates used in line 4 | 04/30/2023 | 06/30/2023 | 09/30/2023 | 12/31/2023 |
| 14. Amount of underpayment from line 8 | | | | |
| 15. Date of payment. See Instructions. | | | | |
| 16. (a) Number of days from due date of installment to date of payment or 12/31/2023, whichever is earlier | | | | |
| 16. (b) Number of days inclusively from 01/01/2024, or due date of installment, whichever is later, to the date of payment or the last day of the 4th month after the close of the tax year, whichever is earlier | | | | |
| 17. (a) 6% per year on the amount shown on line 14, for the number of days shown on line 16(a). See Instructions. | | | | |
| 17. (b) X% per year on the amount shown on line 14 for the number of days shown on line 16(b). See Instructions. | | | | |
| 18. Total of lines 17(a) and 17(b) | | | | |
| 19. Penalty: Add the four columns of line 18 and enter here. Also, show the amount on IA 1120, line 20; IA 1120F, line 19; IA 1120S, line 49; or IA 1065, line 40. | | | | 0. |

351521  09-07-23

45-006a (08/23/2023) CCH



**Iowa Department of**
# REVENUE

**2023 IA 8453-C**
Iowa Corporation Income Tax Declaration for an e-File Return

tax.iowa.gov

For calendar year 2023 or tax year beginning _____ , 2023, ending _____

Name: **PURE PRAIRIE POULTRY, INC**      Federal Employer Identification Number (FEIN): 84-2185133

## Part I   Tax Return Information

| | | |
|---|---|---|
| 1. Net Income after additions (IA 1120, line 3) | 1. | −32,533,300. |
| 2. Income subject to tax (IA 1120, line 13) | 2. | |
| 3. Total tax (IA 1120, line 14) | 3. | |
| 4. Total amount due (IA 1120, line 23) | 4. | |
| 5. Overpayment (IA 1120, line 24) | 5. | |

## Part II   Declaration of Officer (Be sure to keep a copy of the tax return.)

6. [X] I do not want direct deposit or direct debit.

7. [ ] I consent that the corporation's refund be directly deposited as designated below.

[ ] I authorize the Iowa Department of Revenue (IDR) and its designated financial agent to initiate an electronic funds withdrawal (direct debit) entry to the financial institution account indicated below for payment of the corporation's Iowa taxes owed on this return, and the financial institution to debit the entry to this account on _____ (the payment/settlement date). I also authorize the financial institution involved in the processing of the electronic payment of taxes to receive confidential information necessary to answer inquiries and resolve issues related to the payment. This authorization is to remain in full force and effect until I notify the IDR to terminate the authorization. To cancel a payment, I must contact IDR at 515-281-3114 or idreft@iowa.gov. Payment cancellation requests must be received no later than five business days prior to the payment/settlement date. Note: This electronic withdrawal from your bank account will be identified with ACH Company ID 4426004574. If you currently have a debit block on this account, contact your financial institution to request that it allow a withdrawal from your bank account by this ACH Company ID.

Name of financial institution: _____

Routing Number: [ ][ ][ ][ ][ ][ ][ ][ ][ ]    The first two digits must be 01 through 12 or 21 through 32.

Account Number: [ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ][ ]

Type of Account:    Savings [ ]    Checking [ ]

Will this refund go to (or payment come from) an account outside the United States?    Yes [ ]    No [ ]

Under penalties of perjury, I declare that I am an officer of the above corporation and that I have examined the information on this electronic 2023 Iowa corporation income tax return, including any schedules, attachments, and statements, and certify to the best of my knowledge and belief, it is true, correct and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the corporation's electronic income tax return. I consent that this return, including accompanying schedules, attachments, and statements be sent to Iowa Department of Revenue (IDR) through the Internal Revenue Service (IRS) by the Electronic Return Originator (ERO). In addition, by using software to prepare and transmit this return electronically, I consent to the disclosure to Iowa of all information pertaining to the transmission of this tax return electronically. I authorize IDR to inform the ERO and/or transmitter when this electronic return has been accepted. In the event that it is rejected, I authorize IDR to identify the reasons for rejection so that the return can be corrected and retransmitted. If I have filed a balance due return, I understand that if IDR does not receive full and timely payment of its tax liability, the corporation will remain liable for the tax liability and all applicable penalties and interest. I consent that the corporation's refund be directly deposited as designated in Part II and declare that the information shown in Part II is correct. If the processing of this return, refund, or direct debit is delayed, I authorize IDR to disclose to the ERO and/or transmitter the reason(s) for the delay or the date the refund was sent. I understand that this declaration with required attachments must be forwarded upon request to the IDR.

Officer's Signature: _____    Date: _____    Title: **CFO**

## Part III   Declaration of Electronic Return Originator (ERO) and Paid Preparer

I declare that I have reviewed the above corporation's return and that entries on form IA 8453-C are complete and correct to the best of my knowledge. If I am only a collector, I am not responsible for reviewing the return and only declare that this form accurately reflects the data on the return. I have obtained the officer's signature before submitting this return to the IRS. I have provided the officer with a copy of all forms and information to be filed with IDR and have followed all other requirements described in the Iowa Modernized e-File (MeF) Information for e-File Providers publication. I understand that the original form IA 8453-C should not be sent to IDR, but must be retained by the ERO for a period of three years from the due date of the return or the filing date, whichever is later, to which the IA 8453-C relates was filed. I will make a copy available to IDR upon request. If I am a paid preparer, under penalties of perjury, I declare that I have examined the above corporation's return and accompanying schedules, attachments, and statements, and to the best of my knowledge and belief, they are true, correct, and complete. I have based this declaration on all information available to me.

| ERO Signature | _FROST, PLLC_ | Date | Check if also paid preparer [X] | Check if self-employed [ ] | ERO PTIN P01751438 |
|---|---|---|---|---|---|
| Firm's name (or yours if self-employed) | FROST, PLLC | | | FEIN | 71-0817652 |
| Address and ZIP code | 425 WEST CAPITOL, SUITE 3300 LITTLE ROCK, | | | Phone Number | (501)376-9241 |

| Paid Preparer Signature | | Date | Check if self-employed [ ] | | Preparer PTIN |
|---|---|---|---|---|---|
| Firm's name (or yours if self-employed) | | | | FEIN | |
| Address and ZIP code | | | | Phone Number | |

351251  09-15-23

42-009a (07/13/2023) CCH

# 2024 ESTIMATED TAX FILING INSTRUCTIONS
MINNESOTA FORM CORPORATION ESTIMATE

## FOR THE YEAR ENDING
DECEMBER 31, 2024

---

**PREPARED FOR:**

PURE PRAIRIE POULTRY, INC
68808 FORT RD
FAIRFAX, MN  55332

---

**PREPARED BY:**

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201

---

**AMOUNT OF TAX:**

| | | |
|---|---|---:|
| TOTAL ESTIMATED TAX | $ | 700 |
| LESS CREDIT FROM PRIOR YEAR | $ | 290 |
| LESS AMOUNT ALREADY PAID ON 2024 ESTIMATE | $ | 0 |
| BALANCE DUE | $ | 410 |

PAYABLE IN FULL OR IN INSTALLMENTS AS FOLLOWS:

| VOUCHER | AMOUNT | | DUE DATE |
|---|---|---:|---|
| NO. 1 | $ | 0 | MARCH 15, 2024 |
| NO. 2 | $ | 0 | JUNE 17, 2024 |
| NO. 3 | $ | 230 | SEPTEMBER 16, 2024 |
| NO. 4 | $ | 180 | DECEMBER 16, 2024 |

---

**MAIL CHECK PAYABLE TO:**

NOT APPLICABLE

---

**MAIL VOUCHER AND CHECK (IF APPLICABLE) TO:**

MINNESOTA REVENUE
MAIL STATION 1275
ST. PAUL, MN  55146-1275

---

**SPECIAL INSTRUCTIONS:**

**mn** DEPARTMENT
OF REVENUE

## Corporation Estimated Tax Payment

### Pay by Check

If you are not required to pay electronically, you can use this voucher to pay by check.

- Make your check payable to "Minnesota Revenue."
- Print your Minnesota Tax ID number in the memo line of your check.
- Mail your payment and the voucher below to the address on the voucher.

**Note:** Your payment may be delayed if your voucher information is missing or incorrect. When printing the voucher, set your printer to "Actual size" (not "Shrink oversized pages").

### Scan Line

The scan line is the most important part of the voucher. When submitting your voucher make sure the scan line:

- Is printed with 66 digits - characters, symbols, or masking are unacceptable.
- Is not cut off or missing.

### Pay Electronically

- Pay electronically from your bank account. Go to  **www.revenue.state.mn.us**  and type **make a payment** into the Search box. Choose  **Bank Account**  from the menu. We do not charge for this service.
- Pay by credit card or debit card. Go to  **www.revenue.state.mn.us**  and type **make a payment** into the Search box. Choose Credit or Debit Card from the menu. A third party processes these payments and charges a fee for this service.
- Pay by ACH credit transfer through your financial institution. Go to  **www.revenue.state.mn.us**  and type **ACH Credit** into the Search box.

VOUCHER NUMBER 3

359482 09-06-23

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Cut carefully along this line to detach.
Your check authorizes us to make a one-time electronic fund transfer from your account.

1116

**mn** DEPARTMENT
OF REVENUE

**Corporation Estimated Tax Payment**

| | Preparer Tax Identification Number: | P01751438 |
|---|---|---|

PURE PRAIRIE POULTRY, INC
GEORGE PEICHEL        5074267946
68808 FORT RD
FAIRFAX          MN 55332

| | Minnesota Tax ID (required): | 7661203 |
|---|---|---|
| | Federal ID: | 842185133 |
| | Tax-Year End: | 123124 |

Make check payable to:
Minnesota Revenue
Mail Station 1275, St. Paul, MN 55146-1275

**Amount of Check:**          230 00

0100000000000000000001231240000076612035000000000000000000001116



# DEPARTMENT OF REVENUE

## Corporation Estimated Tax Payment

---

## Pay by Check

If you are not required to pay electronically, you can use this voucher to pay by check.

- Make your check payable to "Minnesota Revenue."
- Print your Minnesota Tax ID number in the memo line of your check.
- Mail your payment and the voucher below to the address on the voucher.

**Note:** Your payment may be delayed if your voucher information is missing or incorrect. When printing the voucher, set your printer to "Actual size" (not "Shrink oversized pages").

## Scan Line

The scan line is the most important part of the voucher. When submitting your voucher make sure the scan line:

- Is printed with 66 digits - characters, symbols, or masking are unacceptable.
- Is not cut off or missing.

## Pay Electronically

- Pay electronically from your bank account. Go to **www.revenue.state.mn.us** and type **make a payment** into the Search box. Choose **Bank Account** from the menu. We do not charge for this service.
- Pay by credit card or debit card. Go to **www.revenue.state.mn.us** and type **make a payment** into the Search box. Choose Credit or Debit Card from the menu. A third party processes these payments and charges a fee for this service.
- Pay by ACH credit transfer through your financial institution. Go to **www.revenue.state.mn.us** and type **ACH Credit** into the Search box.

VOUCHER NUMBER 4

359482  09-06-23

---

Cut carefully along this line to detach.
Your check authorizes us to make a one-time electronic fund transfer from your account.

1116

# DEPARTMENT OF REVENUE

**Corporation Estimated Tax Payment**

| | |
|---|---|
| | Preparer Tax Identification Number:    P01751438 |

PURE PRAIRIE POULTRY, INC
GEORGE PEICHEL        5074267946
68808 FORT RD
FAIRFAX            MN 55332

Minnesota Tax ID (required):    7661203

Federal ID:    842185133

Tax-Year End:    123124

Make check payable to:
Minnesota Revenue
Mail Station 1275, St. Paul, MN 55146-1275

Amount of Check:    180 00

010000000000000000000123124000000766120350000000000000000000001116

# TAX RETURN FILING INSTRUCTIONS
MINNESOTA FORM M4

# FOR THE YEAR ENDING
DECEMBER 31, 2023

**PREPARED FOR:**

PURE PRAIRIE POULTRY, INC
68808 FORT RD
FAIRFAX, MN  55332

**PREPARED BY:**

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201

**TO BE SIGNED AND DATED BY:**

NOT APPLICABLE

**AMOUNT OF TAX:**

| | | |
|---|---|---|
| TOTAL TAX | $ | 690 |
| LESS: PAYMENTS AND CREDITS | $ | 1,000 |
| PLUS: OTHER AMOUNT | $ | 0 |
| PLUS: INTEREST AND PENALTIES | $ | 20 |
| OVERPAYMENT | $ | 290 |

**OVERPAYMENT:**

| | | |
|---|---|---|
| CREDIT TO YOUR ESTIMATED TAX | $ | 290 |
| OTHER AMOUNT | $ | 0 |
| REFUNDED TO YOU | $ | 0 |

**MAKE CHECK PAYABLE TO:**

NOT APPLICABLE

**MAIL TAX RETURN AND CHECK (IF APPLICABLE) TO:**

THIS RETURN HAS BEEN PREPARED FOR ELECTRONIC FILING.  IF YOU WISH TO
HAVE IT TRANSMITTED TO THE MDOR, PLEASE CONTACT OUR OFFICE AND WE
WILL SUBMIT YOUR ELECTRONIC RETURN.  DO NOT MAIL THE PAPER COPY TO
THE MDOR.

**RETURN MUST BE MAILED ON OR BEFORE:**

RETURN FEDERAL FORM 8879-CORP TO US BY NOVEMBER 15, 2024.

**SPECIAL INSTRUCTIONS:**

 DEPARTMENT OF REVENUE



# 2023 M4, Corporation Franchise Tax Return

Do not use staples on anything you submit.

Tax year beginning (MM/DD/YYYY) 01 / 01 /2023 and ending (MM/DD/YYYY) 12 / 31 /2023

PURE PRAIRIE POULTRY, INC
Name of Corporation/Designated Filer

842185133
FEIN

7661203
Minnesota Tax ID Number

68808 FORT RD
Mailing Address    ☐ Check if new address

112300
Business Activity Code (from federal)

FAIRFAX
City

MN
State

55332
ZIP Code

Former Name (if changed since 2022 return)

Federal Consolidated Common Parent Name (if different)    FEIN

☐ Check if filing a combined income return    ☐ Check if reporting Tax Position Disclosure (Enclose Form TPD)

**Is this your final C corporation return? If yes, indicate if:**     **Check if a member of the group (place an X in the boxes that apply):**

☐ Withdrawn   ☐ Dissolved   ☐ Merged   ☐ S corp election    ☐ is claiming Public Law 86-272   ☐ is a Co-op   ☐ is in Bankruptcy   ☐ owns a captive insurance company

Has a federal examination been finalized? (list years) _____

Is a federal examination now in progress? (list years) _____

Tax years and expiration date(s) of federal waivers: _____

Report changes to federal income tax within 180 days of final determination. If there is a change in tax, you must report it on Form M4X.

**You must round amounts to nearest whole dollar**

| | | | |
|---|---|---|---|
| 1 | Minnesota tax liability *(from M4T, line 28)* | 1 ■ | 690 |
| 2 | Minnesota Nongame Wildlife Fund donation *(see instructions, pg. 6)* | 2 ■ | |
| 3 | Add lines 1 and 2 | 3 | 690 |
| 4 | Enterprise Zone Credit *(attach Enterprise Zone Credit Form)* | 4 ■ | |
| 5 | Historic Structure Rehabilitation Credit *(attach credit certificate)* | 5 ■ | |
| | Enter National Park Service (NPS) project number: _____ | | |
| 6 | Minnesota backup withholding | 6 ■ | |
| 7 | Amount credited from your 2022 return | 7 ■ | |
| 8 | Total corporate estimated tax payments made for 2023 | 8 ■ | |
| 9 | 2023 extension payment | 9 ■ | 1000 |
| 10 | Add lines 4 through 9 | 10 | 1000 |
| 11 | Tax due. If line 3 is more than line 10, subtract line 10 from line 3 | 11 ■ | |
| 12 | Penalty *(see instructions, pg. 6 and 7)* | 12 ■ | |
| 13 | Interest *(see instructions, pg. 7)* | 13 ■ | |
| 14 | Additional charge for underpayment of estimated tax *(attach Schedule M15C)* | 14 ■ | 20 |

359421  10-03-23

1116

*Continued next page*

## 2023 M4, Page 2



PURE PRAIRIE POULTRY, INC                                    842185133              7661203

Name of Corporation/Designated Filer                          FEIN                   Minnesota Tax ID

**15 AMOUNT DUE.** If you entered an amount on line 11, add lines 11 through 14

Payment Method: ☐ Electronic *(see inst., pg. 3)*, or ☐ Check *(see inst., pg. 3)* ........................... 15 ■ _____

**16** Overpayment. If line 10 is more than the sum of lines 3 and 12 through 14, subtract line 3
and 12 through line 14 from line 10. If line 10 is less than the sum of lines 3 and 12 through 14,
see instructions, pg. 7 ........................................................ 16 ■ _____ 290

**17** Amount of line 16 to be credited to your 2024 estimated tax ................................ 17 ■ _____ 290

**18 REFUND.** Subtract line 17 from line 16 ........................................ 18 ■ _____
If you have a refund, you must enter your banking information below.

**Account Type:**

☐ Checking  ☐ Savings   **Routing Number** _____   **Account Number** *(use an account not associated with any foreign banks)*

*I declare that this return is correct and complete to the best of my knowledge and belief.*

| | | | |
|---|---|---|---|
| Authorized Signature | CFO | / / | 6122096740 |
| DUSTIN JOHNSON | Title | Date (MM/DD/YYYY) | Direct Phone |
| Signature of Preparer | P01751438 | 07 /02 /2024 | 5013769241 |
| GEORGE PEICHEL | PTIN | Date (MM/DD/YYYY) | Preparer's Direct Phone |
| Print name of person to contact within corporation to discuss this return | CFO | | 5074267946 |
| | Title | | Direct Phone |

**Include a complete copy of your federal return including schedules as filed with the IRS.**

**If you're paying by check, see instructions, page 3.**

Mail to:   Minnesota Department of Revenue
Mail Station 1250
600 N. Robert St.
St. Paul, MN 55146-1250

☒ I authorize the Minnesota Department of Revenue
to discuss this tax return with the preparer.

☐ I do not want my paid preparer to file my return
electronically.

**mn DEPARTMENT OF REVENUE**

## Corporation Extension Payment

### Pay by Check

If you are not required to pay electronically, you can use this voucher to pay by check.

- Make your check payable to "Minnesota Revenue."
- Print your Minnesota Tax ID number in the memo line of your check.
- Mail your payment and the voucher below to the address on the voucher.

**Note:** Your payment may be delayed if your voucher information is missing or incorrect. When printing the voucher, set your printer to "Actual size" (not "Shrink oversized pages").

### Scan Line

The scan line is the most important part of the voucher. When submitting your voucher make sure the scan line:

- Is printed with 66 digits - characters, symbols, or masking are unacceptable.
- Is not cut off or missing.

### Pay Electronically

- Pay electronically from your bank account. Go to  **www.revenue.state.mn.us**  and type **make a payment** into the Search box. Choose  **Bank Account** from the menu.. We do not charge for this service.
- Pay by credit card or debit card. Go to  **www.revenue.state.mn.us**  and type  **make a payment** into the Search box. Choose  **Credit or Debit Card** from the menu. A third party processes these payments and charges you a fee for this service.
- Pay by ACH credit transfer through your financial institution. Go to  **www.revenue.state.mn.us**  and type **ACH Credit** into the Search box.

359231 09-06-23

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Cut carefully along this line to detach.
Your check authorizes us to make a one-time electronic fund transfer from your account.

1116

**mn DEPARTMENT OF REVENUE**

**Corporation Extension Payment**

| | |
|---|---|
| | Preparer Tax Identification Number:   P01751438 |
| PURE PRAIRIE POULTRY, INC | |
| GEORGE PEICHEL        5074267946 | Minnesota Tax ID (required):   7661203 |
| 68808 FORT RD | |
| FAIRFAX          MN 55332 | Federal ID:   842185133 |
| | Tax-Year End:   123123 |

Make check payable to:
Minnesota Revenue
Mail Station 1275, St. Paul, MN 55146-1275

**Amount of Check:**      1000 00

0100100000000000000001231230000007661203500000000000000000000001116

 **DEPARTMENT OF REVENUE**



# 2023 M4I, Income Calculation

*See instructions beginning on page 8.*

PURE PRAIRIE POULTRY, INC                                   842185133            7661203

Name of Corporation/Designated Filer                        FEIN                  Minnesota Tax ID

**You must round amounts
to nearest whole dollar**

**1** a. Federal taxable income before net operating loss deduction and special deductions

   *(from federal Form 1120, line 28, or see inst., pg. 8)* ............... **1a** ■ _____ −32533300

   b. Interest expense limitation for combined reports ........................... **1b** ■ _____

**2 Additions to income**

   a. Federal deduction taken for taxes based on net income and minimum fee ... **2a** ■ _____

   b. Federal deduction for capital losses *(IRC sections 1211 and 1212)* ................. **2b** ■ _____

   c. Interest income exempt from federal income tax ........................... **2c** ■ _____

   d. Exempt interest dividends *(IRC section 852(b)(5))* ........................... **2d** ■ _____

   e. Losses from mining operations subject to occupation tax ................. **2e** ■ _____

   f. Federal deduction for percentage depletion *(IRC sections 611-614 and 291)* ... **2f** ■ _____

   g. Federal bonus depreciation and suspended loss *(IRC section 168(k))* ............ **2g** ■ _____ 2514201

   h. This line intentionally left blank ........................... **2h** ■ _____

   i. This line intentionally left blank ........................... **2i** ■ _____

   j. This line intentionally left blank ........................... **2j** ■ _____

   k. This line intentionally left blank ........................... **2k** ■ _____

   **Total additions** *(add lines 2a through 2k)* ........................... **2** ■ _____ 2514201

**3** Total *(add lines 1a, 1b, and 2)* ........................... **3** _____ −30019099

359561  10-03-23                                    1116

# 2023 M4I, Page 2



*See instructions beginning on page 9.*

PURE PRAIRIE POULTRY, INC                                    842185133          7661203

<small>Name of Corporation/Designated Filer</small>                    <small>FEIN</small>                  <small>Minnesota Tax ID</small>

## 4 Subtractions from income

a. Refund of taxes based on net income included in federal
   taxable income ................................................................ **4a** ■ _____

b. Minnesota deduction for capital losses ........................ **4b** ■ _____

c. Certain federal credit expenses *(see instructions, pg. 10; attach schedule)* ...... **4c** ■ _____

d. Gross-up for foreign taxes deemed paid under IRC section 78 ..................... **4d** ■ _____

e. Expenses relating to income taxable by Minnesota, but federally exempt ...... **4e** ■ _____

f. Dividends paid by a bank to the U.S. government on preferred stock ............ **4f** ■ _____

g. Income/gains from mining operations subject to the occupation tax ........... **4g** ■ _____

h. Deduction for cost depletion ...................................... **4h** ■ _____

i. Subtraction for prior bonus depreciation addback ....................... **4i** ■ _____2494222_____

j. Subtraction for prior IRC section 179 addback ........................ **4j** ■ _____

k. Delayed business interest ......................................... **4k** ■ _____

l. Deferred foreign income (Section 965) ............................. **4l** ■ _____

m. Disallowed section 280E expenses of a licensed cannabis business ........... **4m** ■ _____

n. This line intentionally left blank ................................... **4n** ■ _____

o. This line intentionally left blank ................................... **4o** ■ _____

p. This line intentionally left blank ................................... **4p** ■ _____

q. This line intentionally left blank ................................... **4q** ■ _____

r. This line intentionally left blank ................................... **4r** ■ _____

   **Total subtractions** *(add lines 4a through 4r)* ...................... **4** ■ _____2494222_____

5 Intercompany eliminations *(attach schedule)* ......................... **5** ■ _____

6 Add lines 4 and 5 ................................................ **6** _____2494222_____

7 Minnesota net income *(subtract line 6 from line 3)* ..................... **7** ■ _____-32513321_____

8 Total nonapportionable income *(see instructions, pg. 11; attach schedule)* ........... **8** ■ _____

9 Minnesota apportionable income *(subtract line 8 from line 7)*. **Enter on Form M4T, line 1** ................. **9** ■ _____-32513321_____



**m1 DEPARTMENT OF REVENUE**

# 2023   M4A,   Apportionment/Fee   Calculation

| | B1 | B2 | B3 |
|---|---|---|---|
| | Single/Designated Filer | | |

| | B1 | B2 | B3 |
|---|---|---|---|
| Corporation Name | PURE PRAIRIE POULTRY, INC | | |
| FEIN | 842185133 | | |
| Minnesota Tax ID | 7661203 | | |

**A**
Total in and outside Minnesota

| | A | In Minnesota | In Minnesota | In Minnesota |
|---|---|---|---|---|
| **1** Average inventory | a1 ■ | 1460344 b1 | c1 | |
| **2** Average tangible property and land owned/used *(at original cost)* | a2 ■ | 435724 b2 | c2 | |
| **3** Capitalized rents *(gross rents x 8)* | a3 ■ | b3 | c3 | |
| **4** Total property *(add lines 1, 2 and 3)* | a4 ■ | 1896068 b4 | c4 | |
| **5** Payroll/officer's compensation | a5 ■ | 2385776 b5 | c5 | |
| **6** MN sales or receipts | a6 ■ | 983473 b6 | c6 | |
| **7** MN sales of non-filing entities *(see instructions pg. 12)* | a7 ■ | b7 | c7 | |
| **8** Sales or receipts *(add lines 6 and 7)* *(Financial institutions: see inst., pg. 14)*...8 ■ 22265757 | a8 ■ | 983473 b8 | c8 | |
| **9** Minnesota apportionment factor *(divide each line 8B amount by line 8A; carry to six decimal places)* **Enter amounts on Form M4T, line 2.** | a9 ■ | .044170 b9 | c9 | |

**MINIMUM FEE CALCULATION** *(see inst., pg. 13)*

| | A | In Minnesota | In Minnesota | In Minnesota |
|---|---|---|---|---|
| **10** Adjustments *(see inst., pg. 13 and 14; attach schedule)* | a10 ■ | b10 | c10 | |
| **11** Add lines 4, 5, 8 and 10 | a11 ■ | 5265317 b11 | c11 | |
| **12** Minimum fee *(see table below)* **Enter amounts on Form M4T, line 20.** | a12 ■ | 690 b12 | c12 | |

**Minimum Fee Table**

| If the amount on line 11 is: | Enter this amount on line 12: |
|---|---|
| less than $1,160,000 | $0 |
| $1,160,000 to $2,309,999 | $240 |
| $2,310,000 to $11,569,999 | $690 |
| $11,570,000 to $23,139,999 | $2,310 |
| $23,140,000 to $46,279,999 | $4,640 |
| $46,280,000 or more | $11,570 |

359422 04-15-24



# DEPARTMENT OF REVENUE



## 2023 M4T, Tax Calculation

| | B1 | B2 | B3 |
|---|---|---|---|
| | Single / designated filer | | |

| | | | | | | |
|---|---|---|---|---|---|---|
| Corporation Name | PURE PRAIRIE POULTRY, INC | | | | |
| FEIN | 842185133 | | | | |
| Minnesota Tax ID | 7661203 | | | | |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| 1 | Minnesota apportionable income *(enter amount from M4I, line 9, in each column)* | a1 ■ | −32513321 | b1 | | c1 | |
| 2 | Apportionment factor *(from M4A, line 9)* | a2 ■ | .044170 | b2 | | c2 | |
| 3 | Net income apportioned to Minnesota *(multiply line 1 by line 2)* | a3 ■ | −1436113 | b3 | | c3 | |
| 4a | Minnesota nonapportionable income *(see inst., pg. 15; attach schedule)* | a4a ■ | | b4a | | c4a | |
| 4b | Minnesota nonunitary partnership income *(see inst., pg. 15; attach schedule)* | a4b ■ | | b4b | | c4b | |
| 5 | Taxable net income *(add lines 3, 4a, and 4b)* | a5 ■ | −1436113 | b5 | | c5 | |
| 6 | Net operating loss deduction *(from NOL)* | a6 ■ | | b6 | | c6 | |
| 7 | Subtract line 6 from line 5 | a7 ■ | −1436113 | b7 | | c7 | |
| 8 | Deduction for dividends received *(see inst., pg. 15)* | a8 ■ | | b8 | | c8 | |
| 9 | Taxable income *(subtract line 8 from line 7)* | a9 ■ | | b9 | | c9 | |
| 10 | Regular tax *(multiply line 9 by 0.098; if result is zero or less, leave blank)* | a10 ■ | | b10 | | c10 | |
| 11 | Alternative minimum tax (AMT) *(from AMTT, line 10)* | a11 ■ | | b11 | | c11 | |
| 12 | Add lines 10 and 11 | a12 ■ | | b12 | | c12 | |
| 13 | AMT credit *(from AMTT, line 13)* | a13 ■ | | b13 | | c13 | |
| 14 | Housing Tax Credit | a14 ■ | | b14 | | c14 | |
| | Enter the credit certificate number from Minnesota Housing: SHTC - _____ - _____ | | | | | | |
| 15 | Short Line Railroad Infrastructure Modernization Credit | a15 ■ | | b15 | | c15 | |
| 16 | Credit for Sales of Manufactured Home Parks to Cooperatives | a16 ■ | | b16 | | c16 | |
| 17 | Subtract lines 13 through 16 from line 12 | a17 ■ | | b17 | | c17 | |
| 18 | Minnesota credit for increasing research activities *(from RD, line 45)* | a18 ■ | | b18 | | c18 | |
| 19 | Subtract line 18 from line 17 | a19 ■ | | b19 | | c19 | |
| 20 | Minimum fee *(from M4A, line 12)* | a20 ■ | 690 | b20 | | c20 | |
| 21 | Tax liability by corporation *(add lines 19 and 20)* | a21 ■ | 690 | b21 | | c21 | |

1116

*Continued next page*

359311 10-03-23

# 2023 M4T, Page 2



|  | **B₁** | **B₂** | **B₃** |
|---|---|---|---|
|  | Single / designated filer |  |  |
| Corporation Name | PURE PRAIRIE POULTRY, INC |  |  |
| FEIN | 842185133 |  |  |
| Minnesota Tax ID | 7661203 |  |  |

**22** Film Production Tax Credit .................... a22 ◼ _____ b22 _____ c22 _____

Enter the credit certificate number: TAXC · _____

**23** Tax Credit for Owners of Agricultural Assets *(see inst.)* ... a23 ◼ _____ b23 _____ c23 _____

**24** Employer Transit Pass Credit *(from ETP, line 4)* ............... a24 ◼ _____ b24 _____ c24 _____

**25** LIFO Recapture Tax Deferral .................... a25 ◼ _____ b25 _____ c25 _____

**26** Add lines 22, 23, 24, and 25 .................... a26 ◼ _____ b26 _____ c26 _____

**27** Subtract line 26 from line 21 .................... a27 ◼ _____690 b27 _____ c27 _____

**28** Add all amounts on line 27. This is your **MINNESOTA TAX LIABILITY** ........................... 28 ◼ _____690
Enter on **Form M4, line 1.**



**DEPARTMENT OF REVENUE**

# 2023 M15C, Additional Charge for Underpayment of Estimated Tax

C corporations must use Schedule M15C to determine the additional charge for underpayment of estimated tax.

PURE PRAIRIE POULTRY, INC                    842185133        7661203

Name of Corporation/Designated Filer         FEIN             Minnesota Tax ID

**You must round amounts to nearest whole dollar.**

| | | |
|---|---|---|
| 1 Enter your 2023 tax *(see instructions)* | **1** | 690 |
| **If less than $500, do not complete this form. You owe no additional charge.** | | |
| 2 Enter your 2022 tax *(see instructions)* | **2** | 650 |
| 3 Required annual payment. Enter the amount from line 1 or line 2, whichever is less | **3** | 650 |

*Exceptions:* If you did not file a 2022 return or filed a return for less than a full 12-month period in the preceding tax year, or you did not have a 2022 tax liability, you must enter the amount from line 1. *Large corporations*, read special instructions on back and enter the amount from line 1.

.

| | | 1st Quarter | 2nd Quarter | 3rd Quarter | 4th Quarter |
|---|---|---|---|---|---|
| 4 Enter the due dates *(see instructions)* | **4** | 03152023 | 06152023 | 09152023 | 12152023 |
| 5 Required installments *(see instructions)* | **5** | 162 | 163 | 162 | 163 |
| 6 Amount paid each period *(see instructions)* | **6** | | | | |
| **Complete lines 7-13 for one column before completing the next column.** For the first column only, enter the amount from line 6 on line 10. | | | | | |
| 7 Enter the amount from line 13 of the previous column | **7** | | | | |
| 8 Add lines 6 and 7 | **8** | | | | |
| 9 Add lines 11 and 12 of the previous column | **9** | | 162 | 325 | 487 |
| 10 Subtract line 9 from line 8. If result is zero or less, leave blank | **10** | | | | |
| 11 Remaining underpayment from previous period. If line 10 is zero, subtract line 8 from line 9. Otherwise, leave blank | **11** | | 162 | 325 | 487 |
| 12 **UNDERPAYMENT.** If line 10 is less than or equal to line 5, subtract line 10 from line 5, enter the result and go to line 6 of the next column. Otherwise, go to line 13 | **12** | 162 | 163 | 162 | 163 |
| 13 **OVERPAYMENT.** If line 5 is less than line 10, subtract line 5 from line 10 and enter the result. Go to line 6 of the next column | **13** | | | | |
| 14 Date underpayment is paid or the 15th day of the third month following the tax year, whichever is earlier | **14** | | | | |
| 15 Number of days from the due date on line 4 to the date on line 14 | **15** | | | | |
| 16 Additional charge *(line 15 ÷ 365 x .05 x line 12)* | **16** | | | | |

| | | | |
|---|---|---|---|
| 17 **TOTAL.** Add amounts on line 16. Enter this amount on M4, line 14 | SEE STATEMENT 1 | **17** | 20 |
| Attach this schedule to your Form M4. | | | |

84-2185133

MN SCHEDULE M15C/M15NP   COMPUTATION OF UNDERPAYMENT PENALTY      STATEMENT 1

| Q T R | EVENT AMOUNT | TYPE | REMAINING UNDERPAYMENT | PERIOD OF UNDERPAYMENT | | DAYS | INTEREST RATE | AMOUNT OF PENALTY |
|---|---|---|---|---|---|---|---|---|
| A | | | | | | | | |
| | | Q | 162. | 03/15/2023 | 12/31/2023 | 291 | 5.00% | 6. |
| | | L | 162. | 12/31/2023 | 04/15/2024 | 106 | 5.00% | 2. |
| B | | | | | | | | |
| | | Q | 163. | 06/15/2023 | 12/31/2023 | 199 | 5.00% | 4. |
| | | L | 163. | 12/31/2023 | 04/15/2024 | 106 | 5.00% | 2. |
| C | | | | | | | | |
| | | Q | 162. | 09/15/2023 | 12/31/2023 | 107 | 5.00% | 2. |
| | | L | 162. | 12/31/2023 | 04/15/2024 | 106 | 5.00% | 2. |
| D | | | | | | | | |
| | | Q | 163. | 12/15/2023 | 12/31/2023 | 16 | 5.00% | 0. |
| | | L | 163. | 12/31/2023 | 04/15/2024 | 106 | 5.00% | 2. |

STATEMENT FOR LINES 14 - 16, TOTAL TO SCH M15C/M15NP LINE 17         20.

EVENT TYPE: Q = AMOUNT UNDERPAID AT START OF QUARTER
            P = PAYMENT OR WITHHOLDING
            R = INTEREST RATE CHANGE
            L = SWITCH TO OR FROM A LEAP YEAR

 **DEPARTMENT OF REVENUE**



# 2023 NOL, Net Operating Loss Deduction

**Combined Income Return Filers:** Complete a separate Schedule NOL for each corporation that is carrying forward a net operating loss (NOL).

PURE PRAIRIE POULTRY, INC
Name of Corporation

842185133
FEIN

7661203
Minnesota Tax ID Number

| Year | Taxable Net Income/Loss | Minnesota Losses Used | Losses Remaining |
|------|------------------------|----------------------|------------------|
| Oldest Loss Year<br>12312020 | -36656 | | -36656 |
| Subsequent Year 1<br>12312023 | -1436113 | | -1472769 |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| **2023 Summary:** | | Net Operating Loss Deduction | Total Losses Remaining (to be carried forward)<br>-1472769 |

**Enter on Form M4T, line 6**

359281  10-03-23

 **DEPARTMENT OF REVENUE**



# 2023 NOL, Net Operating Loss Deduction

**Combined Income Return Filers:** Complete a separate Schedule NOL for each corporation that is carrying forward a net operating loss (NOL).

PURE PRAIRIE POULTRY, INC

Name of Corporation

842185133

FEIN

7661203

Minnesota Tax ID Number

## ALTERNATIVE MINIMUM TAX NOL DEDUCTION

| Year | Taxable Net Income/Loss | Minnesota Losses Used | Losses Remaining |
|------|------------------------|----------------------|------------------|
| Oldest Loss Year<br>12312020 | -36656 | | -36656 |
| Subsequent Year 1<br>12312023 | -1325827 | | -1362483 |
| 2 | | | |
| 3 | | | |
| 4 | | | |
| 5 | | | |
| 6 | | | |
| 7 | | | |
| 8 | | | |
| 9 | | | |
| 10 | | | |
| 11 | | | |
| 12 | | | |
| 13 | | | |
| 14 | | | |
| 15 | | | |
| **2023 Summary:** | | Net Operating Loss Deduction | Total Losses Remaining (to be carried forward)<br>-1362483 |

**Enter on Form M4T, line 6**

# TAX RETURN FILING INSTRUCTIONS
NEBRASKA FORM 1120N

## FOR THE YEAR ENDING
DECEMBER 31, 2023

---

**PREPARED FOR:**

PURE PRAIRIE POULTRY, INC
68808 FORT RD
FAIRFAX, MN  55332

---

**PREPARED BY:**

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201

---

**TO BE SIGNED AND DATED BY:**

NOT APPLICABLE

---

**AMOUNT OF TAX:**

| | | |
|---|---|---|
| TOTAL TAX | $ | 0 |
| LESS: PAYMENTS AND CREDITS | $ | 0 |
| PLUS: OTHER AMOUNT | $ | 0 |
| PLUS: INTEREST AND PENALTIES | $ | 0 |
| NO PAYMENT REQUIRED | $ | |

---

**OVERPAYMENT:**

NOT APPLICABLE

---

**MAKE CHECK PAYABLE TO:**

NOT APPLICABLE

---

**MAIL TAX RETURN AND CHECK (IF APPLICABLE) TO:**

THIS RETURN HAS BEEN PREPARED FOR ELECTRONIC FILING.  IF YOU WISH TO
HAVE IT TRANSMITTED TO THE NE DOR, PLEASE CONTACT OUR OFFICE AND
WE WILL SUBMIT YOUR ELECTRONIC RETURN.  DO NOT MAIL THE PAPER COPY
TO THE NE DOR.

---

**RETURN MUST BE MAILED ON OR BEFORE:**

RETURN FEDERAL FORM 8879-CORP TO US BY OCTOBER 15, 2024.

---

**SPECIAL INSTRUCTIONS:**

CCH
**NEBRASKA**
Good Life. Great Service.
DEPARTMENT OF REVENUE

# Nebraska Corporation Income Tax Return

for the taxable year January 1, 2023 through December 31, 2023 or other taxable year

beginning                , 2023 and ending                ,

**FORM 1120N**
**2023**

Name Doing Business As (dba) PURE PRAIRIE POULTRY, INC

Legal Name PURE PRAIRIE POULTRY, INC

Street or Other Mailing Address
68808 FORT RD

City FAIRFAX          State MN     ZIP 55332

**PLEASE DO NOT WRITE IN THIS SPACE**

| Business Classification Code | Date Business Began in Nebraska | Principal Business Activity in Nebraska | Federal ID Number | Nebraska ID Number |
|---|---|---|---|---|
| 112300 | 01/01/2023 | 112300 | 84-2185133 | 99999999 |

Check if:  Initial Return ☐   Final Return (Example, dissolved. See instr.) ☐   Address Change ☐   Name Change ☐   Exempt Organization ☐   Cooperative Meeting IRC § 6072(d) ☐   7004 Attached ☒   3800N, 775N, 312N, or 1107N Attached ☐

**Corporation Filing Status** (Answer questions A through D, as applicable.)

**A.** Does this corporation own at least 50% of another corporation; or is it owned at least 50% by another corporation?
(1) ☐   (2) ☒ NO
If Yes, attach Federal Form 851 or a schedule of affiliated corporations and federal IDs. Answer questions B, C, and D.

**B.** Is one single Nebraska return being filed for the entire group? (1) ☐ YES  (2) ☐ NO

**C.** Are you filing as a unitary group in any other state? (1) ☐ YES  (2) ☐ NO

**D.** Check the method used to determine Nebraska income (check only one):
(1) ☐ Combined report of a controlled group of corporations
(2) ☐ Separate report by a member of a controlled group of corporations (attach supporting documentation)
(3) ☐ Alternate method (attach Nebraska Department of Revenue approval)

| | | | |
|---|---|---|---|
| 1 | Federal gross sales or receipts, less returns and allowances | 1 | 22,239,300 |
| 2 | Federal taxable income (FTI) (see instructions) | 2 | -32,533,300 |
| 3 | Adjustments increasing FTI (line 10, from attached Nebraska Schedule A) | 3 | |
| 4 | Adjustments decreasing FTI (line 20, from attached Nebraska Schedule A) | 4 | |
| 5 | Adjusted FTI (enter line 2 plus line 3 minus line 4) | 5 | -32,533,300 |
| 6 | Nebraska taxable income before Nebraska carryovers (see instructions) | 6 | -1,721,109 |
| 7 | Nebraska capital loss carryover (see instructions - attach worksheet) | 7 | |
| 8 | Nebraska taxable income after Nebraska capital loss carryover (line 6 minus line 7) | 8 | -1,721,109 |
| 9 | Nebraska net operating loss carryover (see instructions - attach worksheet) | 9 | |
| 10 | Net Nebraska taxable income (line 8 minus line 9) | 10 | -1,721,109 |
| 11 | Nebraska tax  ☐ Check this box if you are an insurance company | 11 | 0 |
| 12 | Premium tax credit (see instructions - attach schedule) | 12 | |
| 13 | Employer's credit for expenses incurred for TANF (ADC) recipients (see instr.) | 13 | |
| 14 | Community Development Assistance Act credit (attach Form CDN) | 14 | |
| 15 | Form 3800N nonrefundable credit (attach Form 3800N) | 15 | |
| 16 | NE employer tax credit for employing convicted felons. Cert # from Form ETC-A: | 16 | |
| 17 | Total nonrefundable credits (total of lines 12 through 16) | 17 | |
| 18 | Nebraska tax after nonrefundable credits. Subtract line 17 from line 11 (if line 17 is more than line 11, enter -0-) | 18 | 0 |
| 19 | Form 3800N refundable credit (attach Form 3800N) | 19 | |
| 20 | Tax deposited with Form 7004N | 20 | |
| 21 | 2023 estimated income tax payments (minus any Form 4466N adjustment) | 21 | |
| 22 | Beginning Farmer credit | 22 | |
| 23 | Nebraska income tax withheld (see instructions) | 23 | |
| 24 | Credit for school district property taxes (attach Form PTC) | 24 | |
| 25 | Credit for community college property taxes (attach Form PTC) | 25 | |
| 26 | PTET credit (attach Schs K-1N) (Attach a schedule if the credit was received from more than one partnership.)   a Name:    b NE ID number:    c Amount: $ | 26 | |
| 27 | Total refundable credits and payments (total of lines 19 through 26) | 27 | |
| 28 | **Tax Due** (line 18 minus line 27) | 28 | |
| 29 | Penalty for underpayment of estimated income tax (see instructions) | 29 | |
| 30 | Amount Due (when line 27 is less than the total of lines 18 and 29) If paying electronically, check here ☐ | 30 | |
| 31 | **Overpayment** (when line 27 is greater than the total of lines 18 and 29) | 31 | |
| 32 | Amount on line 31 to be **credited** to 2024 estimated income tax | 32 | |
| 33 | Overpayment to be **refunded** (line 31 minus line 32). Direct deposit: Complete lines 34a, 34b, and 34c | 33 | |

34a Routing No.                    34b Type of Account  ☐ Checking  ☐ Savings
34c Account No.                    34d ☐ Check this box if this refund will go to a bank account outside the United States.

**sign here ▶**

Under penalties of perjury, I declare that as taxpayer or preparer, I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is correct and complete.

| Signature of Officer | Date | Email Address |
|---|---|---|
| CFO | | 612-209-6740 |
| Title | | Daytime Phone Number |

**paid preparer's use only**

| Preparer's Signature | Date | Preparer's PTIN |
|---|---|---|
| DUSTIN JOHNSON | 07/02/24 | P01751438 |

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201
Print Firm's Name (or yours if self-employed), Address and ZIP Code

EIN 71-0817652

Daytime Phone (501)376-9241

Paper filers must attach a copy of the federal return and supporting schedules, as filed with the IRS, to this return.

8-270-2023

**CCH**
**NEBRASKA**
Good Life. Great Service.
DEPARTMENT OF REVENUE

Nebraska Schedule A - Adjustments to FTI
Nebraska Schedule I - Apportionment for Multistate Business

**FORM 1120N**
Schedules
A and I
**2023**

Name on Form 1120N
PURE PRAIRIE POULTRY, INC

Nebraska ID Number
99999999

## Nebraska Schedule A
• You must use Schedule A if you make an adjustment on lines 3 or 4 of Form 1120N.

### Adjustments Increasing FTI

| | | |
|---|---|---|
| 1 State and local government interest and dividend income (see instructions) | 1 | |
| 2 Federal net operating loss deduction | 2 | |
| 3 Federal capital loss carryover | 3 | |
| 4 Allocable, nonapportionable loss **4** | | |
| 5 Related expenses **5** | | |
| 6 Interest expense disallowance **6** | | |
| 7 Total allocable, nonapportionable loss (add lines 4-6) (attach affidavit - see instructions) | 7 | |
| 8 Nebraska and local income, sales, and use taxes deducted on federal Form 1065 under section 164 of the IRC. (from Schedules K-1N) | 8 | |
| 9 Other increasing adjustments | | |
| **a** List type: _____ **b** Amount: $_____ | | |
| Total other increasing adjustments. Enter total of lines 8b | 9 | |
| 10 Total adjustments increasing FTI (total of lines 1, 2, 3, 7, 8, and 9). Enter here and on line 3, Form 1120N. | 10 | |

### Adjustments Decreasing FTI

| | | |
|---|---|---|
| 11 Qualified U.S. government interest deduction. (attach supporting schedule) | 11 | |
| 12 Total foreign dividends (line 7, Nebraska Schedule II) | 12 | |
| 13 Special foreign tax credit adjustment (line 12, Nebraska Schedule II) | 13 | |
| 14 Allocable, nonapportionable income **14** | | |
| 15 Related expenses **15** | | |
| 16 Interest expense disallowance **16** | | |
| 17 Net allocable, nonapportionable income (line 14 minus lines 15 and 16) ( **attach affidavit** - see instructions) | 17 | |
| 18 Nebraska College Savings Program (see instructions) | 18 | |
| 19 Other decreasing adjustments | | |
| **a** List type: _____ **b** Amount: $_____ | | |
| Total other decreasing adjustments. Enter total of lines 19b | 19 | |
| 20 TOTAL adjustments decreasing FTI (total of lines 11, 12, 13, 17, 18, and 19). Enter here and on line 4, Form 1120N | 20 | |

## Nebraska Schedule I -
## Apportionment for Multistate Business

| | | | |
|---|---|---|---|
| 1 Adjusted FTI (line 5, Form 1120N) | | 1 | −32,533,300. |
| 2 Nebraska apportionment factor (from line 15 below) | 2  5.2903 % | | |
| 3 Taxable income apportioned to Nebraska (line 1 multiplied by line 2). Enter here and on line 6, Form 1120N | | 3 | −1,721,109. |

### Nebraska Apportionment Factor - Sales or Gross Receipts

| | | Total | | Nebraska |
|---|---|---|---|---|
| 4 Sales or gross receipts minus returns and allowances | 4 | 19,257,475. | | |
| 5 Sales delivered or shipped to purchasers in Nebraska: shipped from outside Nebraska | | | 5 | 0. |
| 6 Sales delivered or shipped to purchasers in Nebraska: shipped from within Nebraska | | | 6 | 1,177,926. |
| 7 Sales shipped from Nebraska to the U.S. government | | | 7 | 0. |
| 8 Interest on sales of tangible personal property | 8 | | 8 | |
| 9 Interest, dividends, and royalties from intangible property | 9 | | 9 | |
| 10 Gross rents | 10 | | 10 | |
| 11 Net gain on sales of intangible property | 11 | | 11 | |
| 12 Gross receipts from sales of tangible personal and real property not included above | 12 | | 12 | |
| 13 Other income | | | | |
| **a** List type: OTHER RECEIPTS  **b** Total Amount: $ 3,008,282. | | | | |
| **c** Nebraska Amount:  $ _____ 0. | | | | |
| Enter total of lines 13b in first column. Enter total of lines 13c in second column | 13 | 3,008,282. | 13 | 0. |
| 14 **Total sales or gross receipts** | 14 | 22,265,757. | 14 | 1,177,926. |
| 15 **Nebraska apportionment factor.** (Divide line 14, Nebraska column, by line 14, Total column, and round to six decimal places). Enter as a percent here and on Schedule I, line 2 above | 15 | | | 5.2903 % |

363421 01-23-24

# TAX RETURN FILING INSTRUCTIONS
### WISCONSIN FORM 4

# FOR THE YEAR ENDING
### DECEMBER 31, 2023

---

**PREPARED FOR:**

PURE PRAIRIE POULTRY, INC
68808 FORT RD
FAIRFAX, MN  55332

---

**PREPARED BY:**

FROST, PLLC
425 WEST CAPITOL, SUITE 3300
LITTLE ROCK, AR 72201

---

**TO BE SIGNED AND DATED BY:**

NOT APPLICABLE

---

**AMOUNT OF TAX:**

| | | |
|---|---|---:|
| TOTAL TAX | $ | 25 |
| LESS: PAYMENTS AND CREDITS | $ | 0 |
| PLUS: OTHER AMOUNT | $ | 0 |
| PLUS: INTEREST AND PENALTIES | $ | 0 |
| BALANCE DUE | $ | 25 |

---

**OVERPAYMENT:**

NOT APPLICABLE

---

**MAKE CHECK PAYABLE TO:**

WISCONSIN DEPARTMENT OF REVENUE

---

**MAIL TAX RETURN AND CHECK (IF APPLICABLE) TO:**

THIS RETURN HAS BEEN PREPARED FOR ELECTRONIC FILING.  IF YOU WISH TO
HAVE IT TRANSMITTED TO THE WI DOR, PLEASE CONTACT OUR OFFICE AND WE
WILL SUBMIT YOUR ELECTRONIC RETURN.  DO NOT MAIL THE PAPER COPY TO
THE WI DOR.

---

**RETURN MUST BE MAILED ON OR BEFORE:**

RETURN FEDERAL FORM 8879-CORP TO US BY NOVEMBER 15, 2024.

---

**SPECIAL INSTRUCTIONS:**

YOUR PAYMENT SHOULD BE MADE AS INSTRUCTED BELOW ON OR BEFORE
NOVEMBER 15, 2024.

ENCLOSE A CHECK OR MONEY ORDER FOR $25, PAYABLE TO WISCONSIN
DEPARTMENT OF REVENUE.  SEPARATELY MAIL FORM C-EPV WITH PAYMENT
TO:

WISCONSIN DEPARTMENT OF REVENUE
PO BOX 3028
MILWAUKEE, WI 53201-3028

387801  10-11-23

- - - - - - - - - - - - - - - - - - - - - - ▼ _cut here_ ▼ - - - - - - - - - - - - - - - - - - - - - - -

CCH
**2023**
Form **C-PV**

**Wisconsin Corporation Payment Voucher**
Use this form only if your taxable year begins in 2023

Person to contact regarding payment: **GEORGE PEICHEL**

Phone number: **507-426-7946**

| | |
|---|---|
| **Make check payable to and mail to:** | |
| Wisconsin Department of Revenue | |
| PO Box 3028 | |
| Milwaukee WI 53201-3028 | |

| Federal Employer ID Number | Social Security Number (Estates only) |
|---|---|
| 84 2185133 | |

Corporation Name
**PURE PRAIRIE POULTRY, INC**

Number and Street
**68808 FORT RD**

| City | State | ZIP Code |
|---|---|---|
| **FAIRFAX** | **MN** | **55332** |

Please do not staple your payment to this voucher.

DC-105 (R. 11-20)

This payment is for:

[X] 2023 calendar year

[ ] Fiscal year beginning _____

[ ] Short taxable year

beginning _____ ; ending _____

You are required to make your payment electronically if your net tax less refundable credits on your prior year's return was $1,000 or more.

[ ] Check if this is an amended voucher

**Amount of Payment  $** _____ 25 ∙

208025401200000084218513312312023120111300000002500

Form **4**

## Wisconsin Non-Combined Corporation
## Franchise or Income Tax Return

**2023**

For calendar year 2023 or tax year beginning _____ *M M D D Y Y Y Y* _____ and ending _____ *M M D D Y Y Y Y* _____

**Complete form using BLACK INK.**   **Due Date: Generally the** 15th day of 4th month following close of taxable year. See instructions.

Corporation Name
PURE PRAIRIE POULTRY, INC

Number and Street
68808 FORT RD                                                    Suite Number

| City | State | ZIP (+ 4 digit suffix if known) | A Federal Employer ID Number |
|------|-------|-------------------------------|------------------------------|
| FAIRFAX | MN | 55332 | 84 2185133 |

**D** Check ✔ if applicable and attach explanation:

**B** Business Activity (NAICS) Code
112300

**1** ____ Amended return (Include Schedule AR)   **4** ____ Short period - change in accounting period

**2** ____ First return - new corporation or entering Wisconsin   **5** ____ Short period - stock purchase or sale

**C** State of Incorporation   and   Year
MN   Enter abbreviation of state in box, or if a foreign country, enter below.   2019   *Y Y Y Y*

**3** ____ Final return - corporation dissolved or withdrew

Check ✔ if applicable and see instructions:

**E** ____ If you have an extension of time to file. Enter federal extended due date

**F** ____ If no business was transacted in Wisconsin during the taxable year, attach a complete copy of your federal return.   *M M D D Y Y Y Y*

**G** ____ If you have related entity expenses and are required to file Schedule RT with this return.

**H** ____ If this return is for an insurance company.

**I** ____ IRS adjustments became final during the year. Years adjusted   ▶ ____

**J** ____ If you filed a federal consolidated return, enter Parent Company's FEIN   ▶ ____

**DO NOT USE THIS FORM IF FILING AS A COMBINED GROUP**   | **IF NO ENTRY ON A LINE, LEAVE BLANK** |

ENTER NEGATIVE NUMBERS LIKE THIS ➡ -1000 NOT LIKE THIS ➡ (1000)   **NO COMMAS; NO CENTS**

| | | |
|---|---|---|
| **1** Enter the amount from Form 1120, line 28 | **1** | −32533300 . |
| **2** Additions (from Schedule 4V, line 11) | **2** | . |
| **3** Add lines 1 and 2 | **3** | −32533300 . |
| **4** Subtractions (from Schedule 4W, line 17) | **4** | 2152086 . |
| **5** Subtract line 4 from line 3 | **5** | −34685386 . |
| **6** Total company net nonapportionable and separately apportioned income (from Form(s) N, line 8) | **6** | . |
| **7** Subtract line 6 from line 5 | **7** | −34685386 . |
| **8** Wisconsin apportionment percentage. Enter the apportionment schedule used: A 01 | **8** | .0094 % |
| If 100% apportionment, check (✔) the space after the arrow  ▶ __ | | |
| If using separate accounting, check (✔) the space after the arrow  ▶ __ | | |
| **9** Multiply line 7 by line 8 | **9** | −3260 . |
| **10** Wisconsin net nonapportionable and separately apportioned income (from Form N, line 14) | **10** | . |
| **11** Add lines 9 and 10 | **11** | −3260 . |
| **12** Loss adjustment for insurance companies (from Schedule 4I, line 20) | **12** | . |
| **13** Add lines 11 and 12. This is the Wisconsin income before net business loss carryforwards | **13** | −3260 . |
| **14** Wisconsin net business loss carryforward from Form 4BL, line 30(f). Do not enter more than line 13 | **14** | . |
| **15** Subtract line 14 from line 13. This is Wisconsin net income or loss. Check if excess inclusion income from real estate mortgage investment conduit  ▶ __ | **15** | −3260 . |

IC-040 (R. 8-23)   387481  10-30-23   CCH

2023 Form 4                                                                                           Page **2** of **3**

| | | | |
|---|---|---|---|
| 16 | Enter 7.9% (0.079) of Wisconsin net income on line 15. This is tentative gross tax | 16 | . |
| 17 | Tax adjustment for insurance companies (from Schedule 4I, line 26) | 17 | . |
| 18 | Gross tax (subtract line 17 from line 16) | 18 | . |
| 19 | Nonrefundable credits (from Schedule CR) | 19 | . |
| 20 | Subtract line 19 from line 18. If line 19 is more than line 18, enter zero (0). This is net tax | 20 | . |
| 21 | Economic development surcharge (see instructions) | 21 | 25 . |
| 22 | Endangered resources donation (decreases refund or increases amount owed) | 22 | . |
| 23 | Veterans trust fund donation (decreases refund or increases amount owed) | 23 | . |
| 24 | Add lines 20 through 23 | 24 | 25 . |
| 25 | Estimated tax payments and 2022 credit carryforward, less refund from Form 4466W | 25 | . |
| 26 | Wisconsin tax withheld (see instructions) | 26 | . |
| 27 | Refundable credits (from Schedule CR) | 27 | . |
| 28 | Amended Return Only - amount previously paid | 28 | . |
| 29 | Add lines 25 through 28 | 29 | . |
| 30 | Amended Return Only - amount previously refunded | 30 | . |
| 31 | Subtract line 30 from 29 | 31 | . |
| 32 | Interest, penalty, and late fee due (from Form U, line 17 or 26) If you annualized income on Form U, check (✔) the space after the arrow ▶ | 32 | . |
| 33 | **Amount Due.** If the total of lines 24 and 32 is larger than 31, subtract line 31 from the total of lines 24 and 32 | 33 | 25 . |
| 34 | **Overpayment.** If line 31 is larger than the total of lines 24 and 32, subtract the total of lines 24 and 32 from line 31 | 34 | . |
| 35 | Enter amount from line 34 you want credited to 2024 estimated tax | 35 | . |
| 36 | Subtract line 35 from line 34. **This is your refund** | 36 | . |
| 37 | Enter total gross receipts from all activities (see instructions) | 37 | 22327300 . |
| 38 | Enter total assets from federal Form 1120 | 38 | 69168476 . |
| 39 | Total Wisconsin tangible property (see instructions) | 39 | . |
| 40 | Total tangible property (see instructions) | 40 | . |
| 41 | Total Wisconsin payroll (see instructions) | 41 | . |
| 42 | Total payroll (see instructions) | 42 | . |
| 43 | Total Wisconsin sales, receipts, or premiums included in apportionment ratio (see instructions) | 43 | 2095 . |
| 44 | Total sales, receipts, or premiums included in apportionment ratio (see instructions) | 44 | 22265757 . |



387482  10-30-23   CCH

PURE PRAIRIE POULTRY, INC

<u>45</u>  Is the corporation the sole owner of any limited liability companies?

    ____ Yes  <u>X</u> No   If yes, prepare and submit Schedule DE with this return.

<u>46</u>  Did you include the income of the LLCs listed for item 45 in this return?

    ____ Yes  <u>X</u> No

<u>47</u>  Did you purchase, license, lease or rent any taxable tangible personal property, certain coins and stamps, certain leased property affixed to real estate, certain digital goods, or taxable services, for storage, use or consumption in Wisconsin without paying a state sales or use tax?

    ____ Yes  <u>X</u> No

<u>48</u>  Person to contact concerning this return:

    Last name:  **PEICHEL**　　　　　　　　　　　First name:  **GEORGE**

    Phone #:  **5074267946**　　　　　　　　　Fax #:  _____

<u>49</u>  City and state where books and records are located for audit purposes:   City **FAIRFAX**   State **MN**

<u>50</u>  List the locations of Wisconsin operations: _____

<u>51</u>  ____ Yes  <u>X</u> No   Are any manufacturing facilities located in Wisconsin?

<u>52</u>  Did you file federal Schedule UTP - Uncertain Tax Position Statement with the Internal Revenue Service?

    ____ Yes  <u>X</u> No   If yes, enclose federal Schedule UTP with your Wisconsin tax return.

<u>53</u>  Did you file federal Form 8886 - Reportable Transaction Disclosure Statement with the Internal Revenue Service?

    ____ Yes  <u>X</u> No   If yes, enclose federal Form 8886 with your Wisconsin tax return.

**Third Party Designee**

Do you want to allow another person to discuss this return with the department?  <u>X</u> Yes Complete the following.   ____ No



Print Designee's Name ▶ **DUSTIN JOHNSON**   Phone Number ▶ **501 376 9241**   Personal Identification Number (PIN) ▶ **80288**

*Under penalties of law, I declare that this return and all attachments are true, correct, and complete to the best of my knowledge and belief.*

| Signature of Officer | Title | Date |
|---|---|---|
| ▶ | CFO | |
| Preparer's Signature | Preparer's Federal Employer ID Number | Date |
| ▶ DUSTIN JOHNSON | 71 0817652 | 07022024 |

*You must file a copy of your federal return with Form 4, even if no Wisconsin activity.*

If you are not filing your return electronically, make your check payable to and mail your return to:

Wisconsin Department of Revenue
PO Box 8908
Madison WI 53708-8908

387483  10-30-23   CCH

| Schedule **A-01** | **Wisconsin Single Sales Factor Apportionment Data for Nonspecialized Industries** | **2023** |
|---|---|---|

Wisconsin
Department of Revenue

File with Wisconsin Form 1NPR, 2, 3, 4, 4T, 5S, or 6
*Read instructions before filling in this schedule*

| Name | Identifying Number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84 2185133 |

Round amount to nearest dollar

|  |  | **Wisconsin** | **Total Company** |
|---|---|---|---|
| **1** | Sales of tangible personal property delivered or shipped to Wisconsin purchasers: | | |
| **a** | Shipped from outside Wisconsin ......... 1a | . | |
| **b** | Shipped from within Wisconsin ......... 1b | 2095 . | |
| **2** | Sales of tangible personal property shipped from Wisconsin to: | | |
| **a** | The federal government within Wisconsin ......... 2a | . | |
| **b** | The federal government in a state where the taxpayer would not be taxable under P.L. 86-272 ......... 2b | . | |
| **c** | Purchasers in a state where the taxpayer would not be taxable under P.L. 86-272 ......... 2c | . | |
| **3** | Double throwback sales ......... 3 | . | |
| **4** | Total sales of tangible personal property (for Wisconsin column, add lines 1a through 3) ......... 4 | 2095 . | 4   19257475 . |
| **5** | Gross receipts from the use of computer software if the purchaser or licensee used the software in Wisconsin ......... 5 | . | |
| **6** | Total gross receipts from the use of computer software ......... 6 | | 6   . |
| **7** | Gross receipts from services provided to a purchaser who received the benefit of the service in Wisconsin ......... 7 | . | |
| **8** | Total gross receipts from services ......... 8 | | 8   . |
| **9** | Other apportionable gross receipts: | | |
| **a** | Sales, leases, rentals or licensing of real property ......... 9a | . | 9a   . |
| **b** | Sales of intangible property ......... 9b | . | 9b   . |
| **c** | Royalties, licensing, or allowing the use of intangible property ......... 9c | . | 9c   . |
| **d** | Other apportionable gross receipts not identified above ......... 9d | . | 9d   3008282 . |
| **e** | Total (for both columns add lines 9a through 9d) ......... 9e | . | 9e   3008282 . |
| **10** | For Wisconsin column, add lines 4, 5, 7, and 9e. For Total Company column, add lines 4, 6, 8, and 9e ......... 10 | 2095 . | 10   22265757 . |

*Separate return filers and pass-through entities:*

| **11** | Divide Wisconsin column, line 10 by Total Company Column, line 10 and multiply by 100. This is the Wisconsin apportionment percentage ......... 11 | .0094 % |
|---|---|---|

CCH
387721
10-30-23
IC-043 (R. 8-23)



2023 Schedule A-01 | Name **PURE PRAIRIE POULTRY, INC** | ID Number 84 2185133 | Page **2** of 2

*Combined return filers:*

|  |  | **Wisconsin** | **Total Company** |
|---|---|---|---|
| **12** Enter sales included above, that are intercompany sales between combined group members | **12** | · **12** | · |
| **13** Enter sales included above, that are **not** included in the computation of combined unitary income | **13** | · **13** | · |
| **14** Add lines 12 and 13 for each column | **14** | · **14** | · |
| **15** Subtract line 14 from line 10 for each column | **15** | · **15** | · |
| **16** Enter intercompany sales previously excluded from the sales factor due to the deferral of income, if the deferred income is included in combined unitary income on this return | **16** | · **16** | · |
| **17** Add lines 15 and 16 for each column. Enter Wisconsin column amount on Form 6, Part III, line 1a. Total Company column amount on Form 6, Part III, line 1b | **17** | · **17** | · |



Schedule

# 4W

Wisconsin
Department of Revenue

## Wisconsin Subtractions From Federal Income

File with Wisconsin Form 4

*Read instructions before filling in this schedule*

**2023**

| Corporation Name | Federal Employer ID Number |
|---|---|
| PURE PRAIRIE POULTRY, INC | 84 2185133 |

| | | |
|---|---|---:|
| **1** Wisconsin subtraction modification for dividends (from Schedule 4Y, line 4) | 1 | . |
| **2** Related entity expenses eligible for subtraction (from Schedule RT, Part II, Sch. 2K-1, and Sch. 3K-1) | 2 | . |
| **3** Income from related entities whose expenses were disallowed (obtain Schedule RT-1 from related entity and submit with your return) | 3 | . |
| **4** Subpart F and 965(a) income | 4 | . |
| **5** Global intangible low-taxed income (GILTI) | 5 | . |
| **6** Gross-up of foreign dividend income | 6 | . |
| **7** Nontaxable income *(attach schedule)* | 7 | . |
| **8** Foreign taxes (do not include deemed taxes) | 8 | . |
| **9** Cost depletion | 9 | . |
| **10** Basis, section 179, depreciation/amortization *(attach schedule)*   STMT 1 | 10 | 2152086 . |
| **11** Amount by which the Wisconsin basis of assets disposed of exceeds the federal basis *(attach schedule)* | 11 | . |
| **12** Federal wage credits | 12 | . |
| **13** Federal research credit expenses | 13 | . |
| **14** Financial institution loan exemption | 14 | . |
| **15** Other (list, but do not include any adjustment for nontaxable income from life insurance operations) | | |
| **a** | | . |
| **b** | | . |
| **c** | | . |
| **d** | | . |
| **e** | | . |
| **f** | | . |
| **g** | | . |
| **h** | | . |
| **i** Add lines 14a through 14h | 15i | . |
| **16** Nontaxable income from life insurance operations (from Schedule 4I, line 13) | 16 | . |
| **17** Total (enter on Form 4, page 1, line 4) | 17 | 2152086 . |



CCH
IC-024 (R. 8-23)

387611  11-03-23

PURE PRAIRIE POULTRY, INC

84-2185133

## WI SCHEDULE 4W    DEPRECIATION\AMORTIZATION IN EXCESS OF FEDERAL    STATEMENT 1

| WISCONSIN AMOUNT | FEDERAL AMOUNT | WISCONSIN AMOUNT IN EXCESS |
|---|---|---|
| 5,481,225. | 3,329,139. | 2,152,086. |

**EXHIBIT F**

**Pure Prairie Poultry, Inc.**
**PPP Group : Pure Prairie Poultry, Inc.**
**Income Statement**

**January 2024 - October 2024**

| Financial Row | Amount |
|---|---|
| **Ordinary Income/Expense** | |
|   Income | |
|     **40000 - Revenue from Operations** | |
|       40005 - Revenue from Chicken Products | $38,368,909.82 |
|       40010 - Revenue - Eggs | $1,247,392.50 |
|       40015 - Revenue - Bi-Products | $3,842.92 |
|       40020 - Discounts | ($227,317.62) |
|       40100 - Freight Revenue | $616,638.38 |
|     **Total - 40000 - Revenue from Operations** | **$40,009,466.00** |
|   **Total - Income** | **$40,009,466.00** |